# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **JULIE GIVENS and** | ) | |
| **MONICA GREENE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CV 2:06 CV852-1D** |
| | ) | |
| **DOUGLAS CHAMBERS,** | ) | |
| **Individually and in his capacity** | ) | |
| **As President of INGRAM STATE** | ) | |
| **TECHNICAL COLLEGE; JAMES** | ) | |
| **WILSON, Individually and in his** | ) | |
| **Capacity as Dean of Students of** | ) | |
| **INGRAM STATE TECHNICAL** | ) | |
| **COLLEGE** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MOTION FOR SUMMARY JUDGMENT

ATTACHMENTS TO PREVIOUSLY FILED MOTION FOR SUMMARY
JUDGMENT

## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| **JULIE GIVENS and**<br>**MONICA GREENE,** | ) |
| | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )    **Case No. CV 2:06 CV852-1D** |
| | ) |
| **DOUGLAS CHAMBERS,** | ) |
| **Individually and in his capacity** | ) |
| **As President of INGRAM STATE** | ) |
| **TECHNICAL COLLEGE; JAMES** | ) |
| **WILSON, Individually and in his** | ) |
| **Capacity as Dean of Students of** | ) |
| **INGRAM STATE TECHNICAL** | ) |
| **COLLEGE** | ) |
| | ) |
| **Defendants.** | ) |

### AFFIDAVIT OF J. DOUGLAS CHAMBERS

Before me, the undersigned notary public in and for said county and state,

personally appeared J. Douglas Chambers, who upon being duly sworn on oath deposed

and said as follows:

1.      My name is J. Douglas Chambers. I have been President of J. F. Ingram

State Technical College since May 1, 1996. In this capacity, I am responsible for

administering the institution in accordance with the State Board's policies, local

institutional policies and applicable federal, state and local laws. I am also given the

authority to appoint the faculty and staff according to qualifications prescribed by the

Board and such other regulations that may be adopted by the Board.

2.      J. F. Ingram State Technical College is a two-year Alabama technical

college located in Deatsville, Alabama that was established exclusively to provide

occupations training to inmates, male and female, at the adult state correctional institutions in Montgomery and Elmore Counties. All of its students are adult inmates who have been convicted of one or more felonies and who are assigned by the Alabama Department of Corrections to be students at Ingram. In addition to occupations training at the associate degree level, and the certificate level, Ingram provides remedial education and special education services. It is the only college in Alabama whose student body is composed exclusively of student inmates. The State Board of Education serves as the Board of Control for Ingram, and the other community and technical colleges in the Alabama college system. The Chancellor of the Alabama Department of Post Secondary Education serves as the Chief Executive Officer for the system. The State Board, at the recommendation of the Chancellor, adopts all statewide policies that apply to Ingram. Once the state wide policies are adopted, the Chancellor is charged with the responsibility of interpreting and enforcing those policies.

3.     As President of Ingram, I have been consistently displeased with the performance of Monica Greene in the position of Dean of Fiscal Affairs. I have received numerous reports from vendors, college deans, instructors, and even some of Greene's own staff that invoices are not paid in a timely manner. I have been contacted by vendors who have placed Ingram's accounts on hold because of non-payment. I have reviewed numerous documents demonstrating late or delinquent accounts because of Ms. Greene's failure to assure timely payment. By any measure, this is an unacceptable business practice.

4.     Instructors have also written me memos and spoken with me personally about requisitions that they have made for supplies, instructional materials, and office

equipment items with no response or an untimely response by Ms. Greene's office. This has created great difficulty in the most recent summer semester. In fact, some classes did not obtain responses to requisitions for necessary supplies and the students were given an "incomplete" because they could not do the course work.

5.     Over the last several years, I have had numerous conversations with the auditors from the examiner of public accounts regarding the practices of the business office. I have been admonished by the auditors beacuse the internal controls of the business office are weak, ineffective and unacceptable. This was particularly true of the live work program operated by Ingram.

6.     I have received numerous complaints by other instructors regarding the performance of the business office. Some of those complaints include an extensive memo from former Dean Huffstetler regarding the ineffective functioning of the business office, a Chancellor's peer review containing multiple citations of weaknesses in the business office, findings in audit reports, and reports from department heads that they are unable to obtain their budgets in a timely fashion. The practices of the business office are an area of serious concern in light of the numerous complaints that I have consistently received over the last several years. Ms. Greene's failure to adequately perform her duties has impacted the efficiency and effectiveness of Ingram and degraded the overall performance of the institution.

7.     Ms. Greene refuses to take constructive criticism, refuses to admit mistakes or weaknesses, and is generally unteachable regarding the controls, practices, and systems of her department. Her unwillingness to communicate and take instruction has made the situation impossible to manage or improve.

8.    Both Plaintiffs Greene and Givens claim that I raise my voice too often in the work place. Although I may have a more vocal management style than they would prefer, I have not only raised my voice at them or at females. I have raised my voice when I feel a problem exists that is not being addressed and when I am attempting to emphasize a point or make it abundantly clear. I have on occasion raised my voice at both males and females in both individual and group settings. I do not raise my voice only at Ms. Givens or Ms. Greene, and I do not raise my voice only at females.

9.    I have met on numerous occasions with both Ms. Greene and employees of her office regarding her poor performance. I have made no secret of my displeasure with her inability to operate the business office in a way that creates inner-department harmony and fiscal prudence. On occasions when I have met with the staff of Ms. Greene, I have done so only with the intent of evaluating why Ms. Green had not completed a task. The purpose of these meetings was to determine what problems existed and to motivate the workers under her charge to complete tasks that she did not complete.

10.    Ms. Givens and Ms. Greene claim that I am discriminating against them for enforcing a rigorous dress code policy regarding proper attire of females at the Ingram campus. The reason I have instituted a dress code at Ingram is institutional security. Because Ingram is an all male inmate institution, the risks associated with provocative, revealing, and inappropriate attire by females are self-evident. There have been numerous instances of masturbation by inmates in the presence of females in the prison setting as a whole and at Ingram. The correctional officers and wardens alike have warned and instructed me on numerous occasions to require the female employees under

my charge to dress appropriately at the institution. I have never been admonished or instructed by the Department of Corrections regarding the dress of male employees. I am aware of no instance in which an inmate inappropriately exposed himself or masturbated because of inappropriate male attire. It is incumbent on me to rigorously enforce the appropriate dress of females in the prison setting as it is my duty to make every effort in providing for the safety and security of my employees and the institution.

11.    I have given Ms. Greene one poor performance evaluation since I have been the President at Ingram. This performance evaluation was based upon long periods of underperformance and a lack of leadership in the operation of the business office. I had previously not given Ms. Greene poor evaluations as I was trying to address her performance deficiencies by other means. Her poor performance evaluation was based purely on the factors listed in the evaluation and not based upon the fact that she is white or female.

12.    Ms. Greene claims that she should have been made the Dean of the College when that position was filled by Dr. Huffstetler in 1998. Dean of the College is the right hand man to the President. In my judgment, the Dean of the College position requires extensive experience in the overall operations of the institution. It requires the person occupying the position to be available and on call twenty-four hours a day and have the knowledge and experience necessary to address a myriad of issues that may arise concerning the College and any one of its departments. Traditionally, it has been my experience that the Dean of Instruction has always been the best suited college employee for the position of Dean of the College. The Dean of Instruction generally has the most overall exposure and experience in dealing with the various aspects of the

College and its departments. Dr. Huffstetler occupied the position of Dean of Instruction at the time I appointed him to be the Dean of the College. Ms. Greene did not request an opportunity to be considered for that position at that time. After the position was filled, she indicated that she had been a Dean longer than Dr. Huffstetler. However, I informed her that the position is generally filled by the Dean of Instruction because of the broad experience and more far reaching institutional qualifications required. I do not think that a business office dean would be appropriate for the position in light of the business office's more focused job responsibilities.

13.     When Dr. Huffstetler vacated the position of Dean of the College, I appointed James Wilson to that position. The Dean of Students was the most comparable position to the Dean of Instruction in terms of institutional exposure and wide range of responsibility. Mr. Wilson had been at the institution for some thirty years and had a broad base of knowledge concerning its operations. In my judgment his personal experience at Ingram and the fact that he was the Dean of Students positioned him most closely to a position such as the Dean of Instruction. Therefore, I determined he would be the best candidate for position of Dean of the College.

14.     Ms. Greene further claims that she should have been made the Dean of the College when James Wilson was promoted to that position after it was vacated by Huffstetler. However, Ms. Greene did not express an interest to me in that position at the time Mr. Wilson was selected. Further, Ms. Greene's qualifications in no way exceed those of Mr. Wilson. In fact, Mr. Wilson's supervisory experience was more extensive than Ms. Greene's, notwithstanding the fact that she had been a dean longer than he. Further, Ms. Greene's poor performance as the business office manager would have made

Ms. Greene a poor candidate for the position of Dean of the College. In my judgment,

Ms. Greene deserved no added responsibility to her duties as business office manager.

Since she appears incapable of performing her duties as business manager, I would not

have considered her for a promotion to the Dean of the College.

15.    Ms. Givens apparently claims that she was denied a promotion to Senior

Accountant (Gene Bridgman's old job). I do not recall anyone taking over that position.

It was my understanding that Ms. Greene elected to reorganize her department and I

approved the appointment of Ms. Patty Graves to a position in that department. Ms.

Graves is a white female. Ms. Graves also has a four-year college degree, a Master's

Degree and fifteen years experience in the auditor's office. In my judgment, Ms. Givens

is in no way comparable to Ms. Graves concerning qualifications, education or

experience.

16.    I do not recall ever having raised my voice at Ms. Givens. As I stated in

my deposition, I believe she is generally a good employee. It was recently reported to

me, however, that Ms. Givens was removed from one of the instructional campuses

because of inappropriate attire by the Department of Corrections. I am unaware of any

way in which I have made Ms. Givens' working environment unlawfully hostile because

of her gender or race.

17.    I have never treated either Ms. Greene or Ms. Givens differently than any

similarly situated employee based upon their race or gender. In my judgment, there are

no employees working at Ingram who are similarly situated with Monica Greene with

respect to job duties, responsibilities, title, or department. Likewise, I do not believe that

there are any other employees performing similar job duties and responsibilities as Ms.

Givens.

      18.    At all times relevant to this case, I have acted within the line and scope of

my authority.

*J. Douglas Chambers*

J. Douglas Chambers

STATE OF ALABAMA       )
                             )

COUNTY OF _Montgomery_   )

     I, the undersigned, authority, a notary public in and for said county and state, hereby certify that J. Douglas Chambers, whose name as President of J. F. Ingram State Technical College is signed to the foregoing and who is known to me, acknowledged before me on this day that the foregoing is true and correct to the best of his knowledge, information and belief and that he has executed the same as such officer and with full authority for and as the act of said corporation.

     Given under my hand and seal this _18th_ day of September, 2007.

*Shana T Proctor*

Notary Public
My Commission Expires_____

**Shana T. Proctor**
**Notary Public, AL State at Large**
**My Commission expires 08/01/2010**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| **JULIE GIVENS and**<br>**MONICA GREENE,** | ) <br> ) <br> ) |
| **Plaintiffs,** | ) <br> ) |
| **v.** | )    **Case No. CV 2:06 CV852-1D** <br> ) |
| **DOUGLAS CHAMBERS,**<br>**Individually and in his capacity**<br>**As President of INGRAM STATE**<br>**TECHNICAL COLLEGE; JAMES**<br>**WILSON, Individually and in his**<br>**Capacity as Dean of Students of**<br>**INGRAM STATE TECHNICAL**<br>**COLLEGE** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| **Defendants.** | ) |

## AFFIDAVIT OF JAMES WILSON

Before me, the undersigned notary public in and for said county and state,

personally appeared James Wilson, who upon being duly sworn on oath deposed and said

as follows:

1.    My name is James Wilson, and, from 1980 until 2006, I served as Director

of Student Support Services at J.F. Ingram State Technical College (Ingram). In addition,

during that time frame, I also served as Director of the Neglected and Delinquent Student

Program at Ingram. From 1998 until the present, I have served as Dean of Students at

Ingram, and, since 2007, I have also served as Dean of the College at Ingram.

2.    As Dean of the College, I am second in command when the President is

away from campus. However, I do not control or have decision-making authority with

respect to the job responsibilities of Ms. Greene or Ms. Givens. I cannot make hiring decisions, pay decisions, or direct the operation of their department.

3.    Ms. Greene and Ms. Givens claim that I made a statement that the business office gets special treatment from Ms. Sandy Caylor, the upholstery instructor. My comment was not appropriately characterized by Ms. Caylor in her memorandum. What I said was in jest and by no means intended to imply wrongdoing on the part of the business office.

4.    I have on numerous occasions experienced difficulty with receiving timely budgets, responses to requisitions, and payment of invoices from the business office. It has also been reported to me by other instructors that requisitions are not being processed in a timely manner. Additionally, vendors have denied services and goods because of non-payment of overdue accounts. I have reported my concerns regarding the business office to President Chambers on more than one occasion.

5.    In my experience, President Chambers raises his voice on occasion in the work place. He has at times raised his voice at me individually and in front of my subordinates. I have on occasion raised my voice at him as well. President Chambers does not raise his voice only at females or only at Ms. Greene or Ms. Givens. I have also witnessed President Chambers raise his voice at other males including Dr. Ricky Huffstetler, Dr. James Merk, and Mr. Gene Bridgman.

6.    In the prison setting, the provocative dress of females constitutes a security risk. This risk is particularly acute with respect to females as opposed to males. In my experience, I have never known there to be a security risk or disciplinary infraction by an inmate involving sexually inappropriate conduct because of the inappropriate attire

of a male employee. I am, however, aware of numerous instances, both by personal

experience and by report from the Department of Corrections, that the provocative dress

of female employees has created disciplinary infractions involving sexual misconduct by

inmates. These disciplinary infractions obviously constitute a significant security risk.

As a result, I am committed to assuring to the best of my ability and within the scope of

my own authority that employees under my charge are appropriately dressed when they

arrive on campus. President Chambers has admonished all employees (both men and

women) that professional attire is mandatory.

     7.     At all times relevant to this case, I have acted within the line and scope of

my authority.

_James E. Wilson_

James E. Wilson

STATE OF ALABAMA        )
                                        )
COUNTY OF Elmore        )

I, the undersigned, authority, a notary public in and for said county and state, hereby certify that James E. Wilson, Dean of Students and Support Services of J. F. Ingram State Technical College is signed to the foregoing and who is known to me, acknowledged before me on this day that the foregoing is true and correct to the best of his knowledge, information and belief and that he has executed the same as such officer and with full authority for and as the act of said corporation.

Given under my hand and seal this 18th day of September, 2007.

_Sharon W Cherry_

Notary Public
My Commission Expires 11|22|09

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JULIE GIVENS and<br>MONICA GREENE, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CV 2:06 CV852-1D |
| | ) | |
| DOUGLAS CHAMBERS, | ) | |
| Individually and in his capacity | ) | |
| As President of INGRAM STATE | ) | |
| TECHNICAL COLLEGE; JAMES | ) | |
| WILSON, Individually and in his | ) | |
| Capacity as Dean of Students of | ) | |
| INGRAM STATE TECHNICAL | ) | |
| COLLEGE | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF JAMES MERK

Before me, the undersigned notary public in and for said county and state, personally appeared James Merk, who upon being duly sworn on oath deposed and said as follows:

1.    My name is James Merk. I am currently the Dean of Instruction at J.F. Ingram State Technical College. I also administer and oversee the primary personnel functions of the College.

2.    In my experience, President Chambers has raised his voice on occasion in the work place. He has raised his voice at both males and females alike. He has raised his voice at me individually and in the presence of other employees. In my judgment and experience, President Chambers raises his voice

when he is concerned that a problem is not being properly addressed or when he is attempting to make his directives clear. He does not raise his voice only at female employees. Likewise, he does not raise his voice only at Ms. Givens and Ms. Greene.

3. In my experience, I have had numerous problems related to business office functions such as acquiring funds balances, processing purchase orders, requisitions, etc. Additionally, vendors have denied services and goods because of non-payment of over-due accounts. I have received complaints from numerous instructors that their requisitions go unprocessed for months with no word as to the status. During this last summer semester, several students received an incomplete on their grade because supplies requisitioned by the instructor were not processed by the business office in a timely fashion.

4. In my experience, Ms. Greene is unwilling to take responsibility for mistakes and timeliness problems associated with the business office. She frequently blames other departments, deans, and instructors when financial problems arise. I have sent numerous memos to Ms. Greene regarding requisitions that she has failed to process from my department. In my judgment, this is an unacceptable practice by an educational business office because it impairs the college's ability to perform its primary mission. I have reported my concerns regarding the business office to President Chambers on more than one occasion. Ms. Greene's poor performance affects many of the functions at Ingram and reduces the quality of programs we offer at Ingram.

5.    At all times relevant to this case, I have acted within the line and scope of my authority.

_James Merk_

James Merk

STATE OF ALABAMA          )
                                               )
COUNTY OF Elmore          )

    I, the undersigned, authority, a notary public in and for said county and state, hereby certify that James Merk, Dean of Instruction of J. F. Ingram State Technical College is signed to the foregoing and who is known to me, acknowledged before me on this day that the foregoing is true and correct to the best of his knowledge, information and belief and that he has executed the same as such officer and with full authority for and as the act of said corporation.

    Given under my hand and seal this 18th day of September, 2007.

_Shannon W Cherry_

Notary Public
My Commission Expires "/ zz /09

JF Ingram State Technical College
Job description

JOB TITLE:
Dean of Fiscal Affairs

SUMMARY: The Dean of Fiscal Affairs administers business affairs of the college by performing the following duties personally or through subordinate supervisors.

ESSENTIAL FUNCTIONS: include the following.
Other duties may be assigned.

- Prepares the operating budget draft for submission to President.
- Directs control of budget upon its approval by board, including collection, custody, investment, disbursement, accounting, and auditing of all college funds.
- Recruits, supervises, and oversees training of fiscal division staff
- Maintains effective communication and coordination with the Student Services Division and the Financial Aid Officer
- Keeps financial records and prepares annual financial report.
- Provides advice and assistance in the formulation and administration of polices and procedures for development and management of physical plant, including custodial care, sanitation, and fire and police services.
- Negotiates with industry representatives on costs and materials for building construction.
- Oversees inventory of all college equipment.
- Negotiates with industry representatives on costs and materials
- Coordinates service operations such as printing, duplicating, mail and messenger service.
- Negotiates with financial institutions to secure profitable interest rates for college funds

SUPERVISORY RESPONSIBILITIES:
Manages 5-10 subordinate employees in the business office and administrative office at the Main Campus. Is responsible for the overall direction, coordination, and evaluation of these, as well as transportation and maintenance services.

Carries out supervisory responsibilities in accordance with the organization's policies and applicable laws. Responsibilities include providing input in the process of interviewing, hiring, and training of new employees; planning, assigning, and directing work in the Fiscal Division; appraising performance; addressing complaints and resolving problems.

Qualification Requirements: To perform this job successfully, an individual must be able to perform each essential duty satisfactorily. The requirements listed below are representative of the knowledge, skill, and /or ability required. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

Education and /or Experience:
Master's degree (M.B.A.); and four to ten years related experience and or training


Blumberg No. 5114
DEFENDANT'S
EXHIBIT
1

LANGUAGE SKILLS:
Ability to read, analyze, and interpret the most complex documents. Ability to respond effectively to the most sensitive inquiries or complaints. Ability to write speeches and articles using original or innovative techniques or style. Ability to make effective and persuasive speeches and presentations on controversial or complex topics to top management, public groups, and /or boards of directors.

MATHEMATICAL SKILLS:
Ability to comprehend and apply principles of advanced finance and accounting.

REASONING ABILITY:
Ability to apply principles of logical thinking to a wide range of intellectual and practical problems. Ability to deal with nonverbal symbolism. Ability to deal with a variety of abstract and concrete variables.

OTHER SKILLS AND ABILITIES:
Ability to manage personnel effectively, and to communicate effectively. Ability to coordinate activities and cooperate with other divisions within the college.

QUALIFICATION REQUIREMENTS: To perform this job successfully, an individual must be able to perform each essential duty satisfactorily. The requirements listed below are representative of the knowledge, skill, and/or ability required. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

PHYSICAL DEMANDS: The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of Dean of Fiscal Affairs employee is regularly required to stand, reach with hands and arms, and talk or hear. The employee frequently is required to walk; use hands to finger, handle, or feel objects; stoop, kneel, crouch, or crawl. The employee is occasionally required to sit and climb or balance. Specific vision abilities required may include; close vision, distance vision, color vision, peripheral vision, depth vision, and the ability to adjust focus.

WORK ENVIRONMENT: The work environment characteristics described here are representative of those an employee encounters while performing the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.
COMMENTS: Employees in a correctional environment must remain aware of security concerns at all times.

Reviewed by: _____     Date: 6-15-04

Employee's Signature: _Monica J. Kreene_ Date: 6/15/04

## Administrative Personnel Evaluation Form
### J.F. Ingram State Technical College

Employee: Monica Greene                    Date: 08-28-97

Position/Title: Fiscal Dean

*The following items should be rated "as is" or "with comment" by the evaluator. Comments may be either positive or negative as needed. Employees may also request a "with comment" rating in order to make their own comments about specific items on this evaluation.*

**As is**        **With comment**

(✓)              ( )    1.    Provides effective leadership in areas of primary responsibility.

(✓)              ( )    2.    Does not create problems by using excessive amounts of leave.

(✓)              ( )    3.    Does not habitually arrive late or leave early.

(✓)              ( )    4.    Works effectively with employees at all levels to achieve common goals.

(✓)              ( )    5.    Maintains appropriate balance between professional role and personal relationships with employees.

(✓)              ( )    6.    Communicates effectively in oral and written form.

(✓)              ( )    7.    Develops and maintains appropriate and efficient working relationships with other administrators.

(✓)              ( )    8.    Cooperates with supervisor, accepts directions and receives assignments willingly.

(✓)              ( )    9.    Makes effort to work effectively as a member of the college's administrative team.

(✓)              ( )    10.   Participates in appropriate professional development activities.


DEFENDANT'S
EXHIBIT
2

### Overall Performance Appraisal

Circle the number that best summaraizes your overall appraisal of this employee.

1.  OUTSTANDING, EXCELLENT--Performance far exceeds requirements.

2.  VERY GOOD, ABOVE AVERAGE--Performance exceeds job requirements.

3.  GOOD, ACCEPTABLE--Performance meets requirements.

4.  BELOW AVERAGE, MINIMALLY ACCEPTABLE--Performance meets some, but not all, requirements.

5.  UNSATISFACTORY, UNACCEPTABLE--Performance does not meet job requirements.

Comments: Employee is very friendly and works well with others. She could improve on her self confidence when dealing with her co-workers. Tend to allow others to attach her when she is in charge. Her knowledge is most valuable to the College. She is an outstanding worker

**I hereby acknowledge that I have seen the full content of my written appraisal. My signature does not necessarily constitute that I agree wholly with the content of this appraisal. I understand that I may submit additional written response to my supervisor regarding any item contained in my appraisal.**

EMPLOYEE SIGNATURE _____ DATE _____

TITLE OR POSITION _____

EVALUATOR'S SIGNATURE *J. Douglas Chambers* DATE 9/2/97

TITLE *President*

# Administrative Personnel Evaluation Form
## J.F. Ingram State Technical College

Employee: **Greene, Monica**          Date: **July 15, 1998**

Position/Title: **Dean of Fiscal Affairs**

*The following items should be rated "as is" or "with comment" by the evaluator. Comments may be either positive or negative as needed. Employees may also request a "with comment" rating in order to make their own comments about specific items on this evaluation.*

| As is | With comment | | |
|---|---|---|---|
| ( ) | (✓) | 1. | Provides effective leadership in areas of primary responsibility. |
| (✓) | ( ) | 2. | Does not create problems by using excessive amounts of leave. |
| (✓) | ( ) | 3. | Does not habitually arrive late or leave early. |
| (✓) | ( ) | 4. | Works effectively with employees at all levels to achieve common goals. |
| (✓) | ( ) | 5. | Maintains appropriate balance between professional role and personal relationships with employees. |
| (✓) | ( ) | 6. | Communicates effectively in oral and written form. |
| (✓) | ( ) | 7. | Develops and maintains appropriate and efficient working relationships with other administrators. |
| (✓) | ( ) | 8. | Cooperates with supervisor, accepts directions and receives assignments willingly. |
| (✓) | ( ) | 9. | Makes effort to work effectively as a member of the college's administrative team. |
| (✓) | ( ) | 10. | Participates in appropriate professional development activities. |

Blumberg No. 5114

DEFENDANT'S
EXHIBIT
**3**

**Overall Performance Appraisal**

Circle the number that best summaraizes your overall appraisal of this employee. A rating of "1" or "5" requires written justification in the form of attachment(s) explaining why the employee received the rating.

1.   **OUTSTANDING, EXCELLENT**--Performance far exceeds requirements.

2.   **VERY GOOD, ABOVE AVERAGE**--Performance exceeds job requirements.

3.   **GOOD, ACCEPTABLE**--Performance meets requirements.

4.   **BELOW AVERAGE, MINIMALLY ACCEPTABLE**--Performance meets some, but not all, requirements.

5.   **UNSATISFACTORY, UNACCEPTABLE**--Performance does not meet job requirements.

Comments: _Employee continues to develop good leadership skills. Tends to get down when confronted by other workers. She continues to grow stronger each day. Very knowledgable in Business Area._

**I hereby acknowledge that I have seen the full content of my written appraisal. My signature does not necessarily indicate that I agree wholly with the content of this appraisal. I understand that I may submit additional written response to my supervisor regarding any item contained in my appraisal.**

EMPLOYEE SIGNATURE _Monica J. Greene_ DATE _8-5-98_

TITLE OR POSITION _DEAN OF FISCAL AFFAIRS_

EVALUATOR'S SIGNATURE _J. Douglas Chambers_ DATE _7/27/98_

TITLE _President_

ADMINISTRATIVE PERSONNEL EVALUATION FORM

J. F. INGRAM STATE TECHNICAL COLLEGE

EMPLOYEE: MONICA GREENE                    DATE: APRIL 3, 2002

POSITION/ TITLE: DEAN OF FISCAL AFFAIRS

*THE FOLLOWING ITEMS SHOULD BE RATED "AS IS" OR "WITH COMMENT" BY THE EVALUATOR. COMMENTS*

*MAY BE EITHER POSITIVE OR NEGATIVE AS NEEDED. EMPLOYEES MAY ALSO REQUEST A "WITH COMMENT" RATING IN*

*ORDER TO MAKE THEIR OWN COMMENTS ABOUT SPECIFIC ITEMS ON THIS EVALUATION.*

| MEET STANDARD AS IS | WITH COMMENT | | |
|---|---|---|---|
| (✓) | ( ) | 1 | ENCOURAGES GOOD MORALE AND INSTILLS A DESIRE TO ACHIEVE |
| (✓) | ( ) | 2 | PROVIDES EFFECTIVE LEADERSHIP IN AREAS OF PRIMARY RESPONSIBILITY |
| (✓) | ( ) | 3 | DOES NOT CREATE PROBLEMS BY USING EXCESSIVE AMOUNTS OF LEAVE. DOES NOT HABITUALLY ARRIVE LATE OR LEAVE EARLY |
| (✓) | ( ) | 4 | WORKS EFFECTIVELY WITH EMPLOYEES AT ALL LEVELS TO ACHIEVE COMMON GOALS |
| (✓) | ( ) | 5 | MAINTAINS APPROPRIATE BALANCE BETWEEN PROFESSIONAL ROLE AND PERSONAL RELATIONSHIPS WITH EMPLOYEES |
| (✓) | ( ) | 6 | COMMUNICATES EFFECTIVELY IN ORAL AND WRITTEN FORM |
| (✓) | ( ) | 7 | DEVELOPS AND MAINTAINS APPROPRIATE AND EFFICIENT WORKING RELATIONSHIPS WITH OTHER ADMINISTRATORS |
| (✓) | ( ) | 8 | COOPERATES WITH SUPERVISOR. ACCEPTS DIRECTIONS AND RECEIVES ASSIGNMENTS WILLINGLY |
| (✓) | ( ) | 9 | IS SENSITIVE TO PROBLEMS OR CHANGES WITHIN THE WORKPLACE AND RESPONDS APPROPRIATELY |
| (✓) | ( ) | 10 | MAKES EFFORT TO BE A "TEAM PLAYER", WORKS EFFECTIVE AS A MEMBER OF THE COLLEGE'S ADMINISTRATIVE TEAM |
| (✓) | ( ) | 11 | PARTICIPATES IN APPROPRIATE PROFESSIONAL DEVELOPMENT ACTIVITIES |


DEFENDANT'S EXHIBIT
4
Blumberg No. 5116

*COMMENTS RELATING TO SPECIFIC ITEMS ON THE PRECEDING PAGE SHOULD BE CROSS-REFERENCED TO THOSE ITEMS. GENERAL COMMENTS BY EITHER EMPLOYEE OR EVALUATOR MAY ALSO BE INCLUDED IN THIS SECTION. ADDITIONAL PAGES MAY BE ATTACHED IF NECESSARY.*

COMMENTS:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

SUPERVISOR'S SIGNATURE                    DATE

# Administrative Personnel Evaluation Form
## J.F. Ingram State Technical College

Employee: Monica Greene        Date: March 31, 2003

Position/ Title: Dean of Fiscal Affairs

*The following items should be rated "as is" or "with comment" by the evaluator. Comments may be either positive or negative as needed. Employees may also request a "with comment" rating in order to make their own comments about specific items on this evaluation.*

| Meet standard As is | With Comment | |
|---|---|---|
| (✓) | ( ) | 1. Encourages good morale and instills a desire to achieve. |
| (✓) | ( ) | 2. Provides effective leadership in areas of primary responsibility. |
| (✓) | ( ) | 3. Does not create problems by using excessive amounts of leave. Does not habitually arrive late or leave early. |
| (✓) | ( ) | 4. Works effectively with employees at all levels to achieve common goals. |
| (✓) | ( ) | 5. Maintains appropriate balance between professional role and personal relationships with employees. |
| (✓) | ( ) | 6. Communicates effectively in oral and written form. |
| (✓) | ( ) | 7. Develops and maintains appropriate and efficient working relationships with other administrators. |
| (✓) | ( ) | 8. Cooperates with supervisor, accepts directions and receives assignments willingly. |
| (✓) | ( ) | 9. Is sensitive to problems or changes within the workplace and responds appropriately. |
| (✓) | ( ) | 10. Makes effort to be a "team player", works effective as a member of the college's administrative team. |
| (✓) | ( ) | 11. Participates in appropriate professional development activities. |



DEFENDANT'S EXHIBIT 5

Blumberg No. 5114

*Comments relating to specific items on the preceding page should be cross-referenced to those items. General comments by either employee or evaluator may also be included in this section. Additional pages may be attached if necessary.*

Comments:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


_____            _____
Supervisor's Signature                                    Date



**Administrative Personnel Evaluation Form**
**J.F. Ingram State Technical College**

**Date:  April 1, 2004**

**Employee:  Monica J. Greene**          **Position/ Title:  Dean of Fiscal Affairs**

*The following items should be rated "as is" or "with comment" by the evaluator.  Comments may be either positive or negative as needed. Employees may also request a "with comment" rating in order to make their own comments about specific items on this evaluation.*

| Meets standard As is | With Comment | |
|---|---|---|
| ✓ | ( ) | 1. Encourages good morale and instills a desire to achieve. |
| ✓ | ( ) | 2. Provides effective leadership in areas of primary responsibility. |
| ✓ | ( ) | 3. Does not create problems by using excessive amounts of leave. Does not habitually arrive late or leave early. |
| ✓ | ( ) | 4. Works effectively with employees at all levels to achieve common goals. |
| ✓ | ( ) | 5. Maintains appropriate balance between professional role and personal relationships with employees. |
| ✓ | ( ) | 6. Communicates effectively in oral and written form. |
| ✓ | ( ) | 7. Develops and maintains appropriate and efficient working relationships with other administrators. |
| ✓ | ( ) | 8. Cooperates with supervisor, accepts directions, and receives assignments willingly. |
| ✓ | ( ) | 9. Is sensitive to problems or changes within the workplace and responds appropriately. |
| ✓ ( ) | ( ) | 10. Makes an effort to be a "team player" and  works effectively as a member of the College's administrative team. |
| ✓ | ( ) | 11. Participates in appropriate professional development activities. |

DEFENDANT'S EXHIBIT
6
Blumberg No. 5114

*Comments relating to specific items on the preceding page should be cross-referenced to those items. General comments by either employee or evaluator may also be included in this section. Additional pages may be attached if necessary.*

Comments:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

I hereby acknowledge that I have seen the full content of my written appraisal. My signature does not necessarily constitute that I agree wholly with the content of this appraisal. I understand that I may submit additional written response(s), regarding any item contained in this appraisal, to be included in my personnel file

Employee    Monica J. Greene          Monica J. Greene
            (Typed/Printed Name)              (Signature)
            Dean of Fiscal Affairs        4/26/04
                  (Title)                        (Date)

Supervisor   J. Douglas Chambers       J. Douglas Chambers
            (Typed/Printed Name)              (Signature)
            President                     4/1/04
                  (Title)                        (Date)

Ex. 8

Administrative Personnel Evaluation Form
J.F. Ingram State Technical College

Date: July 14, 2005

Employee: Monica Greene          Position/ Title:

*The following items should be rated "as is" or "with comment" by the evaluator. Comments may be either positive or negative as needed. Employees may also request a "with comment" rating in order to make their own comments about specific items on this evaluation.*

| Meets standard As is | With Comment | |
|---|---|---|
| (✓) | ( ) | 1. Encourages good morale and instills a desire to achieve. |
| ( ) | (✓) | 2. Provides effective leadership in areas of primary responsibility. |
| (✓) | ( ) | 3. Does not create problems by using excessive amounts of leave. Does not habitually arrive late or leave early. |
| ( ) | (✓) | 4. Works effectively with employees at all levels to achieve common goals. |
| ( ) | (✓) | 5. Maintains appropriate balance between professional role and personal relationships with employees. |
| ( ) | (✓) | 6. Communicates effectively in oral and written form. |
| ( ) | (✓) | 7. Develops and maintains appropriate and efficient working relationships with other administrators. |
| ( ) | (✓) | 8. Cooperates with supervisor, accepts directions, and receives assignments willingly. |
| ( ) | (✓) | 9. Is sensitive to problems or changes within the workplace and responds appropriately. |
| ( ) | (✓) | 10. Makes an effort to be a "team player" and works effectively as a member of the College's administrative team. |
| (✓) | ( ) | 11. Participates in appropriate professional development activities. |

DEFENDANT'S EXHIBIT 7

Blumberg No. 5114

Employee: _____

Position/Title: _____.

Date: _____

Employee displays good morale while on the job. She displays an honest and respectful attitude when working with other employees. Although the employee presents herself in a positive and professional manner, the majority of her work tends to show a weakness in her specific leadership roles as they relate to overseeing and administrating the affairs of the Business Office. Employee never refuses to do an assignment, but she rarely completes them. When she is asked about the status of an assignment or directive, she is always in the "I was fix in to" stage. Although the employee is regularly offered assistance by the Administrative staff, she seldom involves anyone at that level to help her. On more that one occasion, administrators informed her that their financial statements were wrong, or not the same as the Business Office. They offered their personal assistance, as well as their employees, to temporarily work with her staff. When she did accept the offers, it was only as a last result. The employee is weak in providing effective leadership governing inventory accountability and live work operations. The procedures she uses for monitoring live work projects are only reviewed when directed by the President, or when a problem occurs. The employee never acknowledges, admits, or accepts responsibility for incorrect actions or mistakes that occurs in the Business Office. She tends to blame other employees for problems related to her area, and never addresses whether she, being the Dean, should have had controls in place to avoid possible breakdowns, confusion or conflicts related to financial matters. The internal controls of the Business Office are vague and ineffective. Some other examples or areas of the College where her leadership is needed, but is either missing or ineffective are:

The President directed the Employee to:

1.  Develop a "How to use the Business Office manual or brochure". She didn't do it.
2.  Provide the President with a monthly expense on all regular expenses of the College. She didn't do it.
3.  To identify all vehicles and the conditions of each. She didn't do it
4.  To compare insurance companies for the best rates. She didn't do it.
5.  To design a key board for all buildings and vehicles. She didn't do it.
6.  To evaluate the pest contract and identify product and usages. She didn't do it.
7.  Provide a report on all college employees who are classified as high risk drivers by the insurance company. She didn't do it.
8.  Implement new purchasing procedures. Status unclear.
9.  Review procedures to use receipts for small work projects, instead of using large amounts of paperwork. She didn't do it.
10. Stop allowing her staff to carry Business Office documents home. She didn't do it.
11. Compare J F I Business Office forms and guidelines to other ACS. She didn't do it.
12. Compare J F I work order procedures with other ACS. She didn't do it.

13. Reactivate or change the reimbursement time period for travel payment. She didn't do it

14. Design a better procedure for purchasing and receiving. She didn't do

15. Regularly monitor live work projects. She didn't do it.

16. Implement a time line for all personal items without proper paperwork, to be removed from campus. She didn't do it.

17. Report on the payment status on all accounts with vendors. She didn't do it.

18. Provide cross training for her staff. Status pending

In order for the Business Office to function as it should, the Dean must make an effort to improve in her leadership and management style. She must refrain from worrying about whether she will be liked or accepted by the people who continues to violate policies, and spend more time on making sure that College policies are followed by customers and employees at all times. She must seek ways to improve in her oral communication. She must also acknowledge that she has weaknesses, and that recognizing them is the first step toward improvement. The President will continue to expect for the employee to improve and provide effective and acceptable leadership in her role as Dean of fiscal Affairs. If it is determined by the Dean and/ or the President that corrective measures cannot be immediately identified, developed, and implemented, the President will take appropriate action as needed

# INGRAM STATE TECHNICAL COLLEGE

February 6, 2006

*Ingram*
*State*
*Technical*
*College*
• *Developing Responsible Citizens* •

J. Douglas Chambers
President

Rickey A. Hoffstutler, Ph.D.
Dean of the College

Monica J. Greene
Dean of
Fiscal Affairs

James E. Wilson
Dean of Students
and Support Services

MEMORANDUM

TO:        J. Douglas Chambers
           President

FROM:      Monica J. Greene    *Monica*
           Dean of Fiscal Affairs

RE:        My Administrative Personnel Evaluation Form

This correspondence is written to refute the negative items listed in my personnel evaluation and to show the reasons why I did not agree to sign it. I would also like to note that I received the evaluation on October 10, 2005, not the date of July 14, 2005, which is showing on the cover page. Apparently that date is the date that Dr. Merk gave the evaluations to you to complete.

I will address the criticisms in the order that they were presented to me in the evaluation. The first negative remark is that of a weakness in my leadership role as it relates to the business office. I can refute all the items listed below in this evaluation so I would like to know what work issues specifically you are addressing in this statement. This statement is subjective and appears to be personal and unsubstantiated.

You say that I rarely complete assignments. I disagree with this statement and I can show a record of completed assignments. I would like to note the numerous additional assignments given to me for all types of various items. It is my opinion that I am given these numerous additional assignments as an effort on your part to overload me so that I cannot complete these assignments. I can show in any given cabinet meeting the numerous additional assignments that I am given on top of all the required assignments that come with my position.

I disagree with your statement that I am always in the "I was fixing to" stage. Always is also a subjective word that is being used in this context again. I complete numerous tasks immediately. There are other tasks that cannot be fixed immediately. Some tasks require researching facts, making observations or comparisons, and numerous other business office tactics. I take the



DEFENDANT'S
EXHIBIT
8

necessary steps on the tasks that I am assigned, but I do complete my assignments. I have multiple documents to disprove this statement.

The statement that you made about me not taking help from other administrators is not accurate either. If there is some reason that I need assistance from any other administrator, I will go to them and ask them to assist me on some specific task. Usually, problems that are encountered involve the business office and these problems are fixed by the business office. I have no problem with asking any other individual for help if I need it. Again, this is a subjective statement that is brought up quite frequently by you, in my opinion, to degrade me in front of other administrators. It is degrading because you bring it up so often that it appears that you are trying to humiliate me in front of my peers. A subjective statement does not become true just because you say it is. It needs evidence or proof which you have not provided.

The statement about the financial statements being wrong or not the same and the implications of this remark, I object to also. Certain financial status reports are given to administrators that manage particular program areas. Many times the status reports are not the same as their records because they do not account for purchase order encumberances, dates of invoice payments, and the like. There are numerous reasons why our numbers may not be consistent with theirs, but it does not mean the financial status reports are wrong. There was not a need for them to send someone from their departments to work with our department. These items that crop up on occasion are fully explainable and are minor. The statement that when I did accept the help, it was a last result is not accurate either. This whole matter really involves the Special Education department. This department could not understand their financial status reports because they were not taking into account all the variables that I mentioned above. The Special Education Director and I agreed that representatives from my department and their department would meet monthly to iron out and explain any differences that might occur. This was not done as a last resort, it was begun when it was determined by my office that it needed to be initiated. Since these meetings have proven to be helpful, my department continues to meet with their department on a monthly basis. Despite what you have written up, I can show you evidence of my working with other areas of the college whenever there is a need.

I strongly object and disagree with the statement that I am weak in providing effective leadership for inventory accountability and live work. I also object that I only review live work projects when I am directed or a problem occurs. These statements are totally inaccurate. I dedicate a large portion of my time to the live work program. I do this because it is a large part of our college business affairs. Live work generates the only additional funds that the college receives. Since J.F. Ingram has the largest live work program in the

state, it is only fitting that I continually strive to perfect it in any way that I can. For these reasons I dedicate the time to the program. There are occasional problems that occur but that is only normal in an operation of this size. The facts are that when you compare the volume of live work to the problems of live work, the problems are only minimal. I have documentation to show the time that I dedicate to live work and I will be glad to provide it to you. I check some portion of live work on a daily basis. I also provide leadership for inventory accountability. My office bears this responsibility and takes it very seriously. Again, in an institution of this size, there are inventory problems that occur but they are corrected by my staff when this happens. I do not know how you can make a blanket statement like this that has no merit. The state auditors have not had a finding regarding any problems with inventory in my 11 years as dean, so someone is providing leadership in this area.

I disagree with the statement that I never admit, acknowledge, or accept mistakes or errors that may occur in my department. I also disagree that I blame others and never address these matters as being related to the business office. Again, I must remind you that never is a subjective word and is definitely inaccurate in this matter. I will always admit mistakes or problems that are real because I know that we are all human beings and we all make mistakes. Many times you have tried to blame the business office for mistakes or problems that are not related to our office. In fact, you basically try to blame the business office for almost any problem at J.F. Ingram. I have not and I will not stand for this. I do not blame others for business office problems. I do not take the blame for something not the fault of the business office, though. I must take a strong stance on this because you have tried to blame the business office on numerous occasions for almost anything that goes wrong at the college. My office continually strives to put controls in place at the college. I do address a breakdown in control if there is one but I do not consider every problem at the college as a business office problem. Once again, auditors have praised our policies and procedures for many years. This item, in my opinion, is another personal attack on me; one that is not job-related.

I also strongly object to the statement that the internal controls of the business office are vague and ineffective. This is a very subjective statement. This appears to be your opinion because I know what I am evaluated by as a Financial Dean and the college meets these standards. We continue to have unqualified audit opinions, the required funds that we need as contingency, and a list of positive variables that are required for my office to be effective. This statement is an opinion that can be disproved if necessary. The audit records of this institution refute this statement in themselves, as no institution with weak and vague controls could operate as effectively as we do.

The next part of my evaluation was examples by you where my leadership was missing or ineffective  I can refute all the items below and I will  I will do this in outline form as you did.

1.  A Business Office Manual "Draft" was developed quite some time ago- I presented it in the cabinet meeting and I never received approval from you on whether it was approved or not.

2.  I have provided these expenses to you on various occasions when you ask for them-I have also informed you that I have monthly reports that I can give you-You have never shown a desire to have these.

3.  All vehicles are identified for our insurance records – I informed you of this on several occasions.

4.  I did have Mrs  Givens begin soliciting quotes from different insurance carriers, but in the process you informed Mrs. Givens that you were wanting to go with someone that you knew, so there was not any reason to get quotes  It would not be fair to the other carriers to have them spend the time on putting together a proposal and not be chosen

5.  I turned the keys and the keyboard over to Mr. Marty Martin and assigned him this task.  I assigned this quite some time ago but there are a tremendous amount of keys at the college and it will take some time to have this completed.

6.  I evaluated the pest contract that the college had at the current time because when this situation came up we were having a termite problem.  The current contract that the college had did not cover the termite problem  At that time, I called 3 companies- Cook's Pest Control, Orkin, and Terminix.  I informed you verbally on the quotes from each company.  After discussion with the appropriate personnel, which included you, the college decided to go with Cook's Pest Control for the pest services  A purchase order was issued by the college to Cook's on 4/19/05.  I kept you informed of this throughout the decision making process.  I also presented it in a cabinet meeting and informed all in attendance.

7.  The college only had one driver at the time that was considered high risk  I verbally informed you of this in a cabinet meeting and in your office on more than one occasion

8.  A new purchasing procedure was implemented on May 3, 2004.  The memorandum announcing this change was distributed to all employees at our Spring Inservice Meeting on April 26, 2004  I went over the procedure step by step in this meeting

9.  The procedure of receipting of small work projects only applies to the Barbering, Cosmetology, and Horticulture programs. A memorandum was sent out regarding the receipting of the barbering program on March 11, 2004. The Cosmetology program was already receipting theirs this way. The Horticulture program had been doing their receipting this way for quite some time. These are the only shops where this is feasible. This project was completed.

10. My staff does not take any information home that cannot be replaced. On occasion I have allowed them to take reports home to check on their own personal time. I see it as dedication, you see it as something wrong with me. I did stop them from doing this though since you had a problem with it.

11. My office and I are constantly talking to other colleges regarding all types of forms and procedures if we have questions. I can supply the phone logs if necessary.

12. My office and I have contacted many colleges regarding work order procedures. I have the phone logs to verify this also. At the present time we are converting to a new system so we have been in constant contact with others.

13. The time period for travel checks has been changed on more than one occasion.

14. The new purchasing procedure implemented on May 3, 2004 covered this.

15. I do regularly monitor live work projects. Some items I look at daily and some items I monitor on a monthly basis. This includes all three campuses. I can supply documentation on this.

16. I implemented this by memorandum with the Dean of the College back in July 23, 2002. Any items on campus have an approved work order.

17. I have provided this on more than one occasion. I can supply documentation on this.

18. My staff is fully cross-trained. We consistently make an effort to do this and always have. We have staff minutes that can support this.

Mr. Chambers, this evaluation appears to be a personal, unwarranted, and inaccurate attack. The choice of words that you used, such as, "you

always" and "you never" can be verified by any type of evaluator as personal attack words. I want it noted that I fully object to its contents and stand ready to defend any item in my response. This evaluation, the first negative one I have received in 16 years at this institution, is the most blatant and bold attempt yet to undermine my career. If there was <u>any</u> reason for this evaluation to be so negative, or for that matter, any reason for you creating this hostile work environment for me, I would understand. But, I have been an effective, leader and manager (though not perfect) for my department. I believe this evaluation to be in conflict with the evidence compiled in my record after almost 20 years of service in the Alabama College System. It stands alone as the only formal attack on my good name and I am disappointed that you have chosen to pursue this course.

cc: Personnel File

Ex. 1

*State of Alabama*

## Alabama Department of Corrections

Kilby Correctional Facility
P O Box 150
Mt. Meigs, AL 36057

TERRANCE MCDONNELL
WARDEN III

334-215-6603
Fax-215-6606

March 8, 2006

MEMORANDUM:

FROM:        CAPTAIN BOBBY BARRETT

TO:          WARDEN WILLIE ROWELL

SUBJECT:     INVESTIGATION ON JFI EMPLOYEE - MRS. ▓▓▓▓▓▓

On February 28th, 2006, or possibly 3-1-06, Mr. David Wallace, JFI employee, approached me and conveyed concerns he had with Mrs. ▓▓▓▓▓▓ also a JFI employee. Mr. Wallace stated to me that Mrs. ▓▓▓▓ is jeopardizing the integrity of the program and the safety of himself and Mrs. Walker who is also a JFI employee working with Mrs. ▓▓▓▓.

Mr. Wallace stated to me that Mrs. ▓▓▓▓ takes her smock off, which she should be wearing at all times, revealing unprofessional clothing. He stated he has witnessed inmates who work behind the JFI trailers watch Mrs. ▓▓▓▓ through the windows. This was discussed with Mrs. ▓▓▓▓ by me and will be addressed later in this letter. Mr. Wallace stated to me that Mrs. ▓▓▓▓ intentionally places her body in questionable positions, bending over at her waist with her buttocks pointing toward her students and leaning over answering questions with her smock unbuttoned revealing her unprofessional clothing. There were other allegations but they have the same overtones.

On March 7, 2006 at approximately 8:30 AM I spoke with Mrs. Walker, a co-worker with Mrs. ▓▓▓▓ who works directly with Mrs. ▓▓▓▓ on a daily basis in the classroom. I asked Mrs. Walker about the aforementioned allegations. Mrs. Walker did state to me that Mrs. ▓▓▓▓ does continue to wear clothing that looks like "Victoria Secrets" garments under her smock. I asked if Mrs. ▓▓▓▓ wears her smock unbuttoned. Mrs. Walker stated she does at times. I asked her does she ever remove her smock while in the classroom. Mrs. Walker said she has when no students are present, like during lunch. I asked Mrs. Walker if she ever noticed Mrs. ▓▓▓▓ doing anything unusual while standing in the window of the trailer. Mrs. Walker stated she did not. Furthermore if she did, it would have been unintentional.

On 3-7-06 at approximately 9:30 AM I spoke with Mrs. ▓▓▓▓ in my office. I first stated to Mrs. ▓▓▓▓ that I did remove her runner for spreading inaccurate statements that he, the inmate, had no knowledge of. I advised her the inmate did admit to me he did in fact tell

1



DEFENDANT'S
EXHIBIT
9