# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **JULIE GIVENS and** | ) | |
| **MONICA GREENE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CV 2:06 CV852-1D** |
| | ) | |
| **DOUGLAS CHAMBERS,** | ) | |
| **Individually and in his capacity** | ) | |
| **As President of INGRAM STATE** | ) | |
| **TECHNICAL COLLEGE; JAMES** | ) | |
| **WILSON, Individually and in his** | ) | |
| **Capacity as Dean of Students of** | ) | |
| **INGRAM STATE TECHNICAL** | ) | |
| **COLLEGE** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MOTION FOR SUMMARY JUDGMENT</u>

ATTACHMENTS TO PREVIOUSLY FILED MOTION FOR SUMMARY
JUDGMENT



*Ingram State Technical College*
**ISTC**
• *Developing Responsible Citizens* •

## INGRAM STATE TECHNICAL COLLEGE

### April 23, 2004

**J. Douglas Chambers**
President

~~Rickey A. Huffstutler, Ph.D~~
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

## MEMORANDUM

**TO:**      All Employees

**FROM:**   Monica J. Greene
Dean of Fiscal Affairs    *Monica*

**RE:**      Purchasing Procedures

This correspondence is written to inform you of the revised purchasing procedures that will be implemented at the college beginning on May 3, 2004.  I have attached the guidelines for the purchasing process to this memorandum.  Thank you for your immediate attention to this matter.  Please contact me if you have any questions.



DEFENDANT'S
EXHIBIT
*1 – Greene*

*P.O. Box 220350  •  Deatsville, Alabama 36022*

*Phone: 334-285-5177  •  Fax: 334-285-5328*

## REVISED PURCHASING GUIDELINES EFFECTIVE MAY 3, 2004

(1) A purchase requisition (PR) – Request for purchase order is required on all purchases except for maintenance contracts, utilities, travel, and professional services.

(2) The purchase requisition (PR) originates from the employee and must be approved by appropriate dean or supervisor. The requesting employee is responsible for providing full details in order to procure. Appropriate dean responsible for ensuring monies available in budget and providing expenditure account information.

(3) Purchase requisition (PR) submitted to Dean of Fiscal Affairs for approval.

(4) Dean of Fiscal Affairs forwards purchase requisition to President for approval. President forwards to accounting after signing.

(5) Purchase order executed and printed. The revised purchase order forms will be 3-part colored forms. Distribution of the forms will be as follows:

| | |
|---|---|
| Original (White) Copy | Vendor |
| Yellow Copy | Requestor (upon receipt of merchandise or service, this copy is to be returned to accounts payable marked complete and signed. It is your responsibility to verify that items shipped are the same item and quantity that were ordered. |
| Pink Copy | File (Accounts Payable) |

As you can see from the above guidelines, the majority of the guidelines are no different than our current process. The main difference of the revised process is that the fiscal office will be mailing copies of all the purchase orders to the vendors for processing. All requests for materials (other than items for resale) will be ordered by the fiscal office. You will be able to order your resale items the same as you have been ordering but the vendor will be receiving a "confirming copy" by mail. We will have everything shipped to central receiving and the items will be transported to you. The requestor is to check the "material receipt" packing slip for accuracy, sign receipt, and promptly return to accounts payable.

These revisions are part of an ongoing effort to improve the fiscal procedures at the college so that we can provide you with efficient services. The requestor will be notified if the purchase requisition is disapproved. You will receive the request back with a note detailing the reason. The absence of this will mean that the request is in the approval process. We ask that you do not call to inquire about the status of the order before 5 days. Most requests will be handled immediately but the process could be slowed temporarily due to the absence of one or more of the approving authorities. The process will resume when all parties are present.

There will be exceptions on occasion for "emergency purchases" that will be expedited immediately. The vendor will be mailed a "confirming copy" of the purchase order.

Mrs. Jeanna Givens will be tasked with printing the purchase orders and Miss Kerri Conger will assist her with the mailing of the orders. Other fiscal department staff will assist in any step of the process if the need arises.

The fiscal department "thanks you" in advance for your cooperation in this revised process. There is always a learning process in any type of change and we look forward to working together with you on this matter. This revised process will make the college more accountable and this is always the ultimate goal in all that we do.

Employee: _____
Position/Title: _____.
Date: _____

Employee displays good morale while on the job. She displays an honest and respectful attitude when working with other employees. Although the employee presents herself in a positive and professional manner, the majority of her work tends to show a weakness in her specific leadership roles as they relate to overseeing and administrating the affairs of the Business Office. Employee never refuses to do an assignment, but she rarely completes them. When she is asked about the status of an assignment or directive, she is always in the "I was fix in to" stage. Although the employee is regularly offered assistance by the Administrative staff, she seldom involves anyone at that level to help her. On more that one occasion, administrators informed her that their financial statements were wrong, or not the same as the Business Office. They offered their personal assistance, as well as their employees, to temporarily work with her staff. When she did accept the offers, it was only as a last result. The employee is weak in providing effective leadership governing inventory accountability and live work operations. The procedures she uses for monitoring live work projects are only reviewed when directed by the President, or when a problem occurs. The employee never acknowledges, admits, or accepts responsibility for incorrect actions or mistakes that occurs in the Business Office. She tends to blame other employees for problems related to her area, and never addresses whether she, being the Dean, should have had controls in place to avoid possible breakdowns, confusion or conflicts related to financial matters. The internal controls of the Business Office are vague and ineffective. Some other examples or areas of the College where her leadership is needed, but is either missing or ineffective are:

The President directed the Employee to:

1. Develop a "How to use the Business Office manual or brochure". She didn't do it.
2. Provide the President with a monthly expense on all regular expenses of the College. She didn't do it.
3. To identify all vehicles and the conditions of each. She didn't do it.
4. To compare insurance companies for the best rates. She didn't do it.
5. To design a key board for all buildings and vehicles. She didn't do it.
6. To evaluate the pest contract and identify product and usages. She didn't do it.
7. Provide a report on all college employees who are classified as high risk drivers by the insurance company. She didn't do it.
8. Implement new purchasing procedures. Status unclear.
9. Review procedures to use receipts for small work projects, instead of using large amounts of paperwork. She didn't do it.
10. Stop allowing her staff to carry Business Office documents home. She didn't do it.
11. Compare J F I Business Office forms and guidelines to other ACS. She didn't do it.
12. Compare J F I work order procedures with other ACS. She didn't do it.

13. Reactivate or change the reimbursement time period for travel payment. She didn't do it.
14. Design a better procedure for purchasing and receiving. She didn't do.
15. Regularly monitor live work projects. She didn't do it.
16. Implement a time line for all personal items without proper paperwork, to be removed from campus. She didn't do it.
17. Report on the payment status on all accounts with vendors. She didn't do it.
18. Provide cross training for her staff. Status pending.

In order for the Business Office to function as it should, the Dean must make an effort to improve in her leadership and management style. She must refrain from worrying about whether she will be liked or accepted by the people who continues to violate policies, and spend more time on making sure that College policies are followed by customers and employees at all times. She must seek ways to improve in her oral communication. She must also acknowledge that she has weaknesses, and that recognizing them is the first step toward improvement. The President will continue to expect for the employee to improve and provide effective and acceptable leadership in her role as Dean of fiscal Affairs. If it is determined by the Dean and/ or the President that corrective measures cannot be immediately identified, developed, and implemented, the President will take appropriate action as needed.



*Ingram*
*State*
*Technical*
*College*

**ISTC**

• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

February 6, 2006

MEMORANDUM

TO:     J. Douglas Chambers
        President

FROM:   Monica J. Greene     *Monica*
        Dean of Fiscal Affairs

RE:     My Administrative Personnel Evaluation Form

This correspondence is written to refute the negative items listed in my personnel evaluation and to show the reasons why I did not agree to sign it. I would also like to note that I received the evaluation on October 10, 2005, not the date of July 14, 2005, which is showing on the cover page. Apparently that date is the date that Dr. Merk gave the evaluations to you to complete.

I will address the criticisms in the order that they were presented to me in the evaluation. The first negative remark is that of a weakness in my leadership role as it relates to the business office. I can refute all the items listed below in this evaluation so I would like to know what work issues specifically you are addressing in this statement. This statement is subjective and appears to be personal and unsubstantiated.

You say that I rarely complete assignments. I disagree with this statement and I can show a record of completed assignments. I would like to note the numerous additional assignments given to me for all types of various items. It is my opinion that I am given these numerous additional assignments as an effort on your part to overload me so that I cannot complete these assignments. I can show in any given cabinet meeting the numerous additional assignments that I am given on top of all the required assignments that come with my position.

I disagree with your statement that I am **always** in the "I was fixing to" stage. Always is also a subjective word that is being used in this context again. I complete numerous tasks immediately. There are other tasks that cannot be fixed immediately. Some tasks require researching facts, making observations or comparisons, and numerous other business office tactics. I take the

necessary steps on the tasks that I am assigned, but I do complete my assignments. I have multiple documents to disprove this statement.

The statement that you made about me not taking help from other administrators is not accurate either. If there is some reason that I need assistance from any other administrator, I will go to them and ask them to assist me on some specific task. Usually, problems that are encountered involve the business office and these problems are fixed by the business office. I have no problem with asking any other individual for help if I need it. Again, this is a subjective statement that is brought up quite frequently by you, in my opinion, to degrade me in front of other administrators. It is degrading because you bring it up so often that it appears that you are trying to humiliate me in front of my peers. A subjective statement does not become true just because you say it is. It needs evidence or proof which you have not provided.

The statement about the financial statements being wrong or not the same and the implications of this remark, I object to also. Certain financial status reports are given to administrators that manage particular program areas. Many times the status reports are not the same as their records because they do not account for purchase order encumberances, dates of invoice payments, and the like. There are numerous reasons why our numbers may not be consistent with theirs, but it does not mean the financial status reports are wrong. There was not a need for them to send someone from their departments to work with our department. These items that crop up on occasion are fully explainable and are minor. The statement that when I did accept the help, it was a last result is not accurate either. This whole matter really involves the Special Education department. This department could not understand their financial status reports because they were not taking into account all the variables that I mentioned above. The Special Education Director and I agreed that representatives from my department and their department would meet monthly to iron out and explain any differences that might occur. This was not done as a last resort, it was begun when it was determined by my office that it needed to be initiated. Since these meetings have proven to be helpful, my department continues to meet with their department on a monthly basis. Despite what you have written up, I can show you evidence of my working with other areas of the college whenever there is a need.

I strongly object and disagree with the statement that I am weak in providing effective leadership for inventory accountability and live work. I also object that I only review live work projects when I am directed or a problem occurs. These statements are totally inaccurate. I dedicate a large portion of my time to the live work program. I do this because it is a large part of our college business affairs. Live work generates the only additional funds that the college receives. Since J.F. Ingram has the largest live work program in the

state, it is only fitting that I continually strive to perfect it in any way that I can. For these reasons I dedicate the time to the program. There are occasional problems that occur but that is only normal in an operation of this size. The facts are that when you compare the volume of live work to the problems of live work, the problems are only minimal. I have documentation to show the time that I dedicate to live work and I will be glad to provide it to you. I check some portion of live work on a daily basis. I also provide leadership for inventory accountability. My office bears this responsibility and takes it very seriously. Again, in an institution of this size, there are inventory problems that occur but they are corrected by my staff when this happens. I do not know how you can make a blanket statement like this that has no merit. The state auditors have not had a finding regarding any problems with inventory in my 11 years as dean, so <u>someone</u> is providing leadership in this area.

I disagree with the statement that I **never** admit, acknowledge, or accept mistakes or errors that may occur in my department. I also disagree that I blame others and **never** address these matters as being related to the business office. Again, I must remind you that never is a subjective word and is definitely inaccurate in this matter. I will always admit mistakes or problems that are real because I know that we are all human beings and we all make mistakes. Many times you have tried to blame the business office for mistakes or problems that are not related to our office. In fact, you basically try to blame the business office for almost any problem at J.F. Ingram. I have not and I will not stand for this. I do not blame others for business office problems. I do not take the blame for something not the fault of the business office, though. I must take a strong stance on this because you have tried to blame the business office on numerous occasions for almost anything that goes wrong at the college. My office continually strives to put controls in place at the college. I do address a breakdown in control if there is one but I do not consider every problem at the college as a business office problem. Once again, auditors have praised our policies and procedures for many years. This item, in my opinion, is another personal attack on me; one that is not job-related.

I also strongly object to the statement that the internal controls of the business office are vague and ineffective. This is a **very subjective** statement. This appears to be your opinion because I know what I am evaluated by as a Financial Dean and the college meets these standards. We continue to have **unqualified** audit opinions, the required funds that we need as contingency, and a list of positive variables that are required for my office to be effective. This statement is an opinion that can be disproved if necessary. The audit records of this institution refute this statement in themselves, as no institution with weak and vague controls could operate as effectively as we do.

The next part of my evaluation was examples by you where my leadership was missing or ineffective. I can refute all the items below and I will. I will do this in outline form as you did.

1. A Business Office Manual "Draft" was developed quite some time ago- I presented it in the cabinet meeting and I never received approval from you on whether it was approved or not.

2. I have provided these expenses to you on various occasions when you ask for them-I have also informed you that I have monthly reports that I can give you-You have never shown a desire to have these.

3. All vehicles are identified for our insurance records – I informed you of this on several occasions.

4. I did have Mrs. Givens begin soliciting quotes from different insurance carriers, but in the process you informed Mrs. Givens that you were wanting to go with someone that you knew, so there was not any reason to get quotes. It would not be fair to the other carriers to have them spend the time on putting together a proposal and not be chosen.

5. I turned the keys and the keyboard over to Mr. Marty Martin and assigned him this task. I assigned this quite some time ago but there are a tremendous amount of keys at the college and it will take some time to have this completed.

6. I evaluated the pest contract that the college had at the current time because when this situation came up we were having a termite problem. The current contract that the college had did not cover the termite problem. At that time, I called 3 companies- Cook's Pest Control, Orkin, and Terminix. I informed you verbally on the quotes from each company. After discussion with the appropriate personnel, which included you, the college decided to go with Cook's Pest Control for the pest services. A purchase order was issued by the college to Cook's on 4/19/05. I kept you informed of this throughout the decision making process. I also presented it in a cabinet meeting and informed all in attendance.

7. The college only had one driver at the time that was considered high risk. I verbally informed you of this in a cabinet meeting and in your office on more than one occasion.

8. A new purchasing procedure was implemented on May 3, 2004. The memorandum announcing this change was distributed to all employees at our Spring Inservice Meeting on April 26, 2004. I went over the procedure step by step in this meeting.

9.  The procedure of receipting of small work projects only applies to the
    Barbering, Cosmetology, and Horticulture programs. A memorandum
    was sent out regarding the receipting of the barbering program on
    March 11, 2004. The Cosmetology program was already receipting
    theirs this way. The Horticulture program had been doing their
    receipting this way for quite some time. These are the only shops
    where this is feasible. This project was completed.

10. My staff does not take any information home that cannot be replaced.
    On occasion I have allowed them to take reports home to check on
    their own personal time. I see it as dedication, you see it as something
    wrong with me. I did stop them from doing this though since you had
    a problem with it.

11. My office and I are constantly talking to other colleges regarding all
    types of forms and procedures if we have questions. I can supply the
    phone logs if necessary.

12. My office and I have contacted many colleges regarding work order
    procedures. I have the phone logs to verify this also. At the present
    time we are converting to a new system so we have been in constant
    contact with others.

13. The time period for travel checks has been changed on more than one
    occasion.

14. The new purchasing procedure implemented on May 3, 2004 covered
    this.

15. I do regularly monitor live work projects. Some items I look at daily
    and some items I monitor on a monthly basis. This includes all three
    campuses. I can supply documentation on this.

16. I implemented this by memorandum with the Dean of the College back
    in July 23, 2002. Any items on campus have an approved work order.

17. I have provided this on more than one occasion. I can supply
    documentation on this.

18. My staff is fully cross-trained. We consistently make an effort to do
    this and always have. We have staff minutes that can support this.

Mr. Chambers, this evaluation appears to be a personal, unwarranted, and
inaccurate attack. The choice of words that you used, such as, **"you**

always"and **"you never"**can be verified by any type of evaluator as personal attack words. I want it noted that I fully object to its contents and stand ready to defend any item in my response. This evaluation, the first negative one I have received in 16 years at this institution, is the most blatant and bold attempt yet to undermine my career. If there was <u>any</u> reason for this evaluation to be so negative, or for that matter, any reason for you creating this hostile work environment for me, I would understand. But, I have been an effective, leader and manager (though not perfect) for my department. I believe this evaluation to be in conflict with the evidence compiled in my record after almost 20 years of service in the Alabama College System. It stands alone as the only formal attack on my good name and I am disappointed that you have chosen to pursue this course.

cc: Personnel File

## JOB DESCRIPTION

**NAME:**        Mrs. Monica Greene

**JOB TITLE:**  Jr. Accountant

**DATE:**        January 24, 1990

## SPECIFIC DUTIES AND RESPONSIBILITIES:

(1)  Assist with all financial data on computer;

(2)  Assist with the preparation of budgets, financial
     statements, EBO budget, two-year facility report,
     quarterly personnel report, and monthly general ledger
     reports;

(3)  Assist in maintaining equipment inventory;

(4)  Prepare all accounts payable for institution, including
     checking, coding, posting, balancing statements, and
     preparing monthly remittance and mailing same;

(5)  Assist in writing purchase orders and preparing purchase
     order reports;

(6)  Assist in accounting for restricted funds, budgets, monthly
     reports, and final reports;

(7)  Assist others in work overload as needed; and

(8)  Other duties as assigned by Dr. Gregg or Mr. Powell.

APPROVED: _~Murry C. Gregg~_____  DATE: ____1-24-90____
                  (President)

cc:  Personnel File
     Central File
     Mr. Freddie Powell



**INGRAM STATE TECHNICAL COLLEGE**

August 23, 2004

*Ingram*
*State*
*Technical*
*College*

• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

**MEMORANDUM**

**TO:**        **Monica J. Greene**

**FROM:**      J. Douglas Chambers

**SUBJECT:**   Appointment

Sections 602 and 603 of the Alabama College System Policy Manual state, "The President is authorized to appoint all faculty and staff at the local level," and further, " may offer twelve, nine, or three month Contracts as appropriate...."

The purpose of this memo is to confirm your appointment as <u>Dean of Fiscal Affairs</u>, beginning effective September 1, 2004, for the period ending August 31, 2005. Pay will be determined from <u>Salary Schedule B, Step 20 (21)</u>. Annual salary for this twelve (12) month appointment is <u>$89,794.00.</u> MJG  HW

This employment will be subject to all employment policies, conditions, and standards now or hereafter adopted by the Alabama State Board of Education, The Alabama College System, or J.F. Ingram State Technical College.

Please sign below to indicate your acceptance of this appointment.

Signature _Monica J. Greene_ Date _8/24/04_

cc:        Personnel file



**Ingram**
**State**
**Technical**
**College**
• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

---

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

August 25, 2003

**MEMORANDUM**

**TO:**          **Monica J. Greene**

**FROM:**      J. Douglas Chambers
*J. Douglas Chambers*

**SUBJECT:**   Appointment

Sections 602 and 603 of the Alabama College System Policy Manual state, "The President is authorized to appoint all faculty and staff at the local level," and further, " may offer twelve, nine, or three month Contracts as appropriate...."

The purpose of this memo is to confirm your appointment as <u>Dean of Fiscal Affairs</u>, beginning effective September 1, 2003, for the period ending August 31, 2004. Pay will be determined from <u>Salary Schedule B, Step 20 (20)</u>. Annual salary for this twelve (12) month appointment is <u>$89,794.00.</u>

This employment will be subject to all employment policies, conditions, and standards now or hereafter adopted by the Alabama State Board of Education, The Alabama College System, or J.F. Ingram State Technical College.

Please sign below to indicate your acceptance of this appointment.

Signature *Monica J. Greene*  Date 9/9/03

cc:        Personnel file

*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-2521*



**Ingram State Technical College**

• Developing Responsible Citizens •

**J. Douglas Chambers**
President

---

**Rickey A. Huffstutler, Ph D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

August 29, 2002

**MEMORANDUM**

**TO:**          **Monica J. Greene**

**FROM:**        J. Douglas Chambers

*J. Douglas Chambers*

**SUBJECT:**     Appointment

Sections 602 and 603 of the Alabama College System Policy Manual state, "The President is authorized to appoint all faculty and staff at the local level," and further, "may offer twelve, nine, or three month Contracts as appropriate...."

The purpose of this memo is to confirm your appointment as <u>Dean of Fiscal Affairs</u>, beginning effective September 1, 2002, for the period ending August 31, 2003. Pay will be determined from <u>Salary Schedule B, Step 15 (19)</u>. Annual salary for this twelve (12) month appointment is <u>$85,396.00</u>. MJG

This employment will be subject to all employment policies, conditions, and standards now or hereafter adopted by the Alabama State Board of Education, The Alabama College System, or J.F. Ingram State Technical College.

Please sign below to indicate your acceptance of this appointment.

Signature *Monica J. Greene*   Date 9-13-02

cc:          Personnel file

**INGRAM STATE TECHNICAL COLLEGE**

August 17, 2001

*Ingram*
*State*
*Technical*
*College*

• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

**MEMORANDUM**

**TO:**        **Monica J. Greene**

**FROM:**      J. Douglas Chambers

*J. Douglas Chambers*

**SUBJECT:**   Appointment

Sections 602 and 603 of the Alabama College System Policy Manual
state, "The President is authorized to appoint all faculty and staff at
the local level," and further, " may offer twelve, nine, or three month
Contracts as appropriate...."

The purpose of this memo is to confirm your appointment as <u>Fiscal
Dean</u>, beginning effective September 1, 2001, for the period ending
August 31, 2002. Pay will be determined from <u>Salary Schedule
B, Step 15 (18)</u>. Annual salary for this twelve (12) month
appointment is <u>$82,905.</u> MJG

This employment will be subject to all employment policies,
conditions, and standards now or hereafter adopted by the Alabama
State Board of Education, The Alabama College System, or J.F.
Ingram State Technical College.

Please sign below to indicate your acceptance of this appointment.

Signature *Monica J Greene*   Date 10/1/01

cc:        Personnel file



*Ingram*
*State*
*Technical*
*College*

• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE
July 28, 2000

## MEMORANDUM

**TO:**      **Monica J. Greene**

**FROM:**     J. Douglas Chambers

*J. Douglas Chambers*

**SUBJECT:**   Appointment

Sections 602 and 603 of the Alabama College System Policy Manual state, "The President is authorized to appoint all faculty and staff at the local level," and further, " may offer twelve, nine, or three month Contracts as appropriate…."

The purpose of this memo is to confirm your appointment as <u>Fiscal Dean</u>, beginning effective September 1, 2000, for the period ending August 31, 2001. Pay will be determined from <u>Salary Schedule B, Step 17</u>. Annual salary for this twelve (12) month appointment is <u>$82,905</u>. MJG

This employment will be subject to all employment policies, conditions, and standards now or hereafter adopted by the Alabama State Board of Education, The Alabama College System, or J.F. Ingram State Technical College.

Please sign below to indicate your acceptance of this appointment.

Signature *Monica J. Greene*  Date 8/14/00

cc:      Personnel file



**Ingram**
**State**
**Technical**
**College**

• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

---

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

## MEMORANDUM

**TO:**          **Monica J. Greene**

**FROM:**      J. Douglas Chambers

*J. Douglas Chambers*

**SUBJECT:**      Appointment

Sections 602 and 603 of the Alabama College System Policy Manual
state, "The President is authorized to appoint all faculty and staff at
the local level," and further, " may offer twelve, nine, or three month
Contracts as appropriate…"

The purpose of this memo is to confirm your appointment as <u>Fiscal
Dean</u>, beginning effective September 1, 1999, for the period ending
August 31, 2000. Pay will be determined from <u>Salary Schedule
B, Step 15</u>. Annual salary for this twelve (12) month appointment is
<u>$79,702.</u> MJG

This employment will be subject to all employment policies,
conditions, and standards now or hereafter adopted by the Alabama
State Board of Education, The Alabama College System, or J.F.
Ingram State Technical College.

Please sign below to indicate your acceptance of this appointment.

Signature *Monica J. Greene* Date 8-30-99

cc:          Personnel file



# INGRAM STATE TECHNICAL COLLEGE

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of Instruction

**Paul Reeder**
Dean of Students

**Monica J Greene**
Dean of
Fiscal Affairs

## MEMORANDUM

**TO:**    Ms. Monica  J. Greene

**FROM:**   Mr. J. Douglas Chambers

**SUBJECT:** Appointment

Sections 602 and 603 of <u>The Alabama College System Policy Manual</u>
state that, "The President is authorized to appoint all faculty and staff at
the local level," and further, "...may offer twelve, nine, or three months
contracts as appropriate..."

Therefore, you  are  appointed **Dean  of  Fiscal  Affairs**, effective
**September 1, 1998,** for the period ending **August 31, 1999.** Pay
will be determined from **Salary  Schedule  B,  Step 15 (15 yrs.) at
$79,702.** MJG

This employment is subject to all employment policies, conditions, and
standards now or hereafter adopted by the Alabama State Board of
Education, The Alabama College System,  or by J.F. Ingram State
Technical College.

 Please sign below as your acceptance of this appointment.

_____          9-30-98
**Signature**                              **Date**

c:       Personnel Director



Ingram
State
Technical
College

• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of Instruction

**Paul Reeder**
Dean of Students

**Monica J. Greene**
Dean of
Fiscal Affairs

# INGRAM STATE TECHNICAL COLLEGE

September 1, 1997

## MEMORANDUM

**TO:**   Ms. Monica J. Greene

**FROM:**   Mr. J. Douglas Chambers

**SUBJECT:** Appointment

Sections 602 and 603 of <u>The Alabama College System Policy Manual</u> state that, "The President is authorized to appoint all faculty and staff at the local level," and further, "...may offer twelve, nine, or three months contracts as appropriate..."

Therefore, you are appointed **Dean of Fiscal Affairs**, effective **September 1, 1997,** for the period ending **August 31, 1998**. Pay will be determined from **Salary Schedule B,   Step 10**.

This employment is subject to all employment policies, conditions, and standards now or hereafter adopted by the Alabama State Board of Education, The Alabama College System,   or by J.F. Ingram State Technical College.

 Please sign below as your acceptance of this appointment.

**Signature:** _Monica J. Greene_

cc:      Personnel Director

• *P.O. Box 220350* • *Deatsville, Alabama 36022-0350*
*Phone: 334-285-5177* • *Fax: 334-285-5328*



**J. F. Ingram State Technical College**

‹ Developing Responsible Citizens ›

**J. Douglas Chambers**
Interim President

**J. M. Mulder**
Dean of Technical &
Literacy Education

**Paul Reeder**
Dean of Students

**Monica J. Greene**
Dean of Fiscal Affairs

**Ron Shum**
Dean of Educational
Support Services

# J. F. INGRAM STATE TECHNICAL COLLEGE

September 1, 1996

## MEMORANDUM

**TO:**    Ms. Monica J. Greene

**FROM:**   Mr. J. Douglas Chambers, Interim President

J. Douglas Chambers

**SUBJECT:** Appointment

Sections 602 and 603 of The Alabama College System Policy Manual state that, "The President is authorized to appoint all faculty and staff at the local level," and further, "...may offer twelve, nine, or three months contracts as appropriate..."

Therefore, you are appointed **Dean of Fiscal Affairs**, effective **September 1, 1996**, for the period ending **August 31, 1997**. Pay will be determined from **Salary Schedule B, Step 10**.

This employment is subject to all employment policies, conditions, and standards now or hereafter adopted by the Alabama State Board of Education, The Alabama College System, or by J.F. Ingram State Technical College.

Please sign below as your acceptance of this appointment.

**Signature:**   *Monica J. Greene*

cc:    Personnel Director

5375 Ingram Road  P. O. Box 209  Deatsville, Alabama 36022
Phone: 334-285-5177    Fax: 334-285-5328



**Ingram**
**State**
**Community**
**College**
● *Developing Responsible Citizens* ●

**Murry C. Gregg, Ed.D.**
President

**J. M. Mulder**
Dean of Technical &
Literacy Education

**Paul Reeder**
Dean of Students

**Ron Shum, Ed.D.**
Dean of Academics &
Educational Support Services

**Monica J. Greene**
Dean (Interim)
Fiscal Affairs

## INGRAM STATE COMMUNITY COLLEGE

September 1, 1995

## MEMORANDUM

**TO:**    Ms. Monica J. Greene

**FROM:**    Dr. Murry C. Gregg, President

**SUBJECT:**    Appointment

Sections 602 and 603 of <u>The Alabama College System Policy Manual</u> state that, "The President is authorized to appoint all faculty and staff at the local level," and further, "...may offer twelve, nine, or three months contracts as appropriate..."

Therefore, you are appointed **Dean of Fiscal Affairs**, effective **September 1, 1995**, for the period ending **August 31, 1996**. Pay will be determined from **Salary Schedule B, Step 10**.

This employment is subject to all employment policies, conditions, and standards now or hereafter adopted by the Alabama State Board of Education or Ingram State Community College.

Please sign below as your acceptance of this appointment.

**Signature:**    Monica J. Greene

**cc:**    Personnel Director

*5375 Ingram Road  ●  P.O. Box 209  ●  Deatsville, Alabama 36022*
*Phone: 334-285-5177  ●  Fax: 334-285-5328*



**INGRAM STATE COMMUNITY COLLEGE**

*Ingram State Community College*

• *Developing Responsible Citizens* •

**Murry C. Gregg, Ed.D.**
President

**J. M. Mulder**
Dean of Technical &
Literacy Education

**Paul Reeder**
Dean of Students

**Ron Shum, Ed.D.**
Dean of Academics &
Educational Support Services

**Monica J. Greene**
Dean (Interim)
Fiscal Affairs

June 23, 1995

**MEMORANDUM**

**TO:**    Ms. Monica J. Greene

**FROM:**   Dr. Murry C. Gregg, President

**SUBJECT:**        Appointment

Sections 602 and 603 of <u>Policies, Procedures, and Regulations Governing Alabama Technical Colleges</u>, state that, "The President is authorized to appoint all faculty and staff at the local level," and further, "...may offer twelve, nine, or three months contracts as appropriate..."

Therefore, you are appointed **Dean of Fiscal Affairs**, effective **June 23, 1995**, for the period ending **August 31, 1995**. Pay will be determined from **Salary Schedule B, Step 10**.

This employment is subject to all employment policies, conditions, and standards now or hereafter adopted by the Alabama State Board of Education or Ingram State Community College. This appointment letter supersedes your earlier interim appointment letter.

This position at Ingram State Community College is being filled in accordance with requirements contained in the Partial Consent Decree in the case of *Shuford v. Alabama State Board of Education, et al*, Civil Action No. 89-T-196-N.

Please sign below as your acceptance of this appointment.

**Signature:**    *Monica J. Greene*

cc:    Personnel Director

*5375 Ingram Road • P.O. Box 209 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-5328*



# INGRAM STATE COMMUNITY COLLEGE

September 1, 1994

**MEMORANDUM**

**TO:**    Ms. Monica J. Greene

**FROM:**    Dr. Murry C. Gregg, President

**SUBJECT:**        Appointment

*Ingram*
*State*
*Community*
*College*
• *Developing Responsible Citizens* •

**Murry C. Gregg, Ed. D.**
President

**Freddie Powell**
Vice President

**J. M. Mulder**
Dean of Technical &
Literacy Education

**Paul Reeder**
Dean of Students

**Ron Shum, Ed. D.**
Dean of Academics &
Educational Support Services

Sections 602 and 603 of <u>Policies, Procedures, and Regulations Governing Alabama Technical Colleges</u>, states that, "The President is authorized to appoint all faculty and staff at the local level," and further, "...May offer twelve, nine, or three months contracts as appropriate..."

Therefore, you are appointed **<u>Interim Dean of Fiscal Affairs</u>**, effective **<u>September 1, 1994</u>**, for the period ending **<u>August 31, 1995</u>**. Pay will be determined from **<u>Salary Schedule B, Step 10</u>**.

This employment is subject to all employment policies, conditions, and standards now or hereafter adopted by the Alabama State Board of Education or Ingram State Community College.

As an interim position of an anticipated duration of twelve months or less, this Salary Schedule B position at Ingram State Community College is being filled in accordance with requirements contained in Section C, <u>Practices and Procedures</u>; Subsection 9, <u>Recruitment and Selection of Full-time Temporary Instructional, Administrative, or Professional Personnel,</u> of the Partial Consent Decree in the case of *Shuford v. Alabama State Board of Education, et al*, Civil Action No. 89-T-196-N.

Please sign below as your acceptance of this appointment.

**Signature:**    *Monica J. Greene*

cc:    Personnel Director



*5375 Ingram Road  •  P. O. Box 209  •  Deatsville, Alabama 36022*
*Phone: 205-285-5177  •  Fax: 205-285-5328*



Murry C. Gregg, Ed D
PRESIDENT

J M Mulder
DEAN OF INSTRUCTION

# J. F. INGRAM STATE TECHNICAL COLLEGE
P. O. BOX 209
DEATSVILLE, ALABAMA 36022
Phone. 285-5177

September 1, 1993



Freddie Powell
DEAN OF BUSINESS AFFAIRS

Paul Reeder
DEAN OF STUDENTS

---

**MEMORANDUM**

**TO:**      Mrs. Monica J. Greene

**FROM:**    Dr. Murry C. Gregg, President

**SUBJECT:**  Appointment

      Sections 602 and 603 of <u>Policies, Procedures, and</u> <u>Regulations Governing Alabama Technical Colleges</u>, states that, "The President is authorized to appoint all faculty and staff at the local level," and further, " . . . may offer twelve, nine, or three months contract as appropriate . . . "

      Therefore, you are appointed **<u>Junior Accountant</u>** effective **<u>September 1, 1993,</u>** for the year ending **<u>August 31, 1994</u>**. Pay will be determined from Salary Schedule E at **<u>E-3, Step 10</u>**. This employment is subject to all employment policies, conditions, and standards now or hereafter adopted by the Alabama State Board of Education.

      Please sign below as your acceptance of this appointment.

**Signature:** _Monica J. Greene_

cc:  Mr. Freddie Powell
    Mr. Greg Wright, Personnel Director





Murry C. Gregg, Ed D
PRESIDENT

J. M. Mulder
DEAN OF INSTRUCTION

# J. F. INGRAM STATE TECHNICAL COLLEGE
P O BOX 209
DEATSVILLE. ALABAMA 36022
Phone: 285-5177

September 1, 1992



Freddie Powell
DEAN OF BUSINESS AFFAIRS

Paul Reeder
DEAN OF STUDENTS

**MEMORANDUM**

**TO:**     Mrs. Monica J. Greene

**FROM:**   Dr. Murry C. Gregg, President

**SUBJECT:**  Appointment

Sections 602 and 603 of <u>Policies, Procedures, and Regulations Governing Alabama Technical Colleges</u>, states that, "The President is authorized to appoint all faculty and staff at the local level," and further, " . . . may offer twelve, nine, or three months contract as appropriate . . . "

Therefore, you are appointed **Junior Accountant** effective <u>September 1, 1992,</u> for the year ending <u>August 31, 1993</u>. Pay will be determined from Salary Schedule E at <u>E-3, Step 8</u>. This employment is subject to all employment policies, conditions, and standards now or hereafter adopted by the Alabama State Board of Education.

Please sign below as your acceptance of this appointment.

**Signature:** Monica J. Greene

cc:  Mr. Freddie Powell
     Dean of Business Affairs





Murry C. Gregg, Ed D
PRESIDENT

J. M. Mulder
DEAN OF INSTRUCTION

# J. F. INGRAM STATE TECHNICAL COLLEGE
P. O. BOX 209
DEATSVILLE, ALABAMA 36022
Phone. 285-5177

September 1, 1991



Freddie Powell
DEAN OF BUSINESS AFFAIRS

Paul Reeder
DEAN OF STUDENTS

---

**MEMORANDUM**

**TO:**     Mrs. Monica J. Greene

**FROM:**   Dr. Murry C. Gregg, President

**SUBJECT:**   Appointment

    Sections 602 and 603 of <u>Policies, Procedures, and Regulations Governing Alabama Technical Colleges</u>, states that, "The President is authorized to appoint all faculty and staff at the local level," and further, " . . . may offer twelve, nine, or three months contract as appropriate . . . "

    Therefore, you are appointed **Junior Accountant** effective **September 1, 1991,** for the year ending **August 31, 1992.** Pay will be determined from Salary Schedule E at **E-3, Step 8.** This employment is subject to all employment policies, conditions, and standards now or hereafter adopted by the Alabama State Board of Education.

    Please sign below as your acceptance of this appointment.

**Signature:**   *Monica J. Greene*

cc:  Mr. Freddie Powell
     Dean of Business Affairs





Murry C. Gregg, Ed D
PRESIDENT

J M Mulder
DEAN OF INSTRUCTION

# J. F. INGRAM STATE TECHNICAL COLLEGE
P. O. BOX 209
DEATSVILLE, ALABAMA 36022
Phone. 285-5177

September 1, 1990



Freddie Powell
DEAN OF BUSINESS AFFAIRS

Paul Reeder
DEAN OF STUDENTS

---

**MEMORANDUM**

**TO:**      Mrs. Monica J. Greene

**FROM:**    Dr. Murry C. Gregg, President

**SUBJECT:**  Appointment

Sections 602 and 603 of <u>Policies, Procedures, and Regulations Governing Alabama Technical Colleges</u>, states that, "The President is authorized to appoint all faculty and staff at the local level," and further, " . . . may offer twelve, nine, or three months contract as appropriate . . . "

Therefore, you are appointed **Junior Accountant** effective <u>**September 1, 1990,**</u> for the year ending <u>**August 31, 1991.**</u> Pay will be determined from Salary Schedule E at <u>**E-3, Step 6**</u>. This employment is subject to all employment policies, conditions, and standards now or hereafter adopted by the Alabama State Board of Education.

Please sign below as your acceptance of this appointment.

**Signature:** _Monica J. Greene_

cc: Mr. Freddie Powell





Murry C. Gregg, Ed D
PRESIDENT
J. M. Mulder
DEAN OF INSTRUCTION

# J. F. INGRAM STATE TECHNICAL COLLEGE
P. O. BOX 209
DEATSVILLE, ALABAMA 36022
Phone. 285-5177

September 1, 1989



Freddie Powell
DEAN OF BUSINESS AFFAIRS
Paul Reeder
DEAN OF STUDENTS

## MEMORANDUM

TO:        Mrs. Monica J. Greene

FROM:      Dr. Murry C. Gregg, President

SUBJECT:   Appointment


Sections 602 and 603 of <u>Policies, Procedures, and Regulations Governing Alabama Technical Colleges</u>, states that, "The President is authorized to appoint all faculty and staff at the local level," and further, "...may offer twelve, nine, or three months contract as appropriate..."

Therefore, you are appointed **Junior Accountant** effective <u>September 1, 1989,</u> for the year ending <u>August 31, 1990</u>. Pay will be determined from Salary Schedule E at <u>E-3, Step 6</u>. This employment is subject to all employment policies, conditions, and standards now or hereafter adopted by the Alabama State Board of Education.

Please sign below as your acceptance of this appointment.

Signature:   _Monica J. Greene_

cc:  Mr. Freddie Powell



1 **EMPLOYEE INFORMATION AND VERIFICATION:** (To be completed and signed by employee.)

Name: (Print or Type) Last _Greene_ First _Monica_ Middle _Jane_ Birth Name _Langham_

Address: Street Name and Number _151 Ledyard Place_ City _Montgomery_ State _AL_ ZIP Code _36109_

Date of Birth (Month/Day/Year) _10/20/62_ Social Security Number _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_

I attest, under penalty of perjury, that I am (check a box):

☑ 1. A citizen or national of the United States.

☐ 2. An alien lawfully admitted for permanent residence (Alien Number A _____ ).

☐ 3. An alien authorized by the Immigration and Naturalization Service to work in the United States (Alien Number A _____ or Admission Number _____ . expiration of employment authorization, if any _____ ).

I attest, under penalty of perjury, the documents that I have presented as evidence of identity and employment eligibility are genuine and relate to me. I am aware that federal law provides for imprisonment and/or fine for any false statements or use of false documents in connection with this certificate.

Signature _Monica J. Greene_   Date (Month/Day/Year) _9-1-69_

**PREPARER/TRANSLATOR CERTIFICATION** (To be completed if prepared by person other than the employee). I attest, under penalty of perjury, that the above was prepared by me at the request of the named individual and is based on all information of which I have any knowledge.

| Signature | Name (Print or Type) |
|---|---|
| Address (Street Name and Number) | City    State    Zip Code |

2 **EMPLOYER REVIEW AND VERIFICATION:** (To be completed and signed by employer.)

Instructions:

Examine one document from List A and check the appropriate box, *OR* examine one document from List B *and* one from List C and check the appropriate boxes. Provide the *Document Identification Number* and *Expiration Date* for the document checked.

| List A<br>Documents that Establish<br>Identity and Employment Eligibility | List B<br>Documents that Establish<br>Identity | and | List C<br>Documents that Establish<br>Employment Eligibility |
|---|---|---|---|
| ☐ 1. United States Passport | ☑ 1. A State-issued driver's license or a State-issued I.D. card with a photograph, or information, including name, sex, date of birth, height, weight, and color of eyes. (Specify State). _AL_ | | ☐ 1. Original Social Security Number Card (other than a card stating it is not valid for employment) |
| ☐ 2. Certificate of United States Citizenship | | | ☐ 2. A birth certificate issued by State, county, or municipal authority bearing a seal or other certification |
| ☐ 3. Certificate of Naturalization | ☐ 2. U.S. Military Card | | |
| ☐ 4. Unexpired foreign passport with attached Employment Authorization | ☐ 3. Other (Specify document and issuing authority) | | ☐ 3. Unexpired INS Employment Authorization Specify form |
| ☐ 5. Alien Registration Card with photograph | | | # _____ |
| *Document Identification* | *Document Identification* | | *Document Identification* |
| # _____ | # _4643142_ | | # _____ |
| *Expiration Date (if any)* | *Expiration Date (if any)* | | *Expiration Date (if any)* |
| _____ | _10-23-90_ | | _____ |

**CERTIFICATION:** I attest, under penalty of perjury, that I have examined the documents presented by the above individual, that they appear to be genuine and to relate to the individual named, and that the individual, to the best of my knowledge, is eligible to work in the United States.

| Signature _Monica J. M_ | Name (Print or Type) | Title |
|---|---|---|
| Employer Name _Murry C. Gregg_ | Address | Date |

Form I-9 (05/07/87)
OMB No. 1115-0136

U.S. Department of Justice
Immigration and Naturalization Service

**DATE:**      August 9, 1989

**SUBJECT:**   Interview with Mrs. Monica J. Greene for Junior
              Accountant position.

**PRESENT:**   Dr. Murry C. Gregg, Mr. Freddie Powell, Mr. Gene
              Bridgman, Mr. Tim Cronin, and Mrs. Sylvia Murphree

        Dr. Gregg told Mrs. Greene about the school, saying
that it is little different from Atmore, where she is now
employed, except larger. He told her that the Accounting
Department is presently located in the same office as the MIS
Department; however, when construction is completed in the next
month or so, the accounting and MIS Departments will be
separated.

        Mr. Powell told Mrs. Greene that should she be employed
that he would like for her to assist Mr. Bridgman with Federal
programs in addition to the other accounting duties. Mrs. Greene
said that she has been working with the Federal programs at
Atmore.

        Dr. Gregg told her that the beginning salary would be
E-4, Step 5 and go to Step 6 effective September 1. He told her
that any sick leave she has accumulated can be transferred and
that Atmore could pay her for her annual leave. He asked her
when she could come to work. Mrs. Greene replied that she had
told Mr. Chapman that she would work through September but that
her husband would be starting his job at Faulkner on September 1.

        Mrs. Greene said that she and her husband have found a
residence in the Johnstown area. She has been married for three
years and has no children.

        Mrs. Greene asked when she would be needed to assume
the position. Dr. Gregg told her he was ready for her to go to
work today or as soon as possible. She said that she would need
to talk with Mr. Jones and see if he would release her sooner
than September 30. Dr. Gregg said that he would really not like
to wait longer than September 1. While Mrs. Greene was in the
office, he called Mr. Jones to see if he would consent to her
leaving before the end of September. Mr. Jones told Dr. Gregg
that he would like to consult with Mr. Chapman before making that
decision.

        Dr. Gregg told Mrs. Greene that he would give her an
appointment letter today to be effective September 1 and if that
needed to be amended that he would do so. He asked Mrs. Murphree
to prepare an appointment letter effective September 1 at E-4,

Step 6 and suggested that Mrs. Greene accompany Mr. Bridgman and Mr. Cronin to the Accounting Department while the appointment letter was being prepared.

Recorded by: *Sylvia H. Murphree*
Sylvia H. Murphree

/shm



Ingram
State
Technical
College

ISTC.
• Developing Responsible Citizens •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

March 11, 2004

## MEMORANDUM

**TO:**     Jo Ann Currie
            Bobby Luster
            Barbering Instructors

**FROM:**   Monica J. Greene   *Monica*
            Dean of Fiscal Affairs

This correspondence is written to inform you of the procedure that will be used for live-work services in the Barbering programs at Main Campus and the Draper-Staton Campus. This procedure will be effective beginning Monday, March 15, 2004.

Each Barbering program will be given a pre-numbered duplicating receipt book to use for all live work transactions. These receipt books will be signed out to your shop by Miss Kerri Conger. You are to write a receipt for any service that your shop provides to a customer. These receipts along with the cash collected for these services are to be turned into the Fiscal division representative for your campus at the end of each day. The receipts for the Barbering program at the Draper-Staton campus will be turned into Mrs. Gloria Knox. The receipts at the Main Campus are to be turned into Miss Kerri Conger.

These procedures are part of a continuing effort from the Fiscal division to make the college more accountable. Thank you for your immediate attention to this matter. Please feel free to call me if you have any questions.

cc:     J. Douglas Chambers, President
        Rickey Huffstutler, Dean of the College
        Kerri Conger
        Gloria Knox
        Julie Givens

*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-2521*

334 285 5328

# INGRAM STATE TECHNICAL COLLEGE

July 23, 2002

MEMORANDUM

uglas Chambers
President

L. Huffstutler. Ph.D
an of the College

nica J. Greene
Dean of
Fiscal Affairs

ien E. Wilson
an of Students
Support Services

TO:            All Employees

FROM:          Rickey Huffstutler
               Dean of the College

               Monica J. Greene
               Dean of Fiscal Affairs

RE:            Personal items on campus

This correspondence will serve as a reminder to the directive that
you were given on June 19, 2001, regarding personal items that
you may have on school property. All personal items must be
removed immediately unless there is an active work order on file
with the business office. The work order should be current and the
business office will be verifying all work orders to check this. All
work orders should have the appropriate paperwork to support
them, as well as, paid deposits, if applicable. As most of you
know, the college has been selling and transferring surplus
equipment in an effort to clean up our campuses and to be in
compliance with all applicable policies. As this process continues,
it will be very important that you exercise caution when bringing
personal items in for work orders and follow all guidelines that the
business office has established. Thank you for your attention to
this important matter.

P.O. Box 220350  •  Deatsville, Alabama 36022

Phone: 334-285-5177  •  Fax: 334-285-5328



**Administrative Personnel Evaluation Form**
**J.F. Ingram State Technical College**

Date: **July 14, 2005**

Employee: Monica Greene          Position/ Title:

*The following items should be rated "as is" or "with comment" by the evaluator. Comments may be either positive or negative as needed. Employees may also request a "with comment" rating in order to make their own comments about specific items on this evaluation.*

| Meets standard As is | With Comment | |
|---|---|---|
| (✓) | ( ) | 1. Encourages good morale and instills a desire to achieve. |
| ( ) | (✓) | 2. Provides effective leadership in areas of primary responsibility. |
| (✓) | ( ) | 3. Does not create problems by using excessive amounts of leave. Does not habitually arrive late or leave early. |
| ( ) | (✓) | 4. Works effectively with employees at all levels to achieve common goals. |
| ( ) | (✓) | 5. Maintains appropriate balance between professional role and personal relationships with employees. |
| ( ) | (✓) | 6. Communicates effectively in oral and written form. |
| ( ) | (✓) | 7. Develops and maintains appropriate and efficient working relationships with other administrators. |
| ( ) | (✓) | 8. Cooperates with supervisor, accepts directions, and receives assignments willingly. |
| ( ) | (✓) | 9. Is sensitive to problems or changes within the workplace and responds appropriately. |
| ( ) | (✓) | 10. Makes an effort to be a "team player" and works effectively as a member of the College's administrative team. |
| (✓) | ( ) | 11. Participates in appropriate professional development activities. |



**Administrative Personnel Evaluation Form**
**J.F. Ingram State Technical College**

**Date:  April 1, 2004**

**Employee:  Monica J. Greene**          **Position/ Title:  Dean of Fiscal Affairs**

*The following items should be rated "as is" or "with comment" by the evaluator.  Comments may be either positive or negative as needed. Employees may also request a "with comment" rating in order to make their own comments about specific items on this evaluation.*

| Meets standard As is | With Comment | |
|---|---|---|
| (√) | ( ) | 1. Encourages good morale and instills a desire to achieve. |
| (√) | ( ) | 2. Provides effective leadership in areas of primary responsibility. |
| (√) | ( ) | 3. Does not create problems by using excessive amounts of leave. Does not habitually arrive late or leave early. |
| (√) | ( ) | 4. Works effectively with employees at all levels to achieve common goals. |
| (√) | ( ) | 5. Maintains appropriate balance between professional role and personal relationships with employees. |
| (√) | ( ) | 6. Communicates effectively in oral and written form. |
| (√) | ( ) | 7. Develops and maintains appropriate and efficient working relationships with other administrators. |
| (√) | ( ) | 8. Cooperates with supervisor, accepts directions, and receives assignments willingly. |
| (√) | ( ) | 9. Is sensitive to problems or changes within the workplace and responds appropriately. |
| √( ) | ( ) | 10. Makes an effort to be a "team player" and  works effectively as a member of the College's administrative team. |
| (√) | ( ) | 11. Participates in appropriate professional development activities. |

*Comments relating to specific items on the preceding page should be cross-referenced to those items.*
*General comments by either employee or evaluator may also be included in this section.  Additional pages*
*may be attached if necessary.*

Comments:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

I hereby acknowledge that I have seen the full content of my written appraisal.  My signature does not

necessarily constitute that I agree wholly with the content of this appraisal.  I understand that I may submit

additional written response(s), regarding any item contained in this appraisal, to be included in my personnel

file.

Employee  ___Monica J. Greene___    ___Monica J. Greene___
                   (Typed/Printed Name)               (Signature)
          ___Dean of Fiscal Affairs___    ___4/26/04___
                   (Title)                             (Date)

Supervisor  ___J. Douglas Chambers___    ___J. Douglas Chambers___
                   (Typed/Printed Name)               (Signature)
          ___President___    ___4/1/04___
                   (Title)                             (Date)

# Administrative Personnel Evaluation Form
# J.F. Ingram State Technical College

Employee: Monica Greene                Date: March 31, 2003

Position/ Title: Dean of Fiscal Affairs

*The following items should be rated "as is" or "with comment" by the evaluator. Comments may be either positive or negative as needed. Employees may also request a "with comment" rating in order to make their own comments about specific items on this evaluation.*

| Meet standard As is | With Comment | |
|---|---|---|
| (✓) | ( ) | 1. Encourages good morale and instills a desire to achieve. |
| (✓) | ( ) | 2. Provides effective leadership in areas of primary responsibility. |
| (✓) | ( ) | 3. Does not create problems by using excessive amounts of leave. Does not habitually arrive late or leave early. |
| (✓) | ( ) | 4. Works effectively with employees at all levels to achieve common goals. |
| (✓) | ( ) | 5. Maintains appropriate balance between professional role and personal relationships with employees. |
| (✓) | ( ) | 6. Communicates effectively in oral and written form. |
| (✓) | ( ) | 7. Develops and maintains appropriate and efficient working relationships with other administrators. |
| (✓) | ( ) | 8. Cooperates with supervisor, accepts directions and receives assignments willingly. |
| (✓) | ( ) | 9. Is sensitive to problems or changes within the workplace and responds appropriately. |
| (✓) | ( ) | 10. Makes effort to be a "team player", works effective as a member of the college's administrative team. |
| (✓) | ( ) | 11. Participates in appropriate professional development activities. |

*Comments relating to specific items on the preceding page should be cross-referenced to those items. General comments by either employee or evaluator may also be included in this section. Additional pages may be attached if necessary.*

Comments:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


_____          _____
          Supervisor's Signature                              Date

ADMINISTRATIVE PERSONNEL EVALUATION FORM

J.F. INGRAM STATE TECHNICAL COLLEGE

EMPLOYEE: MONICA GREENE                    DATE: APRIL 3, 2002

POSITION/ TITLE: DEAN OF FISCAL AFFAIRS

*THE FOLLOWING ITEMS SHOULD BE RATED "AS IS" OR "WITH COMMENT" BY THE EVALUATOR. COMMENTS MAY BE EITHER POSITIVE OR NEGATIVE AS NEEDED. EMPLOYEES MAY ALSO REQUEST A "WITH COMMENT" RATING IN ORDER TO MAKE THEIR OWN COMMENTS ABOUT SPECIFIC ITEMS ON THIS EVALUATION.*

| MEET STANDARD AS IS | WITH COMMENT | |
|---|---|---|
| (✓) | ( ) | 1 ENCOURAGES GOOD MORALE AND INSTILLS A DESIRE TO ACHIEVE |
| (✓) | ( ) | 2 PROVIDES EFFECTIVE LEADERSHIP IN AREAS OF PRIMARY RESPONSIBILITY |
| (✓) | ( ) | 3 DOES NOT CREATE PROBLEMS BY USING EXCESSIVE AMOUNTS OF LEAVE. DOES NOT HABITUALLY ARRIVE LATE OR LEAVE EARLY |
| (✓) | ( ) | 4 WORKS EFFECTIVELY WITH EMPLOYEES AT ALL LEVELS TO ACHIEVE COMMON GOALS. |
| (✓) | ( ) | 5 MAINTAINS APPROPRIATE BALANCE BETWEEN PROFESSIONAL ROLE AND PERSONAL RELATIONSHIPS WITH EMPLOYEES |
| (✓) | ( ) | 6 COMMUNICATES EFFECTIVELY IN ORAL AND WRITTEN FORM |
| (✓) | ( ) | 7 DEVELOPS AND MAINTAINS APPROPRIATE AND EFFICIENT WORKING RELATIONSHIPS WITH OTHER ADMINISTRATORS. |
| (✓) | ( ) | 8 COOPERATES WITH SUPERVISOR, ACCEPTS DIRECTIONS AND RECEIVES ASSIGNMENTS WILLINGLY |
| (✓) | ( ) | 9 IS SENSITIVE TO PROBLEMS OR CHANGES WITHIN THE WORKPLACE AND RESPONDS APPROPRIATELY |
| (✓) | ( ) | 10 MAKES EFFORT TO BE A "TEAM PLAYER", WORKS EFFECTIVE AS A MEMBER OF THE COLLEGE'S ADMINISTRATIVE TEAM. |
| (✓) | ( ) | 11 PARTICIPATES IN APPROPRIATE PROFESSIONAL DEVELOPMENT ACTIVITIES |

COMMENTS RELATING TO SPECIFIC ITEMS ON THE PRECEDING PAGE SHOULD BE CROSS-REFERENCED TO THOSE ITEMS. GENERAL COMMENTS BY EITHER EMPLOYEE OR EVALUATOR MAY ALSO BE INCLUDED IN THIS SECTION. ADDITIONAL PAGES MAY BE ATTACHED IF NECESSARY.

COMMENTS:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


_____          _____
SUPERVISOR'S SIGNATURE                  DATE

## Administrative Personnel Evaluation Form
## J.F. Ingram State Technical College

Employee: **Greene, Monica**          Date: **July 15, 1998**

Position/Title: **Dean of Fiscal Affairs**

*The following items should be rated "as is" or "with comment" by the evaluator. Comments may be either positive or negative as needed. Employees may also request a "with comment" rating in order to make their own comments about specific items on this evaluation.*

| As is | With comment | | |
|---|---|---|---|
| ( ) | (✓) | 1. | Provides effective leadership in areas of primary responsibility. |
| (✓) | ( ) | 2. | Does not create problems by using excessive amounts of leave. |
| (✓) | ( ) | 3. | Does not habitually arrive late or leave early. |
| (✓) | ( ) | 4. | Works effectively with employees at all levels to achieve common goals. |
| (✓) | ( ) | 5. | Maintains appropriate balance between professional role and personal relationships with employees. |
| (✓) | ( ) | 6. | Communicates effectively in oral and written form. |
| (✓) | ( ) | 7. | Develops and maintains appropriate and efficient working relationships with other administrators. |
| (✓) | ( ) | 8. | Cooperates with supervisor, accepts directions and receives assignments willingly. |
| (✓) | ( ) | 9. | Makes effort to work effectively as a member of the college's administrative team. |
| (✓) | ( ) | 10. | Participates in appropriate professional development activities. |

**Overall Performance Appraisal**

Circle the number that best summarizes your overall appraisal of this employee. A rating of "1" or "5" requires written justification in the form of attachment(s) explaining why the employee received the rating.

1.  **OUTSTANDING, EXCELLENT**--Performance far exceeds requirements.

2.  **VERY GOOD, ABOVE AVERAGE**--Performance exceeds job requirements.

3.  **GOOD, ACCEPTABLE**--Performance meets requirements.

4.  **BELOW AVERAGE, MINIMALLY ACCEPTABLE**--Performance meets some, but not all, requirements.

5.  **UNSATISFACTORY, UNACCEPTABLE**--Performance does not meet job requirements.

Comments: _Employee continues to develop good leadership skills. Tends to get down when confronted by other workers. She continues to grow stronger each day. Very knowledgable in Business Area._

**I hereby acknowledge that I have seen the full content of my written appraisal. My signature does not necessarily indicate that I agree wholly with the content of this appraisal. I understand that I may submit additional written response to my supervisor regarding any item contained in my appraisal.**

EMPLOYEE SIGNATURE _Monica A. Greene_ DATE _8-5-98_

TITLE OR POSITION _DEAN OF FISCAL AFFAIRS_

EVALUATOR'S SIGNATURE _J. Douglas Chambless_ DATE _7/27/98_

TITLE _President_

## Administrative Personnel Evaluation Form
### J.F. Ingram State Technical College

Employee: _Monica Greene_____    Date: _08-28-97_____

Position/Title: ____Fiscal Dean_____

*The following items should be rated "as is" or "with comment" by the evaluator.  Comments may be either positive or negative as needed.  Employees may also request a "with comment" rating in order to make their own comments about specific items on this evaluation.*

**As is**          **With comment**

(✓)            ( )    1.    Provides effective leadership in areas of primary responsibility.

(✓)            ( )    2.    Does not create problems by using excessive amounts of leave.

(✓)            ( )    3.    Does not habitually arrive late or leave early.

(✓)            ( )    4.    Works effectively with employees at all levels to achieve common goals.

(✓)            ( )    5.    Maintains appropriate balance between professional role and personal relationships with employees.

(✓)            ( )    6.    Communicates effectively in oral and written form.

(✓)            ( )    7.    Develops and maintains appropriate and efficient working relationships with other administrators.

(✓)            ( )    8.    Cooperates with supervisor, accepts directions and receives assignments willingly.

(✓)            ( )    9.    Makes effort to work effectively as a member of the college's administrative team.

(✓)            ( )    10.    Participates in appropriate professional development activities.

### Overall Performance Appraisal

Circle the number that best summaraizes your overall appraisal of this employee.

1. **OUTSTANDING, EXCELLENT**--Performance far exceeds requirements.

2. **VERY GOOD, ABOVE AVERAGE**--Performance exceeds job requirements.

3. **GOOD, ACCEPTABLE**--Performance meets requirements.

4. **BELOW AVERAGE, MINIMALLY ACCEPTABLE**--Performance meets some, but not all, requirements.

5. **UNSATISFACTORY, UNACCEPTABLE**--Performance does not meet job requirements.

Comments: Employee is very friendly and works well with others. She could improve on her self confidence when dealing with other co-workers. Tend to allow others to attach her when she is in charge. Her knowledge is most valuable to the College. She is an outstanding worker

**I hereby acknowledge that I have seen the full content of my written appraisal. My signature does not necessarily constitute that I agree wholly with the content of this appraisal. I understand that I may submit additional written response to my supervisor regarding any item contained in my appraisal.**

EMPLOYEE SIGNATURE _____ DATE _____

TITLE OR POSITION _____

EVALUATOR'S SIGNATURE _J. Douglas Chambers_ DATE _9/2/97_

TITLE _President_

INGRAM STATE COMMUNITY COLLEGE

## ADMINISTRATOR/SUPERVISOR EVALUATION FORM

Administrator's Name ___Monica J. Greene___

Administrator's Job Title ___Dean of Fiscal Affairs___

The list below describes 12 tasks which are critical attributes of the effective community college administration. The purpose of this form is to provide the President and the individual administrator/supervisor an opportunity to engage in a meaningful formative evaluation process. The emphasis in this formative evaluation process is on examining performance perceptions in order to make the administrative process and the personnel involved in this process as productive as possible.

Directions:    Please respond to each of the following statements using a scale of 1-5 according to the following definitions:

> 1 – Always
> 2 – Most of the time
> 3 – About half of the time
> 4 – Sometimes
> 5 – Never

| Administrator/Supervisor's Response | | President's Response if different |
|---|---|---|
| 1 | 1. The administrator/supervisor is a motivator, encourages good morale, and instills a desire to achieve. | ___ 1. |
| 2 | 2. The administrator/supervisor provides dynamic leadership for the development and improvement of functional areas for which he or she has primary responsibility. | ___ 2. |
| 1 | 3. The administrator/supervisor identifies goals, projects, and utilizes available resources effectively. | ___ 3. |
| 1 | 4. The administrator/supervisor works as a uniting force within the College and provides leadership in meeting the mission of the College. | ___ 4. |
| 1 | 5. The administrator/supervisor maintains an appropriate balance between his/her professional role as an administrator and any personal relationship he/she may have with individuals under his/her areas of responsibility. | ___ 5. |
| 2 | 6. The administrator/supervisor is informed and up-to-date and acts responsible in passing along information regarding projects, ideas, problems, meetings, or messages. (He/she always looks for documents, publications to assist in the mission of the College.) | ___ 6. |

_1_  7. The administrator/supervisor maintains an              ____ 7.
        "open door policy" that makes others feel welcome
        to discuss problems and exchange ideas.

_2_  8. The administrator/supervisor works well under the      ____ 8.
        pressure and demands associated with the job.

_1_  9. The administrator/supervisor recognizes and affirms    ____ 9.
        the effective work of personnel in his/her area of
        responsibility.

_2_ 10. The administrator/supervisor officially transmits      ____ 10.
        reasonable and justifiable criticism as well as
        suggested means of improvement.

_1_ 11. The administrator/supervisor is sensitive to           ____ 11.
        problems and changes within the work environment
        and responds to them appropriately.

_1_ 12. The administrator/supervisor works harmoniously        ____ 12.
        as a member of the administrative team.

We agree that the greatest administrative strength of this administraror is:
_____
_____.

We agree that this administrator will work to improve in the following area(s)
to enhance his/her effectiveness as an administrator:
_____ -
_____ -
_____ -
_____ -
_____ .

The administrator/supervisor being evaluated agrees to the following
statement:

My signature indicates that I have responded to the survey form, participated
in a conference with the President (as necessary) to discuss performance
ratings as perceived by the president and myself, and have been informed of my
ratings.  If I do not agree with the conference results, I may write a
separate report for my personnel file.

_Monica F. Greene_                          _Murry L. Gregg_
Administrator/Supervisor                    President

                    _7-24-95_
                       (Date)

Page 2 of 2

FORM JFI-H-10B, REVISED 7 11, 1984

## SUPPORT PERSONNEL EVALUATION FORM

### J. F. INGRAM STATE TECHNICAL COLLEGE

EMPLOYEE NAME: **Mrs. Monica J. Greene**　　　　　　　DATE: **June, 1993**

RATING FACTOR:   1 through 5

```
(a) = 1 Point  (Unsatisfactory)
(b) = 2 Points (Improvement Needed)
(c) = 3 Points (Average)
(d) = 4 Points (Strong)
(e) = 5 Points (Superior)
```

|  | RATING | |
|---|---|---|
|  | Employee | Supervisor |

I.  <u>QUALITY OF WORK</u> - The extent to which the employee accurately completes job assignments.　　*e*　✓

```
(a) Almost always makes errors; has very low accuracy.
(b) Quite often makes errors.
(c) Makes errors but equals job standards.
(d) Once in a while makes errors; has high accuracy.
(e) Almost never makes errors; has very high accuracy.
    COMMENTS: _____
```

II.  <u>QUANTITY OF WORK</u> - The extent to which the employee produces a volume of work consistent with established standards for the job.　　*e*　✓

```
(a) Almost never meets performance expectations.
(b) Quite often does not meet performance expectations.
(c) Volume of work is satisfactory; equals job
    expectations.
(d) Quite often produces more than expected.
(e) Almost always exceeds standards; exceptionally
    productive.
    COMMENTS: _____
```

III.  <u>USE OF WORK TIME</u> - How efficiently the employee uses time to accomplish job tasks (for example, does not wait until the last minute to work on a project.)　　*e*　✓

```
(a) Quite often wastes time, at nearly every opportunity;
    neglects assignments.
(b) Occasionally wastes time; procrastinates; or leaves
    early.
(c) Makes adequate use of time; infrequently idle; and
    seldom leaves early.
(d) Utilizes time wisely and almost never leaves early.
(e) Exceptionally prudent in use of time; hard worker;
    team worker.
    COMMENTS: _____
```

RATING
Employee    Supervisor

IV. PUNCTUALITY     - The extent to which the employee is
    AT WORK           on time for work (except for excused
                       reasons).

    (a) Seldom, if ever on time; habitually late.
    (b) Occasionally on time.
    (c) Seldom late.
    (d) Late on rare occasions.
    (e) Always on time, never late.
       COMMENTS: _C + D mean the same thing; there needs to be_
                     _something between b + c._

_Rating (Employee): b_

V. COMMUNICATION    - The degree of effectiveness with which
    EFFECTIVENESS      the employee communicates orally and/or
                     in writing.

_Rating (Employee): e_

    (a) Unable to express thoughts clearly; lacks
        organization.
    (b) Expresses thoughts satisfactorily on routine matters.
    (c) Usually organizes and expresses thoughts clearly and
        concisely.
    (d) Consistently able to express ideas clearly.
    (e) Excellent ability to communicate ideas to others.
       COMMENTS: _____.

VI. RELATIONSHIPS    - The extent to which the employee
    WITH CO-WORKERS    establishes good relations with co-
                     workers (for example, being a good
                     team worker, being tactful and
                     courteous with co-workers.

_Rating (Employee): d_

    (a) Does not get along well with people; shows a
        pronounced tendency to be inflexible, intolerant,
        or opinionated.
    (b) Has difficulty in getting along with co-workers;
        is unduly blunt and direct with co-workers.
    (c) Gets along with people adequately; has average
        skill in maintaining good human relations.
    (d) Above average skills in human relations; has the
        degree of tact and sensitivity necessary for the
        establishment and maintenance of good interpersonal
        relations with other members of staff.

VII. DEMONSTRATES    - Demonstrates responsibility and
    RESPONSIBILITY     initiative in assigned area of
                     responsibility and initiates
                     positive activity without being
                     reminded by supervisor and/or
                     administration.

_Rating (Employee): e_

    (a) Quite often must be reminded to initiate activity.
    (b) Occasionally has to be reminded.
    (c) Infrequently fails to initiate needed activity.
    (d) Almost never has to be reminded to initiate activity.
    (e) Exceptionally responsible in seeing that needs of the
        institution are completed on a timely basis.
       COMMENTS: _____.

|  | RATING |
|---|---|
|  | Employee | Supervisor |

VIII.   **CONTRIBUTES TO** - How effectively the employee assists
**TEAM EFFORT**        others in completing projects and
                      activities for benefit of institu-
                      tion without being asked and/or
                      reminded.

RATING: Employee *e*   Supervisor ✓

(a) Quite often must be asked, shows lack of cooperation.
(b) Occasionally has to be reminded.
(c) Rarely has to be asked or reminded.
(d) Almost never has to be reminded.
(e) Exceptionally responsible to needs of co-workers and
    never has to be asked or reminded to assist with
    projects and activities.
    COMMENTS: _____.

TOTAL POINTS:                          BY EMPLOYEE        36

                                       BY SUPERVISOR      36

### RATINGS (for eight factors)

| Superior | 33 - 39 |
|---|---|
| Strong | 25 - 32 |
| Average | 17 - 24 |
| Improvement Needed | 9 - 16 |
| Unsatisfactory | 1 - 8 |

SUGGESTIONS FOR IMPROVEMENT: _____

_____

_____

_____

Signed: _____ .
        Supervisor

EMPLOYEE'S STATEMENT (Optional): _____

_____

_____

_____

Signed: Monica J. Greene
        Employee

FORM JFI-H-10B, REVISED A 1, 1984

## SUPPORT PERSONNEL EVALUATION FORM

### J. F. INGRAM STATE TECHNICAL COLLEGE

EMPLOYEE NAME: __Monica J. Greene__          DATE: __May, 1992__

RATING FACTOR: 1 through 5

```
(a) = 1 Point  (Unsatisfactory)
(b) = 2 Points (Improvement Needed)
(c) = 3 Points (Average)
(d) = 4 Points (Strong)
(e) = 5 Points (Superior)
```

|  | RATING | |
|---|---|---|
|  | Employee | Supervisor |

---

I.  **QUALITY OF WORK** - The extent to which the employee accurately completes job assignments.   | e. | ✓

(a)  Almost always makes errors; has very low accuracy.
(b)  Quite often makes errors.
(c)  Makes errors but equals job standards.
(d)  Once in a while makes errors; has high accuracy.
(e)  Almost never makes errors; has very high accuracy.
     COMMENTS: _____

II.  **QUANTITY OF WORK** - The extent to which the employee produces a volume of work consistent with established standards for the job.   | e. | ✓

(a)  Almost never meets performance expectations.
(b)  Quite often does _not_ meet performance expectations.
(c)  Volume of work is satisfactory; equals job expectations.
(d)  Quite often produces more than expected.
(e)  Almost always exceeds standards; exceptionally productive.
     COMMENTS: _____

III.  **USE OF WORK TIME** - How efficiently the employee uses time to accomplish job tasks (for example, does not wait until the last minute to work on a project.)   | e. | ✓

(a)  Quite often wastes time, at nearly every opportunity; neglects assignments.
(b)  Occasionally wastes time; procrastinates; or leaves early.
(c)  Makes adequate use of time; infrequently idle; and seldom leaves early.
(d)  Utilizes time wisely and almost never leaves early.
(e)  Exceptionally prudent in use of time; hard worker; team worker.
     COMMENTS: _____

RATING

| | Employee | Supervisor |
|---|---|---|

IV. <u>PUNCTUALITY</u>     - The extent to which the employee is
    <u>AT WORK</u>          on time for work (except for excused
                    reasons).                                    C.      ✓

   (a)  Seldom, if ever on time; habitually late.
   (b)  Occasionally on time.
   (c)  Seldom late.
   (d)  Late on rare occasions.
   (e)  Always on time, never late.
        COMMENTS: _____.

V.  <u>COMMUNICATION</u>   - The degree of effectiveness with which
    <u>EFFECTIVENESS</u>     the employee communicates orally and/or
                        in writing.                             e.      ✓

   (a)  Unable to express thoughts clearly; lacks
        organization.
   (b)  Expresses thoughts satisfactorily on routine matters.
   (c)  Usually organizes and expresses thoughts clearly and
        concisely.
   (d)  Consistently able to express ideas clearly.
   (e)  Excellent ability to communicate ideas to others.
        COMMENTS: _____.

VI.  <u>RELATIONSHIPS</u>   - The extent to which the employee
     <u>WITH CO-WORKERS</u>    establishes good relations with co-
                        workers (for example, being a good
                        team worker, being tactful and
                        courteous with co-workers.             d.      ✓

   (a)  Does not get along well with people; shows a
        pronounced tendency to be inflexible, intolerant,
        or opinionated.
   (b)  Has difficulty in getting along with co-workers;
        is unduly blunt and direct with co-workers.
   (c)  Gets along with people adequately; has average
        skill in maintaining good human relations.
   (d)  Above average skills in human relations; has the
        degree of tact and sensitivity necessary for the
        establishment and maintenance of good interpersonal
        relations with other members of staff.

VII. <u>DEMONSTRATES</u>     - Demonstrates responsibility and
     <u>RESPONSIBILITY</u>     initiative in assigned area of
                        responsibility and initiates
                        positive activity without being
                        reminded by supervisor and/or
                        administration.                        e.      ✓

   (a) Quite often must be reminded to initiate activity.
   (b) Occasionally has to be reminded.
   (c) Infrequently fails to initiate needed activity.
   (d) Almost never has to be reminded to initiate activity.
   (e) Exceptionally responsible in seeing that needs of the
       institution are completed on a timely basis.
       COMMENTS: _____.

RATING
Employee Supervisor

VIII.   CONTRIBUTES TO    - How effectively the employee assists
        TEAM EFFORT          others in completing projects and
                             activities for benefit of institu-
                             tion without being asked and/or
                             reminded.

e.          ✓

(a) Quite often must be asked, shows lack of cooperation.
(b) Occasionally has to be reminded.
(c) Rarely has to be asked or reminded.
(d) Almost never has to be reminded.
(e) Exceptionally responsible to needs of co-workers and
    never has to be asked or reminded to assist with
    projects and activities.
    COMMENTS: _____.

TOTAL POINTS:                          BY EMPLOYEE    37

                                       BY SUPERVISOR  ✓

RATINGS (for eight factors)

Superior            33 - 39
Strong              25 - 32
Average             17 - 24
Improvement Needed   9 - 16
Unsatisfactory       1 -  8

SUGGESTIONS FOR IMPROVEMENT: _____

_____

_____

_____

                            Signed: _____
                                    Supervisor

EMPLOYEE'S STATEMENT (Optional): _____

_____

_____

_____

                            Signed: Monica G. Greene
                                    Employee

## SUPPORT PERSONNEL EVALUATION FORM

### J. F. INGRAM STATE TECHNICAL COLLEGE

EMPLOYEE NAME: **Monica J. Greene**          DATE: **5-31-91**

RATING FACTOR:   1 through 5

(a) = 1 Point   (Unsatisfactory)
(b) = 2 Points  (Improvement Needed)
(c) = 3 Points  (Average)
(d) = 4 Points  (Strong)
(e) = 5 Points  (Superior)

RATING
Employee   Supervisor

I.   QUALITY OF WORK - The extent to which the employee
                       accurately completes job assignments.          *e*

(a)  Almost always makes errors; has very low accuracy.
(b)  Quite often makes errors.
(c)  Makes errors but equals job standards.
(d)  Once in a while makes errors; has high accuracy.
(e)  Almost never makes errors; has very high accuracy.
     COMMENTS: _____

II.  QUANTITY OF WORK - The extent to which the employee
                        produces a volume of work consistent
                        with established standards for the
                        job.                                          *e*

(a)  Almost never meets performance expectations.
(b)  Quite often does not meet performance expectations.
(c)  Volume of work is satisfactory; equals job
     expectations.
(d)  Quite often produces more than expected.
(e)  Almost always exceeds standards; exceptionally
     productive.
     COMMENTS: _____

III. USE OF WORK TIME - How efficiently the employee uses
                        time to accomplish job tasks (for
                        example, does not wait until the
                        last minute to work on a project.)            *e*

(a)  Quite often wastes time, at nearly every opportunity;
     neglects assignments.
(b)  Occasionally wastes time; procrastinates; or leaves
     early.
(c)  Makes adequate use of time; infrequently idle; and
     seldom leaves early.
(d)  Utilizes time wisely and almost never leaves early.
(e)  Exceptionally prudent in use of time; hard worker;
     team worker.
     COMMENTS: _____

RATING
Employee   Supervisor

IV.  <u>PUNCTUALITY
     AT WORK</u>        -  The extent to which the employee is
                          on time for work (except for excused
                          reasons).

                                                            *C*

     (a)  Seldom, if ever on time; habitually late.
     (b)  Occasionally on time.
     (c)  Seldom late.
     (d)  Late on rare occasions.
     (e)  Always on time, never late.
          COMMENTS: _____.

V.   <u>COMMUNICATION
     EFFECTIVENESS</u>   -  The degree of effectiveness with which
                          the employee communicates orally and/or
                          in writing.
                                                            *e*

     (a)  Unable to express thoughts clearly; lacks
          organization.
     (b)  Expresses thoughts satisfactorily on routine matters.
     (c)  Usually organizes and expresses thoughts clearly and
          concisely.
     (d)  Consistently able to express ideas clearly.
     (e)  Excellent ability to communicate ideas to others.
          COMMENTS: _____.

VI.  <u>RELATIONSHIPS
     WITH CO-WORKERS</u>  -  The extent to which the employee
                          establishes good relations with co-
                          workers (for example, being a good
                          team worker, being tactful and
                          courteous with co-workers.
                                                            *d*

     (a)  Does not get along well with people; shows a
          pronounced tendency to be inflexible, intolerant,
          or opinionated.
     (b)  Has difficulty in getting along with co-workers;
          is unduly blunt and direct with co-workers.
     (c)  Gets along with people adequately; has average
          skill in maintaining good human relations.
     (d)  Above average skills in human relations; has the
          degree of tact and sensitivity necessary for the
          establishment and maintenance of good interpersonal
          relations with other members of staff.

VII. <u>DEMONSTRATES
     RESPONSIBILITY</u>  -  Demonstrates responsibility and
                          initiative in assigned area of
                          responsibility and initiates
                          positive activity without being
                          reminded by supervisor and/or
                          administration.
                                                            *e*

     (a) Quite often must be reminded to initiate activity.
     (b) Occasionally has to be reminded.
     (c) Infrequently fails to initiate needed activity.
     (d) Almost never has to be reminded to initiate activity.
     (e) Exceptionally responsible in seeing that needs of the
         institution are completed on a timely basis.
         COMMENTS: _____.

.

|  | RATING |
|---|---|
|  | Employee Supervisor |

VIII.  <u>CONTRIBUTES TO</u> — How effectively the employee assists
     <u>TEAM EFFORT</u>      others in completing projects and
                      activities for benefit of institu-
                      tion without being asked and/or
                      reminded.

RATING: *e*  *D*

(a) Quite often must be asked, shows lack of cooperation.
(b) Occasionally has to be reminded.
(c) Rarely has to be asked or reminded.
(d) Almost never has to be reminded.
(e) Exceptionally responsible to needs of co-workers and
    never has to be asked or reminded to assist with
    projects and activities.
    COMMENTS: _____.

---

TOTAL POINTS:                         BY EMPLOYEE    *37*

                                      BY SUPERVISOR  *36*

RATINGS (for eight factors)

Superior           33 – 39
Strong             25 – 32
Average            17 – 24
Improvement Needed  9 – 16
Unsatisfactory      1 –  8

SUGGESTIONS FOR IMPROVEMENT: _____

_____

_____

_____

                  Signed: _____
                              Supervisor

EMPLOYEE'S STATEMENT (Optional): _____

_____

_____

_____

                  Signed: *Monica J. Greene*
                              Employee

FOR,M JFI-H-108, REVISED Apr 1, 1984

## SUPPORT PERSONNEL EVALUATION FORM

### J. F. INGRAM STATE TECHNICAL COLLEGE

EMPLOYEE NAME: ___Mrs. Monica J. Greene___    DATE: __July 5, 1990__

RATING FACTOR:   1 through 5

```
(a) = 1 Point  (Unsatisfactory)
(b) = 2 Points (Improvement Needed)
(c) = 3 Points (Average)
(d) = 4 Points (Strong)
(e) = 5 Points (Superior)
```

|  | RATING | |
| --- | --- | --- |
|  | Employee | Supervisor |

I.   QUALITY OF WORK - The extent to which the employee
                        accurately completes job assignments.    **d**

```
(a) Almost always makes errors; has very low accuracy.
(b) Quite often makes errors.
(c) Makes errors but equals job standards.
(d) Once in a while makes errors; has high accuracy.
(e) Almost never makes errors; has very high accuracy.
COMMENTS: _____
```

II.   QUANTITY OF WORK - The extent to which the employee
                          produces a volume of work consistent
                          with established standards for the
                          job.                                    **e**

```
(a) Almost never meets performance expectations.
(b) Quite often does not meet performance expectations.
(c) Volume of work is satisfactory; equals job
    expectations.
(d) Quite often produces more than expected.
(e) Almost always exceeds standards; exceptionally
    productive.
COMMENTS: _____
```

III.   USE OF WORK TIME - How efficiently the employee uses
                          time to accomplish job tasks (for
                          example, does not wait until the
                          last minute to work on a project.)      **e**

```
(a) Quite often wastes time, at nearly every opportunity;
    neglects assignments.
(b) Occasionally wastes time; procrastinates; or leaves
    early.
(c) Makes adequate use of time; infrequently idle; and
    seldom leaves early.
(d) Utilizes time wisely and almost never leaves early.
(e) Exceptionally prudent in use of time; hard worker;
    team worker.
COMMENTS: _____
```

RATING
Employee    Supervisor

IV.  PUNCTUALITY    -  The extent to which the employee is
     AT WORK            on time for work (except for excused
                        reasons).

                                                            *d*         *e*

     (a) Seldom, if ever on time; habitually late.
     (b) Occasionally on time.
     (c) Seldom late.
     (d) Late on rare occasions.
     (e) Always on time, never late.
         COMMENTS: _____.

V.   COMMUNICATION   -  The degree of effectiveness with which
     EFFECTIVENESS       the employee communicates orally and/or
                         in writing.
                                                            *d*         */*

     (a) Unable to express thoughts clearly; lacks
         organization.
     (b) Expresses thoughts satisfactorily on routine matters.
     (c) Usually organizes and expresses thoughts clearly and
         concisely.
     (d) Consistently able to express ideas clearly.
     (e) Excellent ability to communicate ideas to others.
         COMMENTS: _____.

VI.  RELATIONSHIPS   -  The extent to which the employee
     WITH CO-WORKERS     establishes good relations with co-
                         workers (for example, being a good
                         team worker, being tactful and
                         courteous with co-workers.
                                                            *d*         */*

     (a) Does not get along well with people; shows a
         pronounced tendency to be inflexible, intolerant,
         or opinionated.
     (b) Has difficulty in getting along with co-workers;
         is unduly blunt and direct with co-workers.
     (c) Gets along with people adequately; has average
         skill in maintaining good human relations.
     (d) Above average skills in human relations; has the
         degree of tact and sensitivity necessary for the
         establishment and maintenance of good interpersonal
         relations with other members of staff.

VII. DEMONSTRATES    -  Demonstrates responsibility and
     RESPONSIBILITY      initiative in assigned area of
                         responsibility and initiates
                         positive activity without being
                         reminded by supervisor and/or
                         administration.
                                                            *e*         */*

     (a) Quite often must be reminded to initiate activity.
     (b) Occasionally has to be reminded.
     (c) Infrequently fails to initiate needed activity.
     (d) Almost never has to be reminded to initiate activity.
     (e) Exceptionally responsible in seeing that needs of the
         institution are completed on a timely basis.
         COMMENTS: _____.

|  | RATING Employee Supervisor |
|---|---|

VIII.  <u>CONTRIBUTES TO</u>      - How effectively the employee assists
       <u>TEAM EFFORT</u>           others in completing projects and
                              activities for benefit of institu-
                              tion without being asked and/or
                              reminded.

*e* | *✓*

(a) Quite often must be asked, shows lack of cooperation.
(b) Occasionally has to be reminded.
(c) Rarely has to be asked or reminded.
(d) Almost never has to be reminded.
(e) Exceptionally responsible to needs of co-workers and
    never has to be asked or reminded to assist with
    projects and activities.
    COMMENTS: _____.

TOTAL POINTS: _____          BY EMPLOYEE _____ 36

                                       BY SUPERVISOR _____ 35

                 <u>RATINGS (for eight factors)</u>

                 Superior            33 - 39
                 Strong              25 - 32
                 Average             17 - 24
                 Improvement Needed   9 - 16
                 Unsatisfactory       1 -  8

SUGGESTIONS FOR IMPROVEMENT: _____
_____
_____
_____

                 Signed: _____.
                           Supervisor

EMPLOYEE'S STATEMENT (Optional): _____
_____
_____
_____

                 Signed: ___Monica G. Greene_____
                           Employee

# The Southern Association of College and University Business Officers

Awards This

## SACUBO Professional Development

### *Certificate of Completion*

to

## Monica Greene

**Dean - Fiscal Affairs**
**J.F. Ingram State Technical College**

### 2001 SACUBO Fall Workshop

November 4-6, 2001
Atlanta, GA

10 CPE Credits

**Accounting and Auditing, Consulting Services, Management, Personal Development, Specialized Knowledge and Applications, and Taxation**

*signature*

SACUBO Continuing Professional Education Credit Coordinator



Registered with the National Association of State Boards of Accountancy as a sponsor of continuing professional education on the National Registry of CPE Sponsors. State boards of accountancy have final authority on the acceptance of individual courses. Complaints regarding registered sponsors may be addressed to NASBA, 150 Fourth Avenue North, Suite 700, Nashville, TN 37219-2417, (615) 880-4200.
SACUBO sponsor identification number 104508 is effective through February 1, 2002.

in accordance with the standards of the National Registry of CPE Sponsors, CPE credits have been granted based on a 50-minute hour.



**INGRAM STATE TECHNICAL COLLEGE**
November 1, 1999

*Ingram*
*State*
*Technical*
*College*
**ISTC**
• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

MEMORANDUM

TO:         J. Douglas Chambers, President

FROM:    Monica J. Greene, Dean of Fiscal Affairs *Monica*

RE:         Leave Request

This memorandum is to request special leave considerations for the next several weeks. This request is due to the recent birth of my daughter. I have been an employee here for over ten years. During my tenure, I have maintained an excellent work and attendance record. When I became pregnant, I had ample leave to cover the birth and recovery period. I opted to come back to work after the minimum amount of leave allowed because I wanted to, as much as possible, maintain continuity in the office of fiscal affairs. I felt this was important.

We have made relatively easy adjustments to having a child after 13 years of marriage. However, due to occasional doctor's appointments for my child, to adjusting to our babysitter, and to certain "motherly" tasks I am learning to perform early in the mornings, I have been a little late several mornings. I believe this represents a limited time period, and, as I become more organized in my efforts, it is a problem that will gradually disappear. I simply ask for your patience and understanding in this matter. I fully understand the importance, as a dean, of being on call 24 hours, and I believe I will, and have, fulfilled that duty. I also have ample leave to cover my tardiness. Thank you for your help. I trust you to do the right thing, and I will abide by your decision in this matter.

*approved -*
*Be sure to check*
*with one weekly until*
*we get back on regular schedule*
*11-1-99*
*thanks*

P.O. Box 220350 • Deatsville, Alabama 36022
Phone: 334-285-5177 • Fax: 334-285-5328

LEAVE LOST ACKNOWLEDGEMENT FORM

**September 5, 1995**

TO:             Personnel Files

FROM:           **Monica J. Greene**

SUBJECT:        Acknowledgement of Lost Leave Time Accumulated at August
                31st Cut-Off Period

---

        I hereby acknowledge that I have lost the following hours, as
indicated, for the category of leave described below.  Because of failure to take such
leave, I understand that my balance is not permitted to exceed the maximum accrued
allowable for carry-forward at September 1st of any given year.

| Leave Description | Hours Lost |
|---|---|
| Annual Leave | _____ |
| Sick Leave | _____ |
| Personal Leave | _____ |
| Emergency Leave | **1½ hours** |

        I hereby authorize my accrued balance to be deducted for the
above amounts.

_Monica J. Greene_

Employee Signature



AGNES
SCOTT
C O L L E G E

March 9, 1998

To Whom It May Concern:

Subject:     Tax Issues for Higher Education

141 East College Avenue
Decatur, GA 30030-3797

Monica Greene attended the Southern Association of College and University
Business Officer's (SACUBO) Tax Issues for Higher Education Workshop in
Decatur, Georgia, on March 9, 1998. Specifically, the workshop provided the
contact hours shown in the following major areas:

| Description | Contact Hours |
| --- | --- |
| Introduction/Unrelated Business Income | 1.5 |
| IRS Audit Guidelines | 1.75 |
| Employee Versus Independent Contractor | 1.5 |
| Other Compensation Issues/Conclusion | 1.75 |
| Total Contact Hours | 6.5 |

This letter certifies that the above participant received 6.5 contact hours (390
mins.) of instruction, which is the equivalent of 7.8 units of Continuing
Education, According to the standard policy of one units for every 50 minutes of
instruction.

Any questions concerning the above should be directed to me at Agnes Scott
College, 141 East College Avenue, Decatur, Georgia, 30030 or I may be reached
at 404/638-6309.

Sincerely,

Karen Roy
Workshop Coordinator

Provided to:

Monica Greene
Dean of Fiscal Affairs
J.F. Ingram State Tech. Col.
P.O. Box 220350
Deatsville, AL 36022



Murry C. Gregg, Ed D.
PRESIDENT

J. M. Mulder
DEAN OF INSTRUCTION

# J. F. INGRAM STATE TECHNICAL COLLEGE
P. O. BOX 209
DEATSVILLE, ALABAMA 36022
Phone: 285-5177

July 18, 1989



Freddie Powell
DEAN OF BUSINESS AFFAIRS

Paul Reeder
DEAN OF STUDENTS

M E M O R A N D U M

TO:      Dr. Gregg

FROM:    Will Chapman, Atmore State Tech. College

SUBJECT:  Jr. Accountant Position

    As per phone conversation with Mr. Powell, Mr. Chapman recommended Mrs. Monica Green for the Jr. Accountant position. She has a BS degree in Business Administration, and has worked for two and one half years in accounting at Atmore State Technical College.

    Mrs. Green will mail in complete application but until we receive it Mr. Powell asked that this be put in the file on her behalf.



LEAVE LOST ACKNOWLEDGEMENT FORM


TO:　　　　　　　Personnel Files

FROM:　　　　　*Monica Greene*

SUBJECT:　　　　Acknowledgement of Lost Leave Time Accumulated at August
　　　　　　　　　31st Cut-Off Period *1997*

─────────────────────────────────────────────────────────────────────

　　　　　　　I hereby acknowledge that I have lost the following hours, as
indicated, for the category of leave described below. Because of failure to take such
leave, I understand that my balance is not permitted to exceed the maximum accrued
allowable for carry-forward at September 1st of any given year.

| Leave Description | Hours Lost |
|---|---|
| Annual Leave | _____ |
| Sick Leave | _____ |
| Personal Leave | _____ |
| Emergency Leave | *24.0* |

　　　　　　　I hereby authorize my accrued balance to be deducted for the
above amounts.

　　　　　　　　　　*Monica J. Greene*

　　　　　　　　　　Employee Signature



# INGRAM STATE COMMUNITY COLLEGE

*Ingram*
*State*
*Community*
*College*
**ISCC**
* Developing Responsible Citizens *

**Murry C. Gregg, Ed. D.**
President

**J. M. Mulder**
Dean of Technical &
Literacy Education

**Paul Reeder**
Dean of Students

**Ron Shum. Ed. D.**
Dean of Academics &
Educational Support Service

December 1, 1994

MEMORANDUM

TO:        Mrs. Monica Greene

FROM:    Dr. Murry C. Gregg, President

SUBJECT:    Committee Appointment

As a part of our updating and revision of various standing committee assignments, I am appointing you to serve as a member of the Ingram State Community College Sick Leave Bank Committee. Your appointment will be for the remainder of this academic year, and may be renewed in August, 1995.

I am confidant that you will serve our college well in this very important position, and look forward to working with you. If you have any questions regarding this appointment, please contact me or the ISCC personnel director.





# INGRAM STATE COMMUNITY COLLEGE

*Ingram*
*State*
*Community*
*College*
**ISCC**
*• Developing Responsible Citizens •*

**Murry C. Gregg, Ed. D.**
President

**J. M. Mulder**
Dean of Technical &
Literacy Education

**Paul Reeder**
Dean of Students

**Ron Shum, Ed. D.**
Dean of Academics &
Educational Support Service

December 1, 1994

MEMORANDUM

TO:        Mrs. Monica Greene

FROM:    Dr. Murry C. Gregg, President

SUBJECT:   Committee Appointment

As a part of our updating and revision of various standing committee assignments, I am appointing you to serve as recorder for the Ingram State Community College Management Information Subcommittee. This subcommittee will function as a part of the Information Technologies and Strategies (ITS) Committee. Your appointment will be for the remainder of this academic year, and may be renewed in August, 1995.

I am confidant that you will serve our college well in this position, and look forward to working with you. If you have any questions regarding this appointment, please contact me or the ISCC personnel director.



LEAVE LOST ACKNOWLEDGEMENT FORM


TO:              Personnel Files


FROM:            **Mrs. Monica Greene**


SUBJECT:         Acknowledgement of Lost Leave Time Accumulated at August
                 31st Cut-Off Period

---

　　　　　I hereby acknowledge that I have lost the following hours, as
indicated, for the category of leave described below.  Because of failure to take such
leave, I understand that my balance is not permitted to exceed the maximum accrued
allowable for carry-forward at September 1st of any given year.

| Leave Description | Hours Lost |
| --- | --- |
| Annual Leave | _____ |
| Sick Leave | _____ |
| Personal Leave | _____ |
| Emergency Leave | 3.35 |

　　　　　I hereby authorize my accrued balance to be deducted for the
above amounts.


*Monica J. Greene*

Employee Signature      **10-4-94**

August 2, 1989

## M E M O R A N D U M

TO:        Dr. Murry C. Gregg, President
           J.F. Ingram State Technical College

FROM:      Greg Wright, Chair
           Job Application Review Committee

RE:        Junior Accountant Position

---

My committee has completed its review and discussion of the applicatiuons for the position of Junior Accountant, and is submitting the following three names for your consideration.

1.   Julie Givens
     225 Givens Ct.
     Deatsville, AL. 36022

2.   Monica Jane Greene
     Rt. 2, Box 103
     Flomaton, AL. 36441

3.   Deborah Lynn Stokes
     3038C Southmall Circle
     Montgomery, AL. 36116

Many of the applicants seemed well qualified for this position, which resulted in very difficult decisions. We did agree that qualified Ingram Tech employees should receive our committee's careful consideration. Therefore, provided she is prepared to complete her baccalaureate degree requirements, Ms. Givens is our unanimous first choice.

Greg Wright, Chair

Gene Bridgman

Tim Cronin





# ATMORE STATE TECHNICAL COLLEGE
P. O. BOX 1119
ATMORE, ALABAMA 36504
PHONE 205/368-8118

**MALCOLM A. JONES**
PRESIDENT

September 15, 1989

Mr. Freddie Powell, Business Manager
Ingram State Technical College
P. O. Box 209
Deatsville, Alabama  36022

In response to your request, Monica Greene has 24½ days of accumulated
and unused sick leave.

Yours truly,

*196.0 hrs*

Malcolm A. Jones
President

MAJ:sm

FORM JFI-H-10B, REVISED Apr 1, 1984

## SUPPORT PERSONNEL EVALUATION FORM

### J. F. INGRAM STATE TECHNICAL COLLEGE

EMPLOYEE NAME: Monica J. Greene          DATE: April 1994

RATING FACTOR:   1 through 5

```
(a) = 1 Point  (Unsatisfactory)
(b) = 2 Points (Improvement Needed)
(c) = 3 Points (Average)
(d) = 4 Points (Strong)
(e) = 5 Points (Superior)
```

RATING
Employee   Supervisor

I.   QUALITY OF WORK - The extent to which the employee
accurately completes job assignments.                    e      e

(a)  Almost always makes errors; has very low accuracy.
(b)  Quite often makes errors.
(c)  Makes errors but equals job standards.
(d)  Once in a while makes errors; has high accuracy.
(e)  Almost never makes errors; has very high accuracy.
COMMENTS: _____

II.  QUANTITY OF WORK - The extent to which the employee
produces a volume of work consistent
with established standards for the
job.                                                     e      e

(a)  Almost never meets performance expectations.
(b)  Quite often does not meet performance expectations.
(c)  Volume of work is satisfactory; equals job
expectations.
(d)  Quite often produces more than expected.
(e)  Almost always exceeds standards; exceptionally
productive.
COMMENTS: _____

III. USE OF WORK TIME - How efficiently the employee uses
time to accomplish job tasks (for
example, does not wait until the
last minute to work on a project.)                       e      e

(a)  Quite often wastes time, at nearly every opportunity;
neglects assignments.
(b)  Occasionally wastes time; procrastinates; or leaves
early.
(c)  Makes adequate use of time; infrequently idle; and
seldom leaves early.
(d)  Utilizes time wisely and almost never leaves early.
(e)  Exceptionally prudent in use of time; hard worker;
team worker.
COMMENTS: _____

FORM JFI-H-10B, REVISED APRIL, 1984
Page #2

|  | RATING |  |
| --- | --- | --- |
|  | Employee | Supervisor |

IV.  **PUNCTUALITY
AT WORK**        - The extent to which the employee is
                   on time for work (except for excused
                   reasons).

b    B

    (a)  Seldom, if ever on time; habitually late.
    (b)  Occasionally on time.
    (c)  Seldom late.
    (d)  Late on rare occasions.
    (e)  Always on time, never late.
         COMMENTS: _____.

V.   **COMMUNICATION
EFFECTIVENESS**    - The degree of effectiveness with which
                      the employee communicates orally and/or
                      in writing.

e    e

    (a)  Unable to express thoughts clearly; lacks
         organization.
    (b)  Expresses thoughts satisfactorily on routine matters.
    (c)  Usually organizes and expresses thoughts clearly and
         concisely.
    (d)  Consistently able to express ideas clearly.
    (e)  Excellent ability to communicate ideas to others.
         COMMENTS: _____.

VI.  **RELATIONSHIPS
WITH CO-WORKERS**    - The extent to which the employee
                        establishes good relations with co-
                        workers (for example, being a good
                        team worker, being tactful and
                        courteous with co-workers.

d    d

    (a)  Does not get along well with people; shows a
         pronounced tendency to be inflexible, intolerant,
         or opinionated.
    (b)  Has difficulty in getting along with co-workers;
         is unduly blunt and direct with co-workers.
    (c)  Gets along with people adequately; has average
         skill in maintaining good human relations.
    (d)  Above average skills in human relations; has the
         degree of tact and sensitivity necessary for the
         establishment and maintenance of good interpersonal
         relations with other members of staff.

VII. **DEMONSTRATES
RESPONSIBILITY**     - Demonstrates responsibility and
                        initiative in assigned area of
                        responsibility and initiates
                        positive activity without being
                        reminded by supervisor and/or
                        administration.

e    e

    (a) Quite often must be reminded to initiate activity.
    (b) Occasionally has to be reminded.
    (c) Infrequently fails to initiate needed activity.
    (d) Almost never has to be reminded to initiate activity.
    (e) Exceptionally responsible in seeing that needs of the
        institution are completed on a timely basis.
        COMMENTS: _____.

RATING
Employee  Supervisor

VIII.  CONTRIBUTES TO    - How effectively the employee assists
       TEAM EFFORT          others in completing projects and
                            activities for benefit of institu-
                            tion without being asked and/or
                            reminded.                                e.        c

(a) Quite often must be asked, shows lack of cooperation.
(b) Occasionally has to be reminded.
(c) Rarely has to be asked or reminded.
(d) Almost never has to be reminded.
(e) Exceptionally responsible to needs of co-workers and
    never has to be asked or reminded to assist with
    projects and activities.
    COMMENTS: _____.

---

TOTAL POINTS:

BY EMPLOYEE      310

BY SUPERVISOR    36

RATINGS (for eight factors)

Superior            33 - 39
Strong              25 - 32
Average             17 - 24
Improvement Needed   9 - 16
Unsatisfactory       1 -  8

SUGGESTIONS FOR IMPROVEMENT: _____

_____

_____

_____

Signed: _____
                    Supervisor

EMPLOYEE'S STATEMENT (Optional): _____

_____

_____

_____

Signed:  Monica J. Greene
                    Employee

MONICA J. GREENE

_____

_____

Route 2, Box 103
Flomaton, Alabama  36441

Telephone:  (205) 296-2500

PROFESSIONAL OBJECTIVE

To work in the Business field with interests in the areas of
Accounting and Finance.

EDUCATION

1983-85:  Auburn University at Montgomery, Montgomery, Alabama.
          Bachelor of Science Degree, Business Administration.

1981-83:  Alabama Christian College, Montgomery, Alabama
          Associate of Arts Degree.

WORK EXPERIENCE

April 1987-Present: Atmore State Technical College, Atmore, Alabama.
Accountant. Responsibilities include preparing and verifying monthly
financial statements and all general ledger activities, scheduling and
reporting of federal funds, payroll and all reports relating to this
area, setting up of budgeted figures on a yearly basis, and other mis-
cellaneous accounting duties.

October 1985-March 1987:    United Bank of Atmore (Flomaton Branch),
Flomaton, Alabama.   Teller.   Responsibilities included the various
aspects of paying and receiving.

August 1983-September 1985: Eastdale Gayfer's, Eastdale Mall, Mont-
gomery, Alabama.    Customer Service Representative, Credit Office.
Responsibilities included taking payments on accounts, both implement-
ing and servicing customer accounts, maintenance of layaway accounts,
and miscellaneous operational duties.

Summer 1981-1983:    Southern Host Inn, Bay Minette, Alabama.  Desk
Clerk. Responsibilities included coordinating reservations, public
relations, guest registration, and the daily balancing of the cash
drawer.

ORGANIZATIONS

Financial Management Association, Kirei Na Ai (Treasurer)

REFERENCES

Available upon request.

**TROY STATE UNIVERSITY IN MONTGOMERY**
Whitley Hall, P.O. Drawer 4419
Montgomery, Alabama 36195-5702                    **GRADUATE RECORD**

| | |
|---|---|
| **Student:** GREENE, Monica Jane | **Student No.:** 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 |
| **Address:** 757 Ledyard Place | **Date Entered:** June 13, 1990 |
| **City/State:** Montgomery, Alabama  36109 | **Class:** Master's  **Sex:** F  **Ethnic** |
| **Telephone:** | **Date of Birth:** 10/20/62  **Origin:** Cauc |

**UNDERGRADUATE DEGREE:**  Bachelor of Science

**DATE:**  June 7, 1985

ANY SUBSEQUENT RELEASE OF THIS INFOR-
MATION SHOULD COMPLY WITH THE FAMILY
EDUCATIONAL RIGHTS AND PRIVACY ACT OF
1974.

**WHERE OBTAINED:** Auburn University at Montgomery

Jan'90: GMAT Score: V19/Total: 330

**GRADING SYSTEM:**

A    Excellent
B    Above Average
C    Average
F    Failure
IN   Incomplete
W    Withdrew
AU   Audit
NG   No Grade

ONE CREDIT HOUR IS EQUIVALENT
TO A MINIMUM OF ONE RECITATION
PER WEEK FOR 12 WEEKS

**QUALITY POINTS:**
A    4 points per hour
B    3 points per hour
C    2 points per hour

**GRADUATE RECORD:**

ADMITTED TO
CANDIDACY:
September 24, 1992
DEGREE: Master of
Business Admin
DATE OF GRADUATION:
August 27, 1993
DIPLOMA DATED:
December 7, 1993
MAJOR:      xx

MINOR:      xx

Student is entitled to honorable
dismissal unless otherwise indicated.

_____
Registrar
Date:

TRANSCRIPTS:

TSU Publications 253-187

| Course Title | Dept. | Course Number | Qtr. Hours Attmpt. | Grade | Qtr. Hours Earned | Grade Points |
|---|---|---|---|---|---|---|
| UNCONDITIONAL ADMISSION TO THE GRADUATE DIVISION OF TROY STATE UNIVERSITY IN MONTGOMERY | | | | | | |
| GREENE MONICA JANE     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 Quarter : Summer 1990 (TSUM) | | | | | | |
| ORGANIZATION THEORY | MGT | 671 | 5.0 / 5.0 | B | 5.00 / 5.00 | 15.0 / 15.0 |
| GREENE MONICA JANE     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 Quarter : Fall 1990   (TSUM) | | | | | | |
| MARKETING MANAGEMENT | MKT | 661 | 5 / 5 | A | 5 / 5 | 20 / 20 |
| GREENE MONICA JANE     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 Quarter : Winter 1991 (TSUM) | | | | | | |
| MANAGERIAL ECONOMICS | ECO | 651 | 5 / 5 | C | 5 / 5 | 10 / 10 |
| GREENE MONICA JANE     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 Quarter : Summer 1991 (TSUM) | | | | | | |
| MANAGERIAL FINANCE Withdrew 16-JUL-91 | FIN | 631 | 0 / 0 | W1 | 0 / 0 | 0 / 0 |
| GREENE MONICA JANE     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 Quarter : Fall 1991   (TSUM) | | | | | | |
| MACROECONOMICS AND FORECASTING | ECO | 652 | 5 / 5 | B | 5 / 5 | 15 / 15 |
| GREENE MONICA JANE     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 Quarter : Winter 1992 (TSUM) | | | | | | |
| RESEARCH METHODS | HRM | 510 | 5 / 5 | =IN A =0 | 5 / 5 | 20 / =20 |
| GREENE MONICA JANE     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 Quarter : Spring 1992 (TSUM) | | | | | | |
| DECISION THEORY | QM | 641 | 5 / 5 | A | 5 / 5 | 20 / 20 |
| GREENE MONICA JANE     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 Quarter : Summer 1992 (TSUM) | | | | | | |
| BUSINESS AND SOCIETY Withdrew 17-JUN-92 | MGT | 574 | 0 / 0 | W1 | 0 / 0 | 0 / 0 |

(OVER)

PAGE 2                                                          GRADUATE RECORD

| Course Title | Dept. | Course Number | Qtr. Hours Atmpt. | Grade | Qtr. Hours Earned | Quality Points |
|---|---|---|---|---|---|---|
| GREENE MONICA JANE    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<br>Quarter: Fall 1992    (TSUM) | | | | | | |
| MANAGERIAL ACCOUNTING | ACT | 691 | 5<br>5 | B | 5<br>5 | 15<br>15 |
| GREENE MONICA JANE    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<br>Quarter : Winter 1993 (TSUM) | | | | | | |
| MANAGERIAL FINANCE<br>HUMAN RESOURCES MANAGEMENT | FIN<br>HRM | 631<br>674 | 5<br>5<br>10 | A<br>B | 5<br>5<br>10 | 20<br>15<br>35 |
| GREENE MONICA JANE    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<br>Quarter : Spring 1993 (TSUM) | | | | | | |
| BUSINESS STRATEGY | BAN | 611 | 5<br>5 | A | 5<br>5 | 20<br>20 |
| GREENE MONICA JANE    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<br>Quarter : Summer 1993 (TSUM) | | | | | | |
| ORGANIZATIONAL DEVELOPMENT | MGT | 571 | 5<br>5 | A | 5<br>5 | 20<br>20 |

FEDERAL LAW PROHIBITS THE RELEASE
OF INFORMATION ON THIS DOCUMENT
WITHOUT PROPER AUTHORIZATION

AUG  9 1994

SANDRA S GOUGE
REGISTRAR

# Troy State University



## Montgomery

### This Certifies That

The Board of Trustees of The Troy State University System
upon Recommendation of the Faculty Has Conferred on

## Monica J. Greene

the Degree of

## Master of Business Administration

with all Rights, Privileges and Honors thereunto appertaining.

In Witness Whereof the seal of the University and the signatures of its duly
authorized officers are hereto affixed.

Granted this seventh day of December, in the year of our Lord
nineteen hundred and ninety-three.











_____
Governor of Alabama and President of the Board

_____
President of the University of Montgomery

_____
Chancellor of the University System



# Auburn University

By authority of the Board of Trustees and on recommendation
of the Faculty hereby confers on

## Monica Jane Langham

the degree

### Bachelor of Science in Business Administration

with all honors, rights and privileges thereto pertaining.

In Witness Whereof the Seal of the University and the signatures
of the duly authorized officers are hereunto affixed.

Given at Montgomery, in the State of Alabama, this
seventh day of June, nineteen hundred eighty-five.



George C. Wallace
Governor Chairman Board of Trustees

James E. Martin
President

William D. Clark
Dean



The Alabama Association of College
and University Business Officers
and
The Alabama College System
Financial Management Association

Awards this

AACUBO/ACSFMA Professional Development
Certificate of Completion

to

# MONICA GREENE

AACUBO/ACSFMA Annual Meeting
June 18-21, 2000, Orange Beach, Alabama
8 CPE Credits

AACUBO President



# The Southern Association of College and University Business Officers

Awards This

## SACUBO Professional Development

### Certificate of Completion

to

## Monica Greene

Dean of Fiscal Affairs
Ingram State Tech College

## Basic Institutional Accounting—GASB

February 28-29, 2000
Auburn, AL

**11 CPE Credits**

**Accounting and Auditing**

In accordance with the standards of the National Registry of CPE Sponsors,
CPE credits have been granted based on a 50-minute hour.

_____

SACUBO Continuing Professional Education Credit Coordinator

Registered with the National Association of State Boards of Accountancy as a sponsor of continuing professional education on the National Registry of CPE Sponsors. State boards of accountancy have final authority on the acceptance of individual courses. Complaints regarding registered sponsors may be addressed to NASBA, 150 Fourth Avenue North, Suite 700, Nashville, TN 37219-2417, (615) 880-4200. SACUBO sponsor identification number 104508 is effective through March 1, 2000.

SACUBO
Southern Association
of College and University
Business Officers

PROFESSIONAL
DEVELOPMENT

The Southern Association
of College and University Business Officers

Awards This

# SACUBO Professional Development

## Certificate of Completion

to

### Monica Greene

Dean of Fiscal Affairs
Ingram State Tech College

**Cash Flow Statements--Direct Method**

March 1, 2000
Auburn, AL

8 CPE Credits--ACCOUNTING AND AUDITING
In accordance with the standards of the National Registry of CPE Sponsors,
CPE credits have been granted based on a 50-minute hour.

SACUBO Continuing Professional Education Credit Coordinator

Registered with the National Association of State Boards of Accountancy as a sponsor of continuing professional education on the National Registry of CPE Sponsors. State boards of accountancy have final authority on the acceptance of individual courses. Complains regarding registered sponsors may be addressed to NASBA, 150 Fourth Avenue North, Suite 700, Nashville, TN 37219-2417, (615) 880-4200. SACUBO sponsor identification number 104508 is effective through March 1, 2000.

NASBA
CPE



# GAAT

## The ALABAMA
## GOVERNMENTAL ACCOUNTANT and
## AUDITOR TRAINING PROGRAM

*Presents This Certificate*

*to*

# Monica Greene

### Ingram State Community College

*for completing course "State Purchasing Procedures"
on February 27, 1996.*

Chairperson, GAAT Advisory Board

Director, Center for Government and Public Affairs

TRAINING AGENCY
Center for Government and Public Affairs
Auburn University at Montgomery

8 CPE Hours

Date: 6-81-93

MEMORANDUM

TO:        Dr. Murry C. Gregg, President

FROM:      Monica Greene
           (Employee)

RE:        Permission to enroll in College Classes

        Dr. Gregg, I will appreciate your permission to enroll

in the following class(es) at Troy State / Montgomery
                               (college)
for the Summer        Quarter, 19 93.

| COURSE NO. | TITLE | CREDIT HOURS | SCHEDULED DAYS/TIME |
|---|---|---|---|
| MGT 511 MA | Organizational Development | 5 | T/Th 6:15-8:15 |
| | | | |
| | | | |

        Thank you for your consideration to this request.

-----------------------------------------------------------------

        ( ✓ )  Approved
        (   )  Disapproved

                        Murry C. Gregg, Ed. D.

Date: 3-16-93

MEMORANDUM

TO:          Dr. Murry C. Gregg, President

FROM:        Monica Greene
             (Employee)

RE:          Permission to enroll in College Classes

          Dr. Gregg, I will appreciate your permission to enroll

in the following class(es) at Troy State / Montgomery
                                      (college)

for the Spring          Quarter, 19 93 .

| COURSE NO. | TITLE | CREDIT HOURS | SCHEDULED DAYS/TIME |
|------------|-------|--------------|---------------------|
| BAN 6011 MA | Business Strategy | 5 | M/W 6:15-8:15 |
| | | | |
| | | | |

          Thank you for your consideration to this request.

------------------------------------------------------------------

          ( ✓ ) Approved
          ( )  Disapproved

                              Murry C. Gregg
                    Murry C. Gregg, Ed D

Date: 1-5-93

MEMORANDUM

TO:        Dr. Murry C. Gregg, President

FROM:     Monica Greene,
              (Employee)

RE:        Permission to enroll in College Classes

Dr. Gregg, I will appreciate your permission to enroll
in the following class(es) at Troy State / Montgomery
                                        (college)
for the Winter                Quarter, 19 93.

| COURSE NO. | TITLE | CREDIT HOURS | SCHEDULED DAYS/TIME |
|---|---|---|---|
| FIN 431 | Managerial Finance | 5 | MlW 6:15-8:15 |
| HRM 674 | Human Resources Mgmt. | 5 | MlW 8:30-10:30 |
| | | | |

Thank you for your consideration to this request.

---------------------------------------------------------------

(✓) Approved
( ) Disapproved

Murry C. Gregg, Ed D.

Date: 9-14-92

MEMORANDUM

TO:        Dr. Murry C. Gregg, President

FROM:      Monica Greene
           (Employee)

RE:        Permission to enroll in College Classes

        Dr. Gregg, I will appreciate your permission to enroll

in the following class(es) at Troy State /Montgomery
                              (college)
for the Fall            Quarter, 19 92.

| COURSE NO. | TITLE | CREDIT HOURS | SCHEDULED DAYS/TIME |
|------------|-------|--------------|---------------------|
| ACT 691 MA | Managerial Accounting | 5 | M/W 6:15-8:15 |
|            |       |              |                     |
|            |       |              |                     |

        Thank you for your consideration to this request.

-----------------------------------------------------------------

        (✓) Approved
        ( ) Disapproved

                        Murry C. Gregg
                        Murry C. Gregg, Ed. D.

Date: 3-20-92

MEMORANDUM

TO:      Dr. Murry C. Gregg, President

FROM:    Monica Greene,
                    (Employee)

RE:      Permission to enroll in College Classes

Dr. Gregg, I will appreciate your permission to enroll
in the following class(es) at Troy State (Montgomery
                                        (college)
for the Spring      Quarter, 19 92.

| COURSE NO. | TITLE | CREDIT HOURS | SCHEDULED DAYS/TIME |
|---|---|---|---|
| QM 641 | Decision Theory | 5 | M/W 8:30-10:30 |
| | | | |
| | | | |

Thank you for your consideration to this request.

-----------------------------------------------------------

( ✓ )  Approved
(   )  Disapproved

Murry C. Gregg, Ed. D.

Date: 1-3-92

MEMORANDUM

TO:         Dr. Murry C. Gregg, President

FROM:       Monica Greene
                      (Employee)

RE:         Permission to enroll in College Classes

Dr. Gregg, I will appreciate your permission to enroll
in the following class(es) at Troy State (Montgomery
                                            (college)
for the Winter     Quarter, 19 92.

| COURSE NO. | TITLE | CREDIT HOURS | SCHEDULED DAYS/TIME |
|---|---|---|---|
| HRM 510 | Research Methods | 5 | Sat: 8:30-12:30 |
| | | | |
| | | | |

Thank you for your consideration to this request.

---

( ✓ ) Approved
(  ) Disapproved

Murry C. Gregg, Ed. D.

Date: _9-9-91_

MEMORANDUM

TO:        Dr. Murry C. Gregg, President

FROM:    _Monica Greene_
                    **(Employee)**

RE:        Permission to enroll in College Classes

      Dr. Gregg, I will appreciate your permission to enroll
in the following class(es) at _Troy State / Montgomery_
                                                                    **(college)**
for the _Fall_____ Quarter, 19 _91_.

| COURSE NO. | TITLE | CREDIT HOURS | SCHEDULED DAYS/TIME |
|---|---|---|---|
| ECO 652 MA | Macroeconomics + Forecasting | 5 | M/W 8:30-10:30 |
| | | | |
| | | | |

      Thank you for your consideration to this request.

-------------------------------------------------------------------

( ✓ )  Approved
(   )  Disapproved

_Murry C. Gregg_
Murry C. Gregg, Ed. D.

Date: 6-11-91

MEMORANDUM

TO:        Dr. Murry C. Gregg, President

FROM:      *Monica Greene*
                   (Employee)

RE:        Permission to enroll in College Classes

Dr. Gregg, I will appreciate your permission to enroll in the following class(es) at *Troy State / Montgomery*
                                                                          (college)
for the *Summer* Quarter, 19 *91*.

| COURSE NO. | TITLE | CREDIT HOURS | SCHEDULED DAYS/TIME |
|---|---|---|---|
| FIN 631 MA | Managerial Finance | 5 | T/Th 8:30-10:30 |
| | | | |
| | | | |

Thank you for your consideration to this request.

----------------------------------------------------------------

( ✓ ) Approved
(   ) Disapproved

*Murry C. Gregg*
Murry C. Gregg, Ed. D.

Date: 11-28-90

MEMORANDUM

TO:        Dr. Murry C. Gregg, President

FROM:      Monica Greene
           (Employee)

RE:        Permission to enroll in College Classes

        Dr. Gregg, I will appreciate your permission to enroll

in the following class(es) at Troy State / Montgomery
                              (college)
for the Winter        Quarter, 19 91.

COURSE NO.   TITLE                    CREDIT   SCHEDULED
                                      HOURS    DAYS/TIME

ECO 651 MA  Managerial Economics  5   M/W 6:15-8:15

_____     _____      ___   _____

_____     _____      ___   _____

        Thank you for your consideration to this request.

-----------------------------------------------------------------

        ( ✓ ) Approved
        (   ) Disapproved

                        Murry C. Gregg
                        Murry C. Gregg, Ed. D.

Date: 8-8-90

MEMORANDUM

TO:      Dr. Murry C. Gregg, President

FROM:    Monica Greene
         (Employee)

RE:      Permission to enroll in College Classes

         Dr. Gregg, I will appreciate your permission to enroll
in the following class(es) at Troy State / Montgomery
                              (college)
for the ___Fall___ Quarter, 19 90.

| COURSE NO. | TITLE | CREDIT HOURS | SCHEDULED DAYS/TIME |
|---|---|---|---|
| MKT 6661 MA | Marketing Management | 5 | T/Th 6:15 - 8:15 |
| | | | |
| | | | |

Thank you for your consideration to this request.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

(✓) Approved
( ) Disapproved

Murry C. Gregg, Ed. D.

Date: 6-10-90

MEMORANDUM

TO:        Dr. Murry C. Gregg, President

FROM:     Monica Greene
                    (Employee)

RE:        Permission to enroll in College Classes

Dr. Gregg, I will appreciate your permission to enroll

in the following class(es) at Troy State (Montgomery
                                              (college)

for the Summer Quarter, 19 90.

| COURSE NO. | TITLE | CREDIT HOURS | SCHEDULED DAYS/TIME |
|---|---|---|---|
| MGT 671 MA | Organization Theory | 5 | T/Th 6.15-8.15 |
| | | | |
| | | | |

Thank you for your consideration to this request.

-----------------------------------------------------------

( ✓ ) Approved
(   ) Disapproved

Murry C. Gregg, Ed. D.



# INGRAM STATE COMMUNITY COLLEGE

*Ingram*
*State*
*Community*
*College*
**ISCC**
• *Developing Responsible Citizens* •

**Murry C. Gregg, Ed.D.**
President

**J. M. Mulder**
Dean of Technical &
Literary Education

**Paul Reeder**
Dean of Student

**Ron Shum, Ed.D.**
Dean of Academics &
Educational Support Services

**Monica J. Greene**
Dean (Interim)
Fiscal Affairs

April 25, 1995

Mr. Greg Wright, Personnel Director
Ingram State Community College
5375 Ingram Road  P.O. Box 209
Deatsville, Alabama 36022

Dear Mr. Wright:

I am writing this letter to express my strong support of Monica Greene for permanent appointment to the position of Dean of Fiscal Affairs. In her tenure as Interim Dean, she has performed well under difficult conditions including the challenge of succeeding someone who had held the position for over twenty years and facing an imminent and significant reduction in funding. Her relationship with coworkers is admirable, and she is consistently helpful while also exercising sound judgment. I believe she can continue to be an extremely productive asset for the College, and I would very much like to see her continue in this position. It would be difficult for anyone to duplicate the experience she has gained at ISCC during the last few years, or for anyone else to step into the current situation with that perspective which will be needed to most benefit the College in what appear to be some critical days just ahead.

Thank you for this consideration.

Sincerely,

*[signature]*

Bruce Thomas, Assistant Technical Dean

c:    Dr. Murry C. Gregg

*5375 Ingram Road • P.O. Box 209 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-5328*

## Administrative Personnel Evaluation Form
## J.F. Ingram State Technical College

Employee: __Monica Greene__          Date: __9-20-96__

Position/Title: __Fiscal Dean__

*The following items should be rated "as is" or "with comment" by the evaluator. Comments may be either positive or negative as needed. Employees may also request a "with comment" rating in order to make their own comments about specific items on this evaluation.*

| Meets standard as is | With comment | | |
|---|---|---|---|
| (✓) | ( ) | 1. | Encourages good morale and instills a desire to achieve. |
| (✓) | ( ) | 2. | Provides effective leadership in areas of primary responsibility. |
| (✓) | ( ) | 3. | Does not create problems by using excessive amounts of leave. Does not habitually arrive late or leave early. |
| (✓) | ( ) | 4. | Works effectively with employees at all levels to achieve common goals. |
| (✓) | ( ) | 5. | Maintains appropriate balance between professional role and personal relationships with employees. |
| (✓) | ( ) | 6. | Communicates effectively in oral and written form. |
| (✓) | ( ) | 7. | Develops and maintains appropriate and efficient working relationships with other administrators. |
| (✓) | ( ) | 9. | Cooperates with supervisor, accepts directions and receives assignments willingly. |
| (✓) | ( ) | 10. | Is sensitive to problems or changes within the workplace and responds appropriately. |
| (✓) | ( ) | 11. | Makes effort to be a "team player", works effectively as a member of the college's administrative team. |
| (✓) | ( ) | 12. | Participates in appropriate professional development activities. |

*Comments relating to specific items on the preceding page should be cross referenced to those items. General comments by either employee or evaluator may also be included in this section. Additional pages may be attached if necessary.*

Comments: _____



**I hereby acknowledge that I have seen the full content of my written appraisal. My signature does not necessarily constitute that I agree wholly with the content of this appraisal. I understand that I may submit additional written response regarding any item contained in this appraisal, to be included in my personnel file.**

EMPLOYEE SIGNATURE  *Monica J. Greene*  DATE  9-20-96

TITLE OR POSITION  *Fiscal Dean*

EVALUATOR'S SIGNATURE  *J. Douglas Chambers*  DATE  9-20-96

TITLE  *Interim President*

2




**ATMORE STATE TECHNICAL COLLEGE**

P. O. BOX 1119
ATMORE, ALABAMA 36504
PHONE 205/368-8118

MALCOLM A. JONES
PRESIDENT

July 18, 1989

Freddie Powell, Business Manager
J.F. Ingram State Technical College
P.O. Box 209
Deatsville, AL   36022

Dear Freddie:

I have attached a resume on Monica J. Greene for the position of Junior Accountant as per our telephone conversation today. If additional information is needed, please advise.

Sincerely,

Will C. Chapman
Business Manager

**J. F. INGRAM STATE TECHNICAL COLLEGE**
P. O. Box 209
Deatsville, Alabama 36022
(205) 285-5177

## APPLICATION FOR EMPLOYMENT

(Please Print Plainly)

To Applicant: We deeply appreciate your interest in our organization and assure you that we are sincerely interested in your qualifications  A clear understanding of your background and work history will aid us in placing you in the position that best meets your qualifications *and* may assist us in possible future upgrading

# PERSONAL

Date **7-19-89**

Name **Greene   Monica   Jane**   Social Security No. **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**
     Last        First        Middle

Present address **Rt. 2 Box 103   Flomaton  AL   36441**   Telephone No. **(205) 296-2500**
     No   Street        City   State   Zip

Position(s) applied for **Junior Accountant**   Would you work Full-Time **✓**  Part-Time _____

Date of Birth: **10-20-62**   Age: **26**

Sex: M _____ F **✓**   Height: **5** ft **7** in   Weight: **117** lbs  Race: **W**

Marital Status: Single _____ Engaged _____ Married **✓** Separated _____ Divorced _____ Widowed _____

Number of dependents including yourself **1**   Are you a Citizen of the U.S.A.? **yes**

How long have you lived at present address? **3 yrs.**

Were you previously employed by us? **No**  If yes, when? _____

If your application is considered favorably, on what date will you be available for work? **negotiable**  19 **89**

Have you ever been convicted of a crime, excluding misdemeanors and summary offenses, in the past ten years which has not been annulled or expunged or sealed by a court? **no** _____ If yes, describe in full

_____

Do you have any physical condition which may limit your ability to perform the particular job for which you are applying? **no**

If yes, describe such condition and explain how you can perform the job for which you are applying in spite of it _____

_____

_____

Do you have any physical defects which preclude you from performing certain kinds of work? **no**  If yes, describe such

defects and specific work limitations _____

Have you had a major illness in the past 5 years? **no**  If yes, describe _____

_____

Have you received compensation for injuries? **no**  If yes, describe _____

_____

List any friends or relatives working for us, other than spouse **N/A**

Name(s)

# APPLICANT—Do not write on this page

## FOR INTERVIEWER'S USE
### (if needed)

| INTERVIEWER | DATE | COMMENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

## FOR TEST ADMINISTRATOR'S USE
### (if needed)

| TESTS ADMINISTERED | DATE | RAW SCORE | RATING | COMMENTS AND INTERPRETATION |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## REFERENCE CHECK

| *Position Number | RESULTS OF REFERENCE CHECK | *Position Number | RESULTS OF REFERENCE CHECK |
|---|---|---|---|
| I | | IV | |
| II | | | |
| III | | | |

*See Page 2



### Administrative Personnel Evaluation Form
### J.F. Ingram State Technical College

**Date: July 14, 2005**

**Employee:** Monica Greene     **Position/ Title:**

*The following items should be rated "as is" or "with comment" by the evaluator. Comments may be either positive or negative as needed. Employees may also request a "with comment" rating in order to make their own comments about specific items on this evaluation.*

| Meets standard As is | With Comment | |
|---|---|---|
| (✓) | ( ) | 1. Encourages good morale and instills a desire to achieve. |
| ( ) | (✓) | 2. Provides effective leadership in areas of primary responsibility. |
| (✓) | ( ) | 3. Does not create problems by using excessive amounts of leave. Does not habitually arrive late or leave early. |
| ( ) | (✓) | 4. Works effectively with employees at all levels to achieve common goals. |
| ( ) | (✓) | 5. Maintains appropriate balance between professional role and personal relationships with employees. |
| ( ) | (✓) | 6. Communicates effectively in oral and written form. |
| ( ) | (✓) | 7. Develops and maintains appropriate and efficient working relationships with other administrators. |
| ( ) | (✓) | 8. Cooperates with supervisor, accepts directions, and receives assignments willingly. |
| ( ) | (✓) | 9. Is sensitive to problems or changes within the workplace and responds appropriately. |
| ( ) | (✓) | 10. Makes an effort to be a "team player" and works effectively as a member of the College's administrative team. |
| (✓) | ( ) | 11. Participates in appropriate professional development activities. |

DEFENDANT'S EXHIBIT

2- Greene

Employee: _____
Position/Title: _____.
Date: _____

Employee displays good morale while on the job. She displays an honest and respectful attitude when working with other employees. Although the employee presents herself in a positive and professional manner, the majority of her work tends to show a weakness in her specific leadership roles as they relate to overseeing and administrating the affairs of the Business Office. Employee never refuses to do an assignment, but she rarely completes them. When she is asked about the status of an assignment or directive, she is always in the "I was fix in to" stage. Although the employee is regularly offered assistance by the Administrative staff, she seldom involves anyone at that level to help her. On more that one occasion, administrators informed her that their financial statements were wrong, or not the same as the Business Office. They offered their personal assistance, as well as their employees, to temporarily work with her staff. When she did accept the offers, it was only as a last result. The employee is weak in providing effective leadership governing inventory accountability and live work operations. The procedures she uses for monitoring live work projects are only reviewed when directed by the President, or when a problem occurs. The employee never acknowledges, admits, or accepts responsibility for incorrect actions or mistakes that occurs in the Business Office. She tends to blame other employees for problems related to her area, and never addresses whether she, being the Dean, should have had controls in place to avoid possible breakdowns, confusion or conflicts related to financial matters. The internal controls of the Business Office are vague and ineffective. Some other examples or areas of the College where her leadership is needed, but is either missing or ineffective are:

The President directed the Employee to:

1.  Develop a "How to use the Business Office manual or brochure". She didn't do it.
2.  Provide the President with a monthly expense on all regular expenses of the College. She didn't do it.
3.  To identify all vehicles and the conditions of each. She didn't do it.
4.  To compare insurance companies for the best rates. She didn't do it.
5.  To design a key board for all buildings and vehicles. She didn't do it.
6.  To evaluate the pest contract and identify product and usages. She didn't do it.
7.  Provide a report on all college employees who are classified as high risk drivers by the insurance company. She didn't do it.
8.  Implement new purchasing procedures. Status unclear.
9.  Review procedures to use receipts for small work projects, instead of using large amounts of paperwork. She didn't do it.
10. Stop allowing her staff to carry Business Office documents home. She didn't do it.
11. Compare J F I Business Office forms and guidelines to other ACS. She didn't do it.
12. Compare J F I work order procedures with other ACS. She didn't do it.

13. Reactivate or change the reimbursement time period for travel payment. She didn't do it.
14. Design a better procedure for purchasing and receiving. She didn't do.
15. Regularly monitor live work projects. She didn't do it.
16. Implement a time line for all personal items without proper paperwork, to be removed from campus. She didn't do it.
17. Report on the payment status on all accounts with vendors. She didn't do it.
18. Provide cross training for her staff. Status pending.

In order for the Business Office to function as it should, the Dean must make an effort to improve in her leadership and management style. She must refrain from worrying about whether she will be liked or accepted by the people who continues to violate policies, and spend more time on making sure that College policies are followed by customers and employees at all times. She must seek ways to improve in her oral communication. She must also acknowledge that she has weaknesses, and that recognizing them is the first step toward improvement. The President will continue to expect for the employee to improve and provide effective and acceptable leadership in her role as Dean of fiscal Affairs. If it is determined by the Dean and/ or the President that corrective measures cannot be immediately identified, developed, and implemented, the President will take appropriate action as needed.



**Ingram**
**State**
**Technical**
**College**

**ISTC**
• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

February 6, 2006

MEMORANDUM

TO:        J. Douglas Chambers
           President

FROM:    Monica J. Greene    *Monica*
           Dean of Fiscal Affairs

RE:        My Administrative Personnel Evaluation Form

This correspondence is written to refute the negative items listed in my
personnel evaluation and to show the reasons why I did not agree to sign it. I
would also like to note that I received the evaluation on October 10, 2005, not
the date of July 14, 2005, which is showing on the cover page. Apparently
that date is the date that Dr. Merk gave the evaluations to you to complete.

I will address the criticisms in the order that they were presented to me in the
evaluation. The first negative remark is that of a weakness in my leadership
role as it relates to the business office. I can refute all the items listed below
in this evaluation so I would like to know what work issues specifically you
are addressing in this statement. This statement is subjective and appears to
be personal and unsubstantiated.

You say that I rarely complete assignments. I disagree with this statement and
I can show a record of completed assignments. I would like to note the
numerous additional assignments given to me for all types of various items. It
is my opinion that I am given these numerous additional assignments as an
effort on your part to overload me so that I cannot complete these
assignments. I can show in any given cabinet meeting the numerous
additional assignments that I am given on top of all the required assignments
that come with my position.

I disagree with your statement that I am **always** in the "I was fixing to" stage.
Always is also a subjective word that is being used in this context again. I
complete numerous tasks immediately. There are other tasks that cannot be
fixed immediately. Some tasks require researching facts, making observations
or comparisons, and numerous other business office tactics. I take the

*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-2521*



DEFENDANT'S
EXHIBIT
3 - Greene

necessary steps on the tasks that I am assigned, but I do complete my assignments. I have multiple documents to disprove this statement.

The statement that you made about me not taking help from other administrators is not accurate either. If there is some reason that I need assistance from any other administrator, I will go to them and ask them to assist me on some specific task. Usually, problems that are encountered involve the business office and these problems are fixed by the business office. I have no problem with asking any other individual for help if I need it. Again, this is a subjective statement that is brought up quite frequently by you, in my opinion, to degrade me in front of other administrators. It is degrading because you bring it up so often that it appears that you are trying to humiliate me in front of my peers. A subjective statement does not become true just because you say it is. It needs evidence or proof which you have not provided.

The statement about the financial statements being wrong or not the same and the implications of this remark, I object to also. Certain financial status reports are given to administrators that manage particular program areas. Many times the status reports are not the same as their records because they do not account for purchase order encumberances, dates of invoice payments, and the like. There are numerous reasons why our numbers may not be consistent with theirs, but it does not mean the financial status reports are wrong. There was not a need for them to send someone from their departments to work with our department. These items that crop up on occasion are fully explainable and are minor. The statement that when I did accept the help, it was a last result is not accurate either. This whole matter really involves the Special Education department. This department could not understand their financial status reports because they were not taking into account all the variables that I mentioned above. The Special Education Director and I agreed that representatives from my department and their department would meet monthly to iron out and explain any differences that might occur. This was not done as a last resort, it was begun when it was determined by my office that it needed to be initiated. Since these meetings have proven to be helpful, my department continues to meet with their department on a monthly basis. Despite what you have written up, I can show you evidence of my working with other areas of the college whenever there is a need.

I strongly object and disagree with the statement that I am weak in providing effective leadership for inventory accountability and live work. I also object that I only review live work projects when I am directed or a problem occurs. These statements are totally inaccurate. I dedicate a large portion of my time to the live work program. I do this because it is a large part of our college business affairs. Live work generates the only additional funds that the college receives. Since J.F. Ingram has the largest live work program in the

state, it is only fitting that I continually strive to perfect it in any way that I can. For these reasons I dedicate the time to the program. There are occasional problems that occur but that is only normal in an operation of this size. The facts are that when you compare the volume of live work to the problems of live work, the problems are only minimal. I have documentation to show the time that I dedicate to live work and I will be glad to provide it to you. I check some portion of live work on a daily basis. I also provide leadership for inventory accountability. My office bears this responsibility and takes it very seriously. Again, in an institution of this size, there are inventory problems that occur but they are corrected by my staff when this happens. I do not know how you can make a blanket statement like this that has no merit. The state auditors have not had a finding regarding any problems with inventory in my 11 years as dean, so <u>someone</u> is providing leadership in this area.

I disagree with the statement that I **never** admit, acknowledge, or accept mistakes or errors that may occur in my department. I also disagree that I blame others and **never** address these matters as being related to the business office. Again, I must remind you that never is a subjective word and is definitely inaccurate in this matter. I will always admit mistakes or problems that are real because I know that we are all human beings and we all make mistakes. Many times you have tried to blame the business office for mistakes or problems that are not related to our office. In fact, you basically try to blame the business office for almost any problem at J.F. Ingram. I have not and I will not stand for this. I do not blame others for business office problems. I do not take the blame for something not the fault of the business office, though. I must take a strong stance on this because you have tried to blame the business office on numerous occasions for almost anything that goes wrong at the college. My office continually strives to put controls in place at the college. I do address a breakdown in control if there is one but I do not consider every problem at the college as a business office problem. Once again, auditors have praised our policies and procedures for many years. This item, in my opinion, is another personal attack on me; one that is not job-related.

I also strongly object to the statement that the internal controls of the business office are vague and ineffective. This is a **very subjective** statement. This appears to be your opinion because I know what I am evaluated by as a Financial Dean and the college meets these standards. We continue to have **unqualified** audit opinions, the required funds that we need as contingency, and a list of positive variables that are required for my office to be effective. This statement is an opinion that can be disproved if necessary. The audit records of this institution refute this statement in themselves, as no institution with weak and vague controls could operate as effectively as we do.

The next part of my evaluation was examples by you where my leadership was missing or ineffective. I can refute all the items below and I will. I will do this in outline form as you did.

1. A Business Office Manual "Draft" was developed quite some time ago- I presented it in the cabinet meeting and I never received approval from you on whether it was approved or not.

2. I have provided these expenses to you on various occasions when you ask for them-I have also informed you that I have monthly reports that I can give you-You have never shown a desire to have these.

3. All vehicles are identified for our insurance records – I informed you of this on several occasions.

4. I did have Mrs. Givens begin soliciting quotes from different insurance carriers, but in the process you informed Mrs. Givens that you were wanting to go with someone that you knew, so there was not any reason to get quotes. It would not be fair to the other carriers to have them spend the time on putting together a proposal and not be chosen.

5. I turned the keys and the keyboard over to Mr. Marty Martin and assigned him this task. I assigned this quite some time ago but there are a tremendous amount of keys at the college and it will take some time to have this completed.

6. I evaluated the pest contract that the college had at the current time because when this situation came up we were having a termite problem. The current contract that the college had did not cover the termite problem. At that time, I called 3 companies- Cook's Pest Control, Orkin, and Terminix. I informed you verbally on the quotes from each company. After discussion with the appropriate personnel, which included you, the college decided to go with Cook's Pest Control for the pest services. A purchase order was issued by the college to Cook's on 4/19/05. I kept you informed of this throughout the decision making process. I also presented it in a cabinet meeting and informed all in attendance.

7. The college only had one driver at the time that was considered high risk. I verbally informed you of this in a cabinet meeting and in your office on more than one occasion.

8. A new purchasing procedure was implemented on May 3, 2004. The memorandum announcing this change was distributed to all employees at our Spring Inservice Meeting on April 26, 2004. I went over the procedure step by step in this meeting.

9.  The procedure of receipting of small work projects only applies to the Barbering, Cosmetology, and Horticulture programs. A memorandum was sent out regarding the receipting of the barbering program on March 11, 2004. The Cosmetology program was already receipting theirs this way. The Horticulture program had been doing their receipting this way for quite some time. These are the only shops where this is feasible. This project was completed.

10. My staff does not take any information home that cannot be replaced. On occasion I have allowed them to take reports home to check on their own personal time. I see it as dedication, you see it as something wrong with me. I did stop them from doing this though since you had a problem with it.

11. My office and I are constantly talking to other colleges regarding all types of forms and procedures if we have questions. I can supply the phone logs if necessary.

12. My office and I have contacted many colleges regarding work order procedures. I have the phone logs to verify this also. At the present time we are converting to a new system so we have been in constant contact with others.

13. The time period for travel checks has been changed on more than one occasion.

14. The new purchasing procedure implemented on May 3, 2004 covered this.

15. I do regularly monitor live work projects. Some items I look at daily and some items I monitor on a monthly basis. This includes all three campuses. I can supply documentation on this.

16. I implemented this by memorandum with the Dean of the College back in July 23, 2002. Any items on campus have an approved work order.

17. I have provided this on more than one occasion. I can supply documentation on this.

18. My staff is fully cross-trained. We consistently make an effort to do this and always have. We have staff minutes that can support this.

Mr. Chambers, this evaluation appears to be a personal, unwarranted, and inaccurate attack. The choice of words that you used, such as, **"you**

**always"**and **"you never"**can be verified by any type of evaluator as personal attack words.  I want it noted that I fully object to its contents and stand ready to defend any item in my response.  This evaluation, the first negative one I have received in 16 years at this institution, is the most blatant and bold attempt yet to undermine my career.  If there was <u>any</u> reason for this evaluation to be so negative, or for that matter, any reason for you creating this hostile work environment for me, I would understand.  But, I have been an effective, leader and manager (though not perfect) for my department.  I believe this evaluation to be in conflict with the evidence compiled in my record after almost 20 years of service in the Alabama College System.  It stands alone as the only formal attack on my good name and I am disappointed that you have chosen to pursue this course.

cc:  Personnel File

## Administrative Personnel Evaluation Form
### J.F. Ingram State Technical College

Employee: __Monica Greene__                Date: __9-20-96__

Position/Title: __Fiscal Dean__

*The following items should be rated "as is" or "with comment" by the evaluator. Comments may be either positive or negative as needed. Employees may also request a "with comment" rating in order to make their own comments about specific items on this evaluation.*

| Meets standard as is | With comment | | |
|---|---|---|---|
| (✓) | ( ) | 1. | Encourages good morale and instills a desire to achieve. |
| (✓) | ( ) | 2. | Provides effective leadership in areas of primary responsibility. |
| (✓) | ( ) | 3. | Does not create problems by using excessive amounts of leave. Does not habitually arrive late or leave early. |
| (✓) | ( ) | 4. | Works effectively with employees at all levels to achieve common goals |
| (✓) | ( ) | 5. | Maintains appropriate balance between professional role and personal relationships with employees. |
| (✓) | ( ) | 6. | Communicates effectively in oral and written form. |
| (✓) | ( ) | 7. | Develops and maintains appropriate and efficient working relationships with other administrators. |
| (✓) | ( ) | 9. | Cooperates with supervisor, accepts directions and receives assignments willingly. |
| (✓) | ( ) | 10. | Is sensitive to problems or changes within the workplace and responds appropriately. |
| (✓) | ( ) | 11. | Makes effort to be a "team player", works effectively as a member of the college's administrative team. |
| (✓) | ( ) | 12. | Participates in appropriate professional development activities. |

**DEFENDANT'S EXHIBIT**

4- Greene

*Comments relating to specific items on the preceding page should be cross referenced to those items. General comments by either employee or evaluator may also be included in this section. Additional pages may be attached if necessary.*

Comments: _____



I hereby acknowledge that I have seen the full content of my written appraisal. My signature does not necessarily constitute that I agree wholly with the content of this appraisal. I understand that I may submit additional written response regarding any item contained in this appraisal, to be included in my personnel file.

EMPLOYEE SIGNATURE   *Monica J. Greene*   DATE  9-20-96

TITLE OR POSITION   *Fiscal Dean*

EVALUATOR'S SIGNATURE   *J. Douglas Chambers*   DATE  9-20-96

TITLE  *Interim President*

2

JF Ingram State Technical College
Job description

JOB TITLE:
Dean of Fiscal Affairs

SUMMARY: The Dean of Fiscal Affairs administers business affairs of the college by performing the following duties personally or through subordinate supervisors.

ESSENTIAL FUNCTIONS: include the following.
Other duties may be assigned.

- Prepares the operating budget draft for submission to President.
- Directs control of budget upon its approval by board, including collection, custody, investment, disbursement, accounting, and auditing of all college funds.
- Recruits, supervises, and oversees training of fiscal division staff.
- Maintains effective communication and coordination with the Student Services Division and the Financial Aid Officer.
- Keeps financial records and prepares annual financial report.
- Provides advice and assistance in the formulation and administration of polices and procedures for development and management of physical plant, including custodial care, sanitation, and fire and police services.
- Negotiates with industry representatives on costs and materials for building construction.
- Oversees inventory of all college equipment.
- Negotiates with industry representatives on costs and materials.
- Coordinates service operations such as printing, duplicating, mail and messenger service.
- Negotiates with financial institutions to secure profitable interest rates for college funds.

SUPERVISORY RESPONSIBILITIES:
Manages 5-10 subordinate employees in the business office and administrative office at the Main Campus. Is responsible for the overall direction, coordination, and evaluation of these, as well as transportation and maintenance services.

Carries out supervisory responsibilities in accordance with the organization's policies and applicable laws. Responsibilities include providing input in the process of interviewing, hiring, and training of new employees; planning, assigning, and directing work in the Fiscal Division; appraising performance; addressing complaints and resolving problems.

Qualification Requirements: To perform this job successfully, an individual must be able to perform each essential duty satisfactorily. The requirements listed below are representative of the knowledge, skill, and /or ability required. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

Education and /or Experience:
Master's degree (M.B.A.); and four to ten years related experience and or training.


DEFENDANT'S
EXHIBIT
5 - Grane
Blumberg No. 5114

LANGUAGE SKILLS:
Ability to read, analyze, and interpret the most complex documents. Ability to respond effectively to the most sensitive inquiries or complaints. Ability to write speeches and articles using original or innovative techniques or style. Ability to make effective and persuasive speeches and presentations on controversial or complex topics to top management, public groups, and /or boards of directors.

MATHEMATICAL SKILLS:
Ability to comprehend and apply principles of advanced finance and accounting.

REASONING ABILITY:
Ability to apply principles of logical thinking to a wide range of intellectual and practical problems. Ability to deal with nonverbal symbolism. Ability to deal with a variety of abstract and concrete variables.

OTHER SKILLS AND ABILITIES:
Ability to manage personnel effectively, and to communicate effectively.        Ability to coordinate activities and cooperate with other divisions within the college.

QUALIFICATION REQUIREMENTS: To perform this job successfully, an individual must be able to perform each essential duty satisfactorily. The requirements listed below are representative of the knowledge, skill, and/or ability required. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

PHYSICAL DEMANDS: The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of Dean of Fiscal Affairs employee is regularly required to stand, reach with hands and arms, and talk or hear. The employee frequently is required to walk; use hands to finger, handle, or feel objects; stoop, kneel, crouch, or crawl. The employee is occasionally required to sit and climb or balance. Specific vision abilities required may include; close vision, distance vision, color vision, peripheral vision, depth vision, and the ability to adjust focus.

WORK ENVIRONMENT: The work environment characteristics described here are representative of those an employee encounters while performing the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.
COMMENTS: Employees in a correctional environment must remain aware of security concerns at all times.

Reviewed by: _J. Douglas Chambers_        Date: _6-15-04_

Employee's Signature: _Monica J. Greene_  Date: _6|15|04_

## J.F. Ingram State Technical College
## Job Description

### JOB TITLE:   Dean of Fiscal Affairs

Salary Level:   Schedule B              Division:    Fiscal
Location:       Office at Main Campus   Department: Fiscal

Employee Name:  Monica J. Greene
Supervisor:     Mr. J. Douglas Chambers, President

SUMMARY:  Administers business affairs of the college by performing the following duties personally or through subordinates.

ESSENTIAL  DUTIES AND RESPONSIBILITIES:

1. Responsible for the preparation of the operating budget draft for submission to the President.

2. Directs control of the budget upon its approval by the Board, including collection, custody, investment, disbursement, accounting, and auditing of all college funds.

3. Supervises and oversees training of fiscal division staff.

4. Maintains effective communication and coordination with the Instructional and Student  Services Divisions.

5. Keeps all financial records and prepares annual financial report and other reports as required.

6. Provides advice and assistance to the President in the formulation and administration of policies and procedures for development and management of physical plant, including custodial care and maintenance.

7. Negotiates with industry representatives on costs and materials for any building construction.

8.    Oversees inventory of all college equipment.

9.    Coordinates service operations such as printing, duplicating, and mail.

10.    Assumes any other professional duties assigned by the ISCC President.

SUPERVISORY RESPONSIBILITIES:  Manages 5--10 subordinate employees in the college's business and administrative offices at the Main Campus.  Is responsible for their  overall direction, coordination, and evaluation.
    Carries out all supervisory responsibilities in accordance with the organization's policies and applicable laws.  Responsibilities include providing input in the recruitment and selection  process for new employees in the Fiscal Division; planning, assigning, and directing work in the division; appraising performance; addressing complaints and resolving problems.

QUALIFICATION REQUIREMENTS:    To perform this job successfully, an individual must be able to perform each essential function satisfactorily.  The requirements listed below are representative of the knowledge, skills, and/or ability required.  Reasonable accomodations may be made to enable individuals with disabilities to perform the essential functions.

EDUCATION/EXPERIENCE:
M.B.A. and minimum of five years experience in two-year college fiscal operations, including management experience.

LANGUAGE SKILLS:
Ability to read, analyze, and interpret complex documents.  Ability to respond effectively to sensitive inquiries or complaints.  Ability to communicate effectively in writing.  Ability to speak effectively in public, and to make effective presentations to groups of college personnel, administrators, or public groups.

MATHEMATICAL SKILLS:
Ability to comprehend and apply principles of advanced accounting.

REASONING ABILITY:
Ability to apply principles of logical thinking to a wide range of intellectual and practical problems.  Ability to deal with non-verbal symbolism.  Ability to deal with a variety of abstract and concrete variables.

OTHER SKILLS AND ABILITIES:
Ability to manage personnel effectively.  Ability to coordinate activities and cooperate with other divisions and departments within the college.

## Ingram State Community College
## Job Description

### JOB TITLE:  Dean of Fiscal Affairs

Salary Level:   Schedule B              Division:    Fiscal
Location:       Office at Main Campus   Department: Fiscal

Employee Name:  Monica J. Greene
Supervisor:     Dr. Murry C. Gregg, President

Job description approved by:

SUMMARY: Administers business affairs of the college by performing the following duties personally or through subordinates.

ESSENTIAL DUTIES AND RESPONSIBILITIES:

1.  Responsible for the preparation of the operating budget draft for submission to the President.

2.  Directs control of the budget upon its approval by the Board, including collection, custody, investment, disbursement, accounting, and auditing of all college funds.

3.  Supervises and oversees training of fiscal division staff.

4.  Maintains effective communication and coordination with the Student Services Division and the Financial Aid Officer.

5.  Keeps all financial records and prepares annual financial report and other reports as required.

6.  Provides advice and assistance to the President in the formulation and administration of policies and procedures for development and management of physical plant, including custodial care and maintenance.

7.  Negotiates with industry representatives on costs and materials for any building construction.

8.  Oversees inventory of all college equipment.

9.    Coordinates service operations such as printing, duplicating, and mail.

10.    Assumes any other professional duties assigned by the ISCC President.

SUPERVISORY RESPONSIBILITIES:  Manages 5--10 subordinate employees in the college's business and administrative offices at the Main Campus.  Is responsible for their overall direction, coordination, and evaluation.

Carries out all supervisory responsibilities in accordance with the organization's policies and applicable laws.  Responsibilities include providing input in the recruitment and selection  process for new employees in the Fiscal Division; planning, assigning, and directing work in the division; appraising performance; addressing complaints and resolving problems.

QUALIFICATION REQUIREMENTS:    To perform this job successfully, an individual must be able to perform each essential function satisfactorily. The requirements listed below are representative of the knowledge, skills, and/or ability required.  Reasonable accomodations may be made to enable individuals with disabilities to perform the essential functions.

EDUCATION/EXPERIENCE:
M.B.A. and minimum of five years experience in two-year college fiscal operations, including management experience.

LANGUAGE SKILLS:
Ability to read, analyze, and interpret complex documents.  Ability to respond effectively to sensitive inquiries or complaints.  Ability to communicate effectively in writing.  Ability to speak effectively in public, and to make effective presentations to groups of college personnel, administrators, or public groups.

MATHEMATICAL SKILLS:
Ability to comprehend and apply principles of advanced accounting.

REASONING ABILITY:
Ability to apply principles of logical thinking to a wide range of intellectual and practical problems.  Ability to deal with non-verbal symbolism.  Ability to deal with a variety of abstract and concrete variables.

OTHER SKILLS AND ABILITIES:
Ability to manage personnel effectively.  Ability to coordinate activities and cooperate with other divisions and departments within the college.

## JOB DESCRIPTION

<u>**NAME:**</u>      Mrs. Monica Greene

<u>**JOB TITLE:**</u>  Jr. Accountant

<u>**DATE:**</u>      January 24, 1990

## <u>SPECIFIC DUTIES AND RESPONSIBILITIES:</u>

(1)  Assist with all financial data on computer;

(2)  Assist with the preparation of budgets, financial statements, EBO budget, two-year facility report, quarterly personnel report, and monthly general ledger reports;

(3)  Assist in maintaining equipment inventory;

(4)  Prepare all accounts payable for institution, including checking, coding, posting, balancing statements, and preparing monthly remittance and mailing same;

(5)  Assist in writing purchase orders and preparing purchase order reports;

(6)  Assist in accounting for restricted funds, budgets, monthly reports, and final reports;

(7)  Assist others in work overload as needed; and

(8)  Other duties as assigned by Dr. Gregg or Mr. Powell.

APPROVED: _Murry C. Gregg_ (President)    DATE: ___1-24-90___

cc:   Personnel File
     Central File
     Mr. Freddie Powell

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☐ EEOC | |

| | and EEOC |
|---|---|
| State or local Agency, if any | |

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) | |
|---|---|---|
| Monica J. Greene | (334) 395-6887 | |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
| 757 Towne Lake Drive, Montgomery, Al. 36117 | | 10/20/62 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| J. F. Ingram State Technical College | 139 | (334) 285-5177 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
| 5375 Ingram Road | Deatsville, Al 36022 | Elmore |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| J. Douglas Chambers | (334) 285-5177 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
| 5375 Ingram Road, Deatsville, Alabama 36022 | | Elmore |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| | EARLIEST (ADEA/EPA) · LATEST (ALL) |
| ☒ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ AGE | October 1999 · January 2006 |
| ☐ RETALIATION ☐ NATIONAL ORIGIN ☐ DISABILITY ☒ OTHER (Specify) Hostile Work Environment | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

SEE ATTACHED

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | Jenny Lee DeBardelaben |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | Monica J. Greene |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date _____ Charging Party (Signature) | 23 February 2006 |

EOC FORM 5 (Test 10/94)

DEFENDANT'S EXHIBIT

6 - Greene

The following document is to file a complaint against Doug Chambers for creating a hostile work environment at J. F. Ingram Technical College. This hostile environment is especially pronounced for women and Caucasians. I, being the Caucasian woman of the highest job standing at the institution, have been the target of numerous attacks in the workplace. Mr. Chambers has totally undermined my ability to do my job effectively by accosting me in the presence of other employees, especially those who work for me. The following chronology tells of many of the incidents in which Mr. Chambers has degraded me. I have tried every way to diffuse a bad situation, but Mr. Chambers relentlessly pursues my downfall and dismissal from a job that, by all accounts of measurements used to determine my effectiveness, I have done very well. The attacks, under the guise of professional problems, are simply a personal attack on me and other women at Ingram. I dare say that a man would not have been subjected to these kinds of attacks, for they would have surely taken matters into their own hands if they had. Mr. Chambers constantly uses generic words like "weak" and "soft" and makes general accusations without one shred of evidence to back it up. This document spells out many, though certainly not all of the attacks. It is with deepest regret that I must file this action. I have sought a solution by other means many times, but after at least 7 years of abuse, I am left with no recourse. If I do not stand up, the treatment of women and Caucasian employees will continue at Ingram. I seek to be the one to stop this practice.

Monica J. Greene

10-7-99  Mr. Chambers had me in his office as usual telling me that I was weak because he thinks that I always want everyone to like me. I do not think that. I do think that you do not have to scream and holler all the time to make people do what you need them to do. He doesn't like my leadership style, which is totally different from his. This does not mean that I am weak because I don't rule like him. This particular day he made the statement that " I know that you are soft and all but..." he continued on about me not doing what I need to do because I was weak. This is not true. I am consistent which he is not and that makes me very strong.

11-10-99  Mr. Chambers told me that Debbie Dahl said that I was weak. I know that this statement is not true.

1-10-0  Mr. Chambers asked me the question, do you curse? I told him that was not my style. He said , " I want you to get real mad and curse." He also told me that I needed to be a "bitch"! I have been successful in doing my job by not behaving in this manner. I certainly am not perfect but I just don't cuss at employees to get my job done. This does not mean that I am soft and weak.

9-11-0  Mr. Chambers decided to move his secretary up on the salary scale. I asked Him why we couldn't do this with Mrs. Julie Givens and he said that it was because we weren't combining positions for her. He said that was the difference. Later I would have to give Mrs. Givens a ridiculous amount of combined jobs to get her any kind of increase. My department always has to jump through hoops for anything that we get!

10-27-0  Mr. Chambers called me in this day and asked me what was wrong with me? There was nothing wrong with me. He liked to do this a lot. By doing this he could shift the attention off him. He said on this day that there were people that thought I should not have my job but that was water under the bridge. This was just another one of his put-downs.

11-30-0  I was called into Mr. Chambers office. In attendance were Mr. Chambers, Dr. Huffstutler, Gene Bridgman (my assistant), and myself. Mr. Chambers said that I slowed everything down. He said that he wanted to apologize to Gene and Julie Givens because of them having to pick up the pace for me basically. He said that it would take me 4 days to do something that would take them 2. I got up to leave and said that I was not going to sit through this again. I told him that I was so tired of being subjected to this. He raised his voice at me and told me to sit down. He then mentioned the word insubordination. He talked on for a while. He said that I was reactive not proactive. In the meeting though, he would agree with anything Gene said, but he continually put me down.

I was called to a meeting with Mr. Chambers and James Wilson, (black male administrator). Mr. Chambers said I could make many improvements in my department. He then said he wished James and I could swap some qualities. He said he wished I could be more irratic like James and that James could be like me in....well, you just need to be more "like" James.

Mr. Chambers called me and my subordinates (Gene Bridgman and Julie Givens) in and once again told me how lousy my department was right in front of them.

1-25-02   I had been out with my sick child the day before. I came in to do a bid. Rickey Huffstutler (white male administrator) and I were called into his office. He was mad about several things and made the statement "damn near everything is bad." He was yelling this day about our college cell phones. He was mad at me because I had been paying any personal calls that I had on my college phone. He said that I was only looking out for myself. This was not true. I gave copies of the bills to the other administrators and him to be marked business or personal. This is just another case where he is blaming me for something that I did not do.

1-29-02   I asked for a live work coordinator and was denied. This position was one recommended by auditors and others, yet he still refused, trying to undermine my department.

1-30-02   Mr. Chambers made the statement, "I'm going to stay on you, so you better get used to it."

3-14-02   There was a position open in our department and I saw several resumes on Mr. Chambers' desk for the position. Mr. Chambers gave them to Gene Bridgman(white male assistant of mine) as if he were to decide the position. When I questioned him about it, he said "he is just reviewing them; you can make the decision." There was no reason for Gene to see them over me.

4-5-02    In front of my subordinate Gene Bridgman (white male), he said "these are things you need to do, but you won't do them." (no such "things" exist, as I have complied with all his directives.

5-14-02   Once again, a meeting with me and Gene Bridgman. Mr. Chambers said he was "disappointed with the business office" although there is not one shred of evidence as to why he should have been disappointed. He went on to say, "if better things don't happen, Monica will be ineffective (an obvious legal term)and if she is ineffective, she will be of no use to Gene or my department." He continued, "Gene is doing your job, but that should free you up." He made other degrading remarks in this meeting as well. Of course he said I was weak and that I wanted everyone to like me. This was not true.

7-3-02    I rebuked an employee (Jeff Prosser, white male) for a clear violation of policy and, in the presence of the instructor, took his side though I was clearly in the right.

9-6-02    In the presence of my department, Mr. Chambers yelled at me about the Home

Depot bill. The matter had already been handled, yet he wouldn't listen and berated me in front of my subordinates again. This meeting included a remark by his then supporter and white male dean of instruction, Rickey Huffstutler, that "business managers had been fired."

9-9-02    Mr. Chambers arbitrarily gave the majority of James Wilson's staff raises.

9-11-02    In an administrative cabinet meeting he once again brought up the Home Depot bill and asked others for their imput. They had actually been part of the problem which had, by the way, already been resolved. This was just another obvious attempt to undermine me.

9-12-02    A two-hour meeting resulted in the threatening comment by Mr. Chambers, "I am putting you on notice concerning your job" There were no circumstances or problems in the business office that warranted anything but positive comments, much less threatening my livelihood.

9-19-02    Mr. Chambers sent Dr. Huffstutler and I a very negative and inaccurate memorandum. He sent copies to the other cabinet members which included a subordinate of mine. I have enclosed a copy of his letter and a copy of my response.

9-20-02    Mr. Chambers, Dr. Huff, Gene Bridgman and I were in a meeting. He mentioned several times a memo I had written him disputing his untrue claims about bills not being paid on time. He said, "I'm not going to get into a memo war". This is an obvious attempt to avoid a paper trail that would explain the truth about his harassing me with unfair and untrue statements.

9-22-02    I have enclosed a copy of my response to his letter on 11-19-02. In this letter I asked him to stop the personal attacks.

9-24-02    Mr. Chambers announced that he would have his secretary check all the bills before sending them to my office. This action was demeaning to me, since his secretary had no idea about our accounts payable process.

10-10-02    Larry Williard and Hal Bradsher (white male auditors) came to a meeting concerning our audit. The audit was an unqualified one. There were some ethics questions concerning he and Dr. Huffstutler. I was told there was no need for me to be there. Imagine, the business dean, the person solely in charge of the results of an audit being told she was not needed in a meeting about an audit. The issue was obviously resolved, as no ethics problem was noted. I had said that I wanted nothing said about me or my office without me being there. Mr. Chambers said nothing would be. I find it unusual that the auditors would allow this. I later would find out why they did.

10-21-02    Mr. Chambers once again called me in to berate me about accounts payable. I cannot remember exact quotes, but the tone of the meeting was extremely hostile and threatening.

3-14-03   Mr. Chambers and I were meeting with Mr. Ed George, a white male lawyer.
          During that meeting, both men said I was going to "have to be tougher." The
          meeting was concerning the steps that I would need to follow to terminate a
          problem employee. Mr. Chambers brought up some of our disagreements in
          this meeting. This was not the place. Mr. George told Mr. Chambers he did
          need my support on this termination matter. Mr. Chambers relayed several
          messages in this meeting that were completely inaccurate concerning the firing
          of the employee. He was clearly looking for a reason how I had handled this
          incorrectly. Among other things, he said that I gave Carrie Hand (the
          employee) a raise for no reason. This is simply a false statement which was an
          attempt to undermine me. There were no problems which arose concerning
          this matter. The employee was terminated and there were no repercussions. I
          obviously handled it correctly. The problem is, there is great irony in two men
          telling me I am weak that are also telling me they aren't sure I should take the
          action I was taking. You can't have it both ways. I believe the "weak"
          comments were definitely related to my gender.

7-3-03    Mr. Chambers called me into his office along with Julie Givens and Gene
          Bridgman. Hal Bradsher (auditor) had talked to him about an audit matter
          concerning Dr. Fred Gainous. He was very mad at this meeting and he, once
          again, made several negative remarks about me, including alluding to my not
          being honest. He knows that I am an honest person and that I get very upset if
          that integrity is questioned. Knowing this he makes almost
          constant requests that I "tell the truth". I have never told him anything but the
          truth. On this day he looked at Gene and Julie and said for them to tell the
          truth. In other words he was implying that I was not telling the truth. Please
          note that he was not talking about any particular incident, he was just acting
          like I never told him the truth. He does unsubstantiated things like this quite
          often. I became upset and I asked him if my employees could leave because
          this matter was between he and I. I also knew that this encounter was making
          them feel uncomfortable. He refused this request. The meeting escalated. His
          worst comment though at the height of his yelling at me was, "you need to
          resign". I responded that I would not give up my career for him, especially
          when nothing he has accused me of is remotely true. He then replied, "when I
          get back from my trip, I will take you to the Chancellor." I said, "no, sir, Mr.
          Chambers, I will go before you get back. I did make the appointment and met
          with the Chancellor. Then, things got worse.

8-1-03    On July 31, my office received an unqualified audit report. Instead of being supportive and positive, he called Julie Givens (my administrative assistant) and me in and gave us a stern lecture about how bad things really were. This was a common practice after each good audit. These meetings were full of comments like these: " you are just fortunate that you have a 'good relationship' with the auditors" and "you got lucky they didn't pull certain records". He never once commended us.

8-13-03   The Chancellor called me back to his office to discuss further the complaints I had filed with him concerning Mr. Chambers. I met with Chancellor Roy Johnson and Vice-Chancellor Debbie Dahl. I never wanted any action at all as far as disciplining him, I only made the same request at both meetings, I wanted him to stop yelling at me in meetings, stop berating me at cabinet meetings, and stop undermining my ability to do my job with his personal attacks, especially those in front of the subordinates from my department. One of the things I discussed with the Chancellor at both meetings was a claim he made that, "vendors had contacted the Chancellor's office about unpaid bills." I ask the Chancellor if that were true. They replied that they had never received any call about J.F. Ingram. It doesn't take a genius to figure out that this lie is an obvious attempt to make a case against me regardless of truth.

8-22-03   I got a memo from Mr. Chambers concerning "old bills." He continued to insist that "bills weren't being paid". Regardless of any explanation, he wrote these inaccurate memos to "make his case".

8-25-03   Terrible administrative meeting with more yelling, though I do not have record of exact quotes. After the meeting, I gave him another memo asking for him to stop attacking me. Dr. Huffstutler and Mr. Chambers had a physical confrontation out behind main building on that same day regarding a betrayal that he had commited against Dr. Huffstutler. There were witnesses to the altercation. After this date, Dr. Huffstutler seemed not to be on his "team" any more. He became the target of vicious attacks and criticism more often. I believe some of this was Dr. Huff's unwillingness to assist him in trying to get rid of me. Dr. Huffstutler and I worked very well together despite Mr. Chambers trying to make it appear to the contrary.

8-26-03   I was out of town on school business (ACCESS workshop). He called an Instructor (Terry Keahey) in and told him I was out to get him. This was certainly not true, but Mr. Chambers needed Keahey to not like me because of some questionable work Chambers had made Keahey do for Chancellor Fred Gainous. Mr. Keahey is a witness for me in this complaint if needed.

9-9-03    Jim Merk and I were working very hard to get some board approvals done. In the middle of this project, he pulled Merk away to go to breakfast, leaving me to complete the task, though there was much pressure from him to get this done that day. I still completed the task.

9-10-03   I finished the board approvals and needed his signature to complete the task in time. Without signing them, he left for a doctor's appointment.

10-13-03  Gene Bridgman met with Mr. Chambers behind closed doors. James Wilson and personnel director Jim Merk called me in for a meeting after this, instructing me to offer Josh Bridgman (Gene's son) the job as accounts

payable clerk. They also instructed me to give me a salary higher than what would be normal for a new person at that position. I had serious doubts about Josh's ability to do the job, but Mr. Chambers said he "didn't want to hear any thing from me about Josh's performance." I tried to talk to him about this and he wouls not listen. We had given Josh a chance to do the accounts payable job temporarily and had been very much displeased with his performance. Still, he was given a contract against my will. Mr. Chambers blamed Julie Givens (my female assistant) for the whole matter because she had suggested we give Josh a chance originally. She could not know of his inability to do the job, but this seemed not to matter. Related to this, we had taken Josh from another job assisting Coleman McKeithen, so on the same day he was awarded the contract, I asked for more help for Mr. McKeithen and was refused. He simply gave Josh the contract to buy Gene Bridgman's continued allegiance in his cause to get rid of me.

All of 2003- had his secretary keep a record of any bill in which there was a problem. He
Kept these in a file, regardless of the fact that all of them could be explained. For the volume of bills we pay, these represented a miniscule number of them in which any questions arose. I am told that he later shared these with the Chancellor's office as "evidence".

1-9-04         Mr. Chambers informed me that a review team was coming from the Chancellors office to perform a review of the business office. He acted like this was something that came about from my visiting the Chancellors office rather than from his constant requests. I knew that he was the reason for this review. He informed the cabinet of the review and also informed my staff. He put out a memorandum to all employees about this. He wanted everyone to know. Even though I didn't expect them to find any problems, it was still humiliating for me to have them come because the only times that I have known them to come to visit offices there were major problems. We didn't have any of these. I just had a boss that wanted the business office to have problems. That makes a lot of sense, don't you think!

1-12-04       A review team consisting of Debbie Dahl, Leigh Grogan, and three of my peer business officers. I respected the people that they sent and they respect me. I still felt like this was a total embarrassment for no reason. The report showed strengths and weaknesses in each area of my department. There were no glaring problems that could not be quickly remedied. A lot of the

problems were as a result of Mr. Chambers interference and especially
inconsistency. I felt then and I still feel that there was no reason for this
visit. It came about as a result of Mr. Chambers constant complaining about
me to them. I feel this was totally unwarranted.

4-7-04    Approximately 2:30 pm, Mr. Chambers met with the main campus ladies and
said that he wasn't going to say anything else about their dress. He was mad
because he said that someone had told him that the ladies were offended from
his talking to them the day before.

5-27-04    Mr. Chambers yelled at me in front of Jeanna Givens and told me he "didn't
like my attitude" because I told him I could not have anything to do with the
political PAC because of my position with the college. He fussed very loudly
at me about this for a while, as Jeanna can verify. He had wanted to give
money to our state board representative Stephanie Bell and wanted me to
handle the transaction and I couldn't. It would be a job violation for me.

6-30-04    Kay Perryman went to the Chancellor, I believe at the urging of Mr.
Chambers. I believe she went there to criticize me as you will see in the next
article.

7-26-04    Roy Johnson (Chancellor) and Debbie Dahl (Vice-Chancellor) came to talk to
Mr. Chambers and me. We talked about the Lifetech program, Special Ed,
and the business office. The meeting lasted about an hour. Dr. Johnson had
ideas mainly about special ed. After we finished, Mr. Chambers told them he
needed to see them for about 15 minutes, but kept them for about 35 minutes.

9-1-04    I was waiting on (Jesse Perry), a live work customer (black male who works
at Alabama State University), to send his total deposit on a live work project
he was having done. He had not given us the full amount. Though it is a clear
policy of our institution to have the total deposit before beginning work on a
project, Mr. Chambers told me to let Jeff Prosser go ahead and start the
project. I have contested all along that any weaknesses in any procedures
were a direct result of his not being supportive of policy. This incident
verifies my claim.

5-23-05    Barbara McAnally (a consultant from Florida for the State Dept. of Education)
came for a meeting regarding the monitoring of the Special Education
program. I was in my office with the door closed. I heard this loud noise so I
opened the door to see what it was. It was Mr. Chambers yelling at this
woman. He was yelling and pounding his fist on the table. This was around

the corner from me and the door was closed. Mrs. McAnally did not yell back. He yelled at her for a while because she found fault with the Spec Ed program.

1-6-05    On January 3, 2005 Mr. Chambers called a cabinet meeting. In this meeting he talked about starting the new year off positively. One of the major items that he stressed was that of coming to him if we had a problem or problems, and working those out. Also, he said for us to work with each other before we came to him. On January 5th, Kay Perryman (Special Ed. Director) sent Mr. Chambers a memo requesting read access to our financial records because she said that she was not getting her reports in a timely fashion. This was not true. I received a cc copy of the letter rather than the letter directly. I went immediately to talk to Mr. Chambers about this, hoping that the new year had indeed brought a change. It had not. I suggested to him that Mrs. Perryman should have come to me as we had discussed in our meeting. He immediately took her side and told me I should have handled it differently. Mr. Chambers did not, however, leave it at that. He then turned the conversation on me. He once again mentioned my meeting with the chancellor, but quickly said that he didn't hold it against me that I went. (so why did he keep mentioning it so much). He was intimidating me as best he could. So, I told him that I had only gone because he threatened my job and that I had not sneaked down there, but rather had told him I was going. He would not even acknowledge my point. I then became emotional and told him that the most important thing for me was to try to be a good person and do what was right, no matter what. He then said, "you should have been a candy striper". I told him this was a very serious matter, and not a joke, but he continued to degrade me, so the meeting ended. I decided that day that if he thought this was a joking matter, that about said it all.

1-10-05    Today, Mr. Chambers called a meeting with Mrs. Perryman, Dr. Huff, and me. During the meeting, Mr. Chambers brought up our private meeting and told those present that I had said that I "was" a good person. This brings about a different connotation than "trying to be a good person", which he meant to do. That is not what I said. I tried to speak up at this point but he would not allow it. He never mentioned his candy striper remark. He then talked about a man who he had worked with, who was a good person, but a lousy administrator. He said, "it doesn't matter how good a person you are, it doesn't mean you can do the job." The message was obvious.

1-14-05    Mr. Chambers had auditors closed up in his office most of the day.

1-21-05    Mr. Chambers had auditors closed up again in his office.

2-1-05    Mr. Chambers made me write a memo about Julie Givens arrival time. He then questioned Julie after I left.

1-13-05    Mr. Chambers told Julie that he didn't know why Dr. Huff and I thought we should go to the State Board Inauguration. We were both sent invitations and every other college dean was there. He simply hates me and now hates Ricky as well, because he won't lie for him and help him get me fired.

3-2-05    Dr. Johnson called me to his office again to discuss some options for me. He

|  |  |
|---|---|
|  | was very professional and I thought, sympathetic. Mr. Chambers had once again been there complaining about me. |
| 3-4-05 | On his first day back after my meeting with the Chancellor, Mr. Chambers called a meeting with me and Dr. Huffstutler. He had already waited in the parking lot that morning on my assistant Julie Givens so he could get the details of my meeting. He immediately, in the meeting, let me know that he knew "I went to the Chancellor". I told him the truth, that the Chancellor had called me down there. He always knew when I had a meeting there, and I know how. He spent the rest of the day with his henchmen (James Wilson and Jim Merk) going around like spies to get the gist of my meeting. |
| 3-23-05 | He called me in his office about the pest control contract. I began to tell him that I had already handled this, when he got mad and yelled at me that "you didn't keep me informed" and other angry words. Leigh Grogan, from the chancellor's office happened to be on campus and heard him yelling. |
| 5-24-05 | The auditors came back after a break. Mr. Chambers had them in his office early. |
| 9-23-05 | The 2003-04 audit report was released. Mr. Chambers had the worst negative response I have ever witnessed for one audit finding. He personally attacked me in this response. He put my name in this report, a report so negative that the Chancellor later sent him a memo calling it "unprofessional" and "unnecessary". |
| 9-19-05 | As if the response was not enough, I received a memo (enclosed) from him on this day referencing "weak internal controls" again. He directed me to review the live work process step by step and give him a report. He described this as "a warning to me". |
| 9-20-05 | Mr. Chambers allowed his friend (a black male) to get a work order with a $9600 deposit only 10 days before the end of the fiscal year. There was no way to complete the work before the end of the month, so the money had to sit on our books. |
| 10-06-05 | I responded to the attached letter of 9-19-05. |
| 10-10-05 | I received my first poor evaluation in 18 years in the system. I responded to this and showed very clearly that his accusations were groundless and unfounded. This response is enclosed. |
| 12-07 -05 | Carolyn (the audit manager) was in with Mr. Chambers for a long time. The door was open at first, but then he closed it. You can bet he had something he didn't want heard. |
| 1-24-06 | Mr. Chambers called an administrative meeting. In this meeting, he only discussed perceived problems in the business office. I took it for a while, then I said, "I get your point; I think you've said enough." He yelled at me and said, "don't you tell me when I've said enough." I then said, "I find it hard to believe that I'm the only person in this room that we need to discuss." No one else said a word and the focus stayed on me. He dismissed the meeting because he was still angry. |
| 1-25-06 | He sent me a memo saying "all further communication between us will be in |

writing. Also on this day I received a copy of a memo from him to Dr. Johnson requesting that we meet to discuss a very serious problem at the college. I am that "serious problem" though no one has ever enumerated what specific problems I cause.

He is once again talking to me now, but his attacks continue. I feel I have no other option than filing this complaint.

# 2001

2-13-01    My trip to Oxford- Mr. Chambers said he would approve if I paid my own way because of proration but if later he could pay some he would. I was never reimbursed for any of the expenses. All other participants colleges paid their way. He just made a joke of the whole trip.

2-28-01    I received a letter from Mr. Chambers telling me to pay one of our instructors for some equipment that he was giving to the college. I had approximately 3 questions. When I told him about it not being bid, he got real mad. He raised his voice and began yelling, closed door, called Dr. Huffstutler in. He went on to say that things with my department had been building up with him. He said that he had made a bet that something would be said about this. He went on to tell me about my weaknesses. He said that he did not like the team concept that I had. I know you don't cuss but ... H e went on to talk about how I had been criticized by the instructors. He fussed for a while. I told him that I was just a cautious person and that was why I asked the questions.

3-21-01    Mr. Chambers called me, Gene , and Julie in and said it was not going to be a chewing out. I asked him before we went in if he just needed to talk to me because I knew that he had called them in while I was out with my sick child. He said no, that this was just about things we needed to do, etc. I have the notes from what he said.

3-21-01    I tried to get a job at one of the other technical colleges so that I could get Closer to my aging parents. I did not discuss this with him because I knew that he would not help me. Today, he called me in and said that he knew about it because the President of that college had called him. He said that he wished I would have told him so that he could have helped me. I got denial letter on 3-23-01. He could have helped me when the President called and he didn't. It appears that he doesn't want me around but he doesn't want me to be able to go anywhere else.

3-22-01    Cabinet meeting with Dr. Huff, Mrs. Perryman, Dr. Merk, Mr. Wilson, and Mr. Chambers. He berated me in front of the cabinet. He said that he had given me an ultimatum. He said that I didn't pay the bills, etc. He said lots of negative things I have the notes on this.

5-7-01    My mom had a very serious surgery and I had been out a week with her. She died on 5-20-01. The day that I came back Mr. Chambers was not at

work but he called me in Julie Givens office and put me on speaker phone. He told me to get my whole staff in there for the call. He proceeded to tell me all the things that were wrong with my department.

6-18-01  Mr. Chambers called me in his office and made some general comments about the live work program. He then said that I was being accused of being a weak business manager. He gave me no reasons for this. He just made the statement.

6-28-01  General meeting with Mr. Chambers and Dr. Huff. He keeps telling me about business manager getting fired at Trenholm. The Business Manager at Trenholm had a known alcohol problem, missed a lot of work, and had many other problems. There should not have been any comparison.

7-2-01  Mr. Chambers said that I didn't need to do an out-of-state travel request for Oxford because I couldn't be reimbursed for it.

8-27-01  Cabinet meeting about teamwork, many negative tones thrown to business office, reference to people keeping journals, etc., said this is not helping us with teamwork. After meeting, he questioned me about cutting off live work, like I shouldn't be doing this at year end.

9-13-01  I questioned Mr. Chambers about Mrs. Perryman's travel since everyone else's was being monitored during proration. He got really mad and said that I should get me a job somewhere else. He went on to mention jobs that Julie did, some I did, but he said that Gene Bridgman does everything.



# INGRAM STATE TECHNICAL COLLEGE

## November 22, 2002

J. Douglas Chambers
President

Bickey A. Buffstarler, Ph.D
Dean of the College

Monica J. Greene
Dean of
Fiscal Affairs

James F. Wilson
Dean of Students
and Support Services

**MEMORANDUM**

**TO:**     J. Douglas Chambers
            President

**FROM:**   Monica J. Greene   *Monica*
            Dean of Fiscal Affairs

**RE:**     November 19 and 21—Memorandum and Meeting

This correspondence is in reference to the memorandum you sent me on November 19, 2002. It is also a response to the meeting that took place on November 21, 2002. In this memorandum, I will address several items, and will approach them in no particular order.

Let me first say how much I respect your position as President and policy-maker for the college. I also recognize that you are my boss and the ultimate last word on this campus. Having said that, I find myself once again writing a memorandum which should be unnecessary. I sincerely hope I convey my message more clearly in this memorandum than I did in the one I wrote in September concerning some of the same issues.

In your memorandum, you made the statement that I was not doing my work. I know that the basis for your memorandum was a live work problem with a customer, Leigh Kennedy, that you did not think was handled properly. I can honestly say that if you invited Ms. Kennedy to the college and asked her who did the right things for her and where she encountered problems, it would not be with me. In fact, Ms. Kennedy told me herself that she told you that you should be thankful for me because I was the only person that helped her. Also, Mr. Keahoy himself told you very clearly who was at fault, yet you still continue to assign blame to me about the matter. I have done everything I can do to make the customer happy and you know it. I ask you to refrain from these unfair attacks.

The business office at J.F. Ingram is a strong department. We have, as the auditors have noted, clear and sound business practices. When the policies are supported, and there is no interference in our work, the office runs smoothly. Again, despite your comments to the contrary, I do my work. I also believe I

*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-5328*

provide fair and consistent leadership for my staff. I discipline when needed, though I must confess, if your idea of a good leader is someone who terminates many employees, I must respectfully disagree. I am also refuting your claim that I am afraid to follow up on disciplinary matters. On more than one occasion, I have recommended reprimands for employees not following policies. On each occasion, my recommendation was not acted upon. I only recommend disciplinary action when an employee has violated one of our clear policies, therefore, it has not been me that dropped the ball.

You have told me that the auditors think and say that I am weak. I cannot find one to collaborate that accusation. The auditors have indicated to me that we have clear policies, and that we are doing a good job despite outside interference.

I earned the position I have. After almost 16 years of service in the system, not one supervisor has felt I needed a citation of wrong-doing of any kind. My record, and my conscience, are clear. Why suddenly, am I the focus of personal attacks? For the life of me, I cannot figure this out.

I am extremely careful with taxpayer money. I want the government to be wise in their spending of my tax money, and I feel I owe the same discretion to the people who fund our school. Therefore, I will continue to monitor expenditures closely. I surely do not want to spend a penny of public money on a bill we do not owe. If it takes a little longer to bring closure because of this concern, I guess my stance is that I would rather do it correctly than quickly. Having said that, our bills, despite incredible volume, get paid in a timely manner. If there is exception, you can believe there is a legitimate concern over the accuracy of the transaction.

Next, I would like to address the statement about Dr. Huffstutler and I working together. Our relationship is much better, as we have both worked hard to better understand the other's job. We have developed a good working relationship and I respect all he does for the college.

One of the most troubling attacks of all is when you criticize me in front of subordinates, including, but not limited to, Gene Bridgman. On many occasions this has happened. I find that practice totally unprofessional, and want to state clearly that it purposefully undermines my position. I simply want to do my job in a less hostile environment. I have asked for that before. Your response was a condescending letter.

Finally, you have indicated that you would like to help me better do my job by offering -suggestions. I have found some of these helpful and have implemented them. Several of your suggestions, however, have been attempted before at J.F. Ingram, and have proven unsuccessful or impractical.

The truth is, many of our employees will "cloud the water" in any way they can to avoid following the proper well-established processes.

I want to end my memorandum with a question. That question is, why do you see me the way you do? I am fiercely loyal, honest, and work hard to make sure I am an asset to this college. I have never embarrassed you in any way. Our office is highly thought of by the public. My only personal goals are to do the best job I can and to retire from the system in good standing. I cannot see where this poses any threat to you or anyone else. I do not understand why we cannot have a peaceful, professional working environment. I will continue to do my best to make this happen.



**Ingram
State
Technical
College**

◄ *Developing Responsible Citizens* ►

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

## <u>MEMORANDUM</u>

TO:        Dean Huffstutler
                Dean Greene

FROM:    J. Douglas Chambers
                President

*J. Douglas Chambers*

RE:        Completion Process

DATE:    November 19, 2002

This correspondence is being sent to "once again" request that you develop a clear and precise procedure to put closure and completion to work responsibilities. I am very much displeased, as well as, disappointed that I have to continuously meet with you to argue the point that you are not doing your work. I also find it difficult to understand why it is so hard for the two of you to work on assignments/projects, complete them, and bring positive closure. I am embarrassed that I have to discuss and resolve matters with customers that you either failed to do follow-up, or complete. I expect for the two of you to work together. I am directing that you do it, and do it now. My personal assessment clearly indicates to me that the Dean of the College and the Dean of Fiscal Affairs are worlds apart when it comes to dealing with instructors and customers. When you both tell me that you can't do anything with the problem employees, but you refuse to recommend discipline, we have a serious problem. I strongly request that you take a serious look at your job responsibilities and decide whether or not you are providing appropriate leadership to your subordinates, as well as the college.

*P.O. Box 220350* ▪ *Deatsville, Alabama 36022*

*Phone: 334-285-5177* ▪ *Fax: 334-285-5328*



### INGRAM STATE TECHNICAL COLLEGE
October 6, 2005

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

## MEMORANDUM

**TO:**     J. Douglas Chambers
President

**FROM:**   Monica J. Greene      *Monica*
Dean of Fiscal Affairs

**RE:**     Your Memorandum of September 19, 2005

This correspondence is written to inform you that I have read your memorandum addressed to me and I will be providing the stated directives that you have assigned to me. I also have several objections to items addressed in your memorandum.

My first objection is to the constant reference by you that the college has very weak internal controls. I have discussed this objection with you on more than one occasion but to no avail. You have the right to have your opinion and I have the right to have mine. I am going to list some reasons for my opinion.

First of all, I take the audit report very seriously and always have. The audit report did list one finding divided into three parts of which all involved live work. I regret that the college had an audit finding, but when you look at the volume of live work that the college does, in my opinion the finding was minimal. The profit margin problem was a miscommunication between the auditor and the business office. The auditor changed a procedure that the college had been using for years. This change in procedure along with some outside factors (leaking roofs, fire damage) were the reasons for this percentage difference. The business office was able to explain the reasons for the percentage difference, therefore that problem was resolved. One reason that the business office had not explained it prior to the audit finding was because the auditor never gave us a clear understanding of how he was going to write this up.

The second part of the finding regarding the deposits was inexcusable in my opinion but still when you look at the big picture, the auditors found 5 problem work orders out of the 1,468 work orders that were processed

*P.O. Box 220350 • Deatsville, Alabama 36022*

*Phone: 334-285-5177 • Fax: 334-285-5328*

for the 2004-05 fiscal year. The sample of work orders that they reviewed were from the 2004-05 year even though the audit was for the 2003-04 fiscal year. This is the reason that I am giving you the 2004-05 figures. The percentage of error is less than 1%. I agree that these five should not have happened but again this small percentage shows that this is not a huge obstacle for the college to overcome. Any procedure that works 99.6% of the time, is obviously clearly understood by everyone, and needs little or no revision. That .34 of one percent when the system did not work can not possibly represent a systemic problem, but rather a rogue case or two, or perhaps even an honest mistake.

The third part of the finding involving Dr. Huffstutler was also an incident that should not have happened. Dr. Huffstutler has stated that there was a misunderstanding on the paperwork between the instructor and him, and that he should have followed up on this. But again, this error does not increase the percentage of error that I previously stated.

Mr. Chambers, I want you to understand that I take the duties and responsibilities of my job very seriously. You can ask anyone that truly knows me and they will tell you that I am a "rules person". I am also not a gray thinker, everything to me is either right or wrong. Of course, this is not a perfect world, and we all have to realize that apparently there has to be some gray areas, but that does not mean that I have to like it or be comfortable with it. I continue to make it my goal to get rid of as much of the gray that I can. There are many things that happen at J.F. Ingram that are out of my control or above me that make me uncomfortable. I will continue to fight the battles over these things, but I don't always win. I think these things play a part in any of the small problems we may have at J.F. Ingram. You stress consistency and I am in total agreement with you on this matter, but we all know that all things are not consistent here and this causes problems. These inconsistencies do not come from my department because if it was left up to us, everyone would follow the rules. Things just work better that way. As I previously stated, I learned early in life that following the rules worked the best for me. I have made it one of my life's ambitions to do this. This ambition is the reason that I do not appreciate the reference that the internal controls involving live work are very weak. Any weakness we have is not the result of unclear policy or lack of enforcement by our business office. It is from forces outside the business office interfering with the enforcement of the rules set by the college and the business office.

I, along with my staff consistently review the live work process to see if we can improve it in any way. In any process there is always room for improvement but I disagree that your assessment of the audit reveals to you that basically if I had done a better job maybe the college would not have had the audit findings. I will do my best to insure that the rules are

followed and I will monitor the profit margin percentages very closely
like I have always done but I will not take all the blame for the audit
findings. I know that with my job comes responsibility for these things
but I respectfully object to the warning letter that you wrote me
threatening disciplinary action on me like I was not doing my job. These
audit findings did not come about as a result of my office not enforcing
rules and not monitoring as we should have but as a result of "mixed
signals" that the instructors were given from others at the college.

I was shocked when I read the response by you to the audit finding. I
guess that I should not have been surprised by it because when I asked
you if I could have a copy of the response when you were done, you said
no! This seemed unusual to me since the business manager usually helps
write the response. There was only a small section that you asked for my
help on and that was changed somewhat. In all my years of reviewing
audit reports, I have never seen such personal attacks written up in an
audit response. It is very rare to find responses in audit reports that site
anyone by name even in really bad audits. Our audit would not be
considered a bad audit. I challenge you to check the state examiners web
site in respect to audits of the two-year college system as well as colleges
like Troy University to support what I am saying. Several colleges had
some major problems and their responses were still very supportive of
the business office and very positive. I just do not understand why you
took such a threatening and personal approach in your response. Your
response was much stronger than the audit finding. I totally respect your
position as my supervisor, but your response was a personal attack on
me. I do not respect that.

I am still considering my options on the action that I plan to take to have
my name cleared since you so blatantly put it into the response. I
consider it defamation of my character as well as a personal attack on me
and my office. There are several inaccuracies in the response that affect
me. One in particular is the statement that you said that Dr. Huffstutler
and me reported to the cabinet that all live work activities were up to par
and that checks and balances were in place. At the time that this report
was made, all live work was up to par but the audit findings were chosen
from the most current work orders that we had at the time and this is not
what we were reporting on. These findings did not result from the checks
and balances not being in place either. Sometimes things just happen as a
result of a few violations of policy. Our checks and balances are very
good, evidenced by our history of consistently unqualified audit reports.

There are several inaccuracies that were inserted in the document. It is
these insertions that are not fair to the people named in the response.
The response defames all people named in the audit because our personal
names should not have been inserted. Inserting titles is sometimes

expected, if necessary, but the reference to individual names is upsetting!
All of the items you say that you are warning me about are already in
place. I will continue to review the live work procedures and look for
ways to improve things but as I said before neither me nor my
department caused this audit finding. The procedures worked almost
perfectly, and we have corrected where there was an unusual or clear
violation.

As mentioned earlier about the other college audit reports, many of them
referenced all the good things about the business office or the college like
many years of unqualified audit reports with no recommendations or
findings, and the commitment of the business office to proper business
office practices, policies, and procedures. Several colleges mentioned
items like loss of key positions, change of administrative software, staff
transitions due to retirement, and shortage of staff. All of these things
have happened at J.F. Ingram and yet rather than answer the report in a
more positive tone, our report took on a very personal attack tone. I will
never understand this response because this hurts the college overall and
is definitely not the platform to air grievances.

I have voiced my opposition to this attack to Mr. Larry Williard. I want
to make the right decision and I do not want to hurt the college any more
than already has been done, but I can not allow this attack on my
character and integrity. I have always known and respected your
position as my boss, and still do. However, this response is not fair, nor
just.

## ANSWER TO YOUR DIRECTIVES:

To answer the directives that you gave me, I report the following. I have
and will continue to review the live work process and I ascertain that the
process is workable and clearly understood by all. I will support this
statement by the fact that 5 problem work orders were found out of
1,468. I do not think that major changes are necessary. I will watch the
process though.

I have and will continue to monitor all live work projects to make sure
that procedures are followed. I receive an outstanding work order report
on a monthly basis and I thoroughly review it. I will visit the shops on a
monthly basis and more frequent if there is a need.

I will review all paperwork regarding live work for approval. This was
not the procedure until the audit was finished. I have always wanted to
be the only person to approve the live work since I seem to be the only
person that has to answer for it. In the past, there were projects that
were approved that I was not aware of until after the fact. Everyone

must understand though that by just one person approving, it will slow the process down. This idea is fine with the business office, but all others must understand this.

Strong internal controls are already developed. I, along with my staff, will continue to identify those individuals who try to violate these controls. Anyone found to violate procedures will be reported to you for action.

All employees/customers will be expected to follow the college guidelines. The center directors are aware that I will be expecting a commitment from them to help in this endeavor. My staff has always been committed to the live work process and will continue to be. The live work process is already a success when you look at our percentage of error versus the items processed, but we will continue to monitor it to the best of our ability.

Please contact me if you have any questions and/or concerns.

cc: Dr. Roy Johnson, Chancellor
    Ms. Debbie Dahl, Vice Chancellor



**INGRAM STATE TECHNICAL COLLEGE**

*Ingram*
*State*
*Technical*
*College*

* *Developing Responsible Citizens* *

**MEMORANDUM**

**J. Douglas Chambers**
President

**TO:**      Dean Monica Greene

**FROM:**   J. Douglas Chambers, President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**RE:**      Audit Response (2003-2004)

**DATE:**    September 19, 2005

**Monica J. Greene**
Dean of
Fiscal Affairs

This correspondence is being sent to inform you that that I have completed
the College's response to our recent audit findings for the period covering
the 2003-2004 year.   The findings clearly validated to me that the
College's internal controls governing live work projects are very weak and
must be improved.  After analyzing the findings, I must acknowledge the
fact that we should have done a better job in monitoring and supervising
this important process.

**James B. Wilson**
Dean of Students
and Support Services

By this correspondence, I am directing that you review the live work
process, step by step, and ascertain that the process is workable and clearly
understood by all employees and customers.  You are also directed to
regularly monitor all live work projects to make sure that the College
adheres to all business procedures and guidelines controlled and governed
by your office, the College, Postsecondary and the State of Alabama. You
are also directed to make sure that all paperwork presented to your office
is reviewed and approved by you before any live work project begins.
You are also instructed to develop, for immediate implementation, strong
internal controls that can be utilized by your staff and other employees
working in the monitoring process.

Finally, I strongly encourage you to give the above directives high
priority, and provide me with a written preliminary report on your findings
and recommendations by October 10, 2005. As a minimum, I expect for
you to involve Center Directors, faculty and appropriate Business Office
staff.  It is my belief that if you had enforced a regular check and balance
system on all live work projects, some of the findings, possibly all of
them, could have been avoided.  Please note that this correspondence will
serve as a warning to you.  If you do not develop and implement a

*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-5328*

comprehensive monitoring process that will ensure the success of the College's live work program, disciplinary actions will be forthcoming.

Please contact me if you have questions and/or concerns.

JDC:jw

Rx Date/Time     MAR-08-2006(WED) 11:57      334 242 2888                    P. 056
MAR-08-2006 09:30 FROM: POST SECONDARY ED.  Document 185-7   Filed 00/13/2007  252 Page 26 of 45 256/072



**Ingram State Technical College**

*• Developing Responsible Citizens •*

# INGRAM STATE TECHNICAL COLLEGE

February 6, 2006

**J. Douglas Chambers**
President

**Rickey A. Buffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

MEMORANDUM

TO:        J, Douglas Chambers
           President

FROM:      Monica J. Greene    *Monica*
           Dean of Fiscal Affairs

RE:        My Administrative Personnel Evaluation Form

This correspondence is written to refute the negative items listed in my personnel evaluation and to show the reasons why I did not agree to sign it. I would also like to note that I received the evaluation on October 10, 2005, not the date of July 14, 2005, which is showing on the cover page. Apparently that date is the date that Dr. Merk gave the evaluations to you to complete.

I will address the criticisms in the order that they were presented to me in the evaluation. The first negative remark is that of a weakness in my leadership role as it relates to the business office. I can refute all the items listed below in this evaluation so I would like to know what work issues specifically you are addressing in this statement. This statement is subjective and appears to be personal and unsubstantiated.

You say that I rarely complete assignments. I disagree with this statement and I can show a record of completed assignments. I would like to note the numerous additional assignments given to me for all types of various items. It is my opinion that I am given these numerous additional assignments as an effort on your part to overload me so that I cannot complete these assignments. I can show in any given cabinet meeting the numerous additional assignments that I am given on top of all the required assignments that come with my position.

I disagree with your statement that I am always in the "I was fixing to" stage. Always is also a subjective word that is being used in this context again. I complete numerous tasks immediately. There are other tasks that cannot be fixed immediately. Some tasks require researching facts, making observations or comparisons, and numerous other business office tactics. I take the

necessary steps on the tasks that I am assigned, but I do complete my assignments. I have multiple documents to disprove this statement.

The statement that you made about me not taking help from other administrators is not accurate either. If there is some reason that I need assistance from any other administrator, I will go to them and ask them to assist me on some specific task. Usually, problems that are encountered involve the business office and these problems are fixed by the business office. I have no problem with asking any other individual for help if I need it. Again, this is a subjective statement that is brought up quite frequently by you, in my opinion, to degrade me in front of other administrators. It is degrading because you bring it up so often that it appears that you are trying to humiliate me in front of my peers. A subjective statement does not become true just because you say it is. It needs evidence or proof which you have not provided.

The statement about the financial statements being wrong or not the same and the implications of this remark, I object to also. Certain financial status reports are given to administrators that manage particular program areas. Many times the status reports are not the same as their records because they do not account for purchase order encumbrances, dates of invoice payments, and the like. There are numerous reasons why our numbers may not be consistent with theirs, but it does not mean the financial status reports are wrong. There was not a need for them to send someone from their departments to work with our department. These items that crop up on occasion are fully explainable and are minor. The statement that when I did accept the help, it was a last result is not accurate either. This whole matter really involves the Special Education department. This department could not understand their financial status reports because they were not taking into account all the variables that I mentioned above. The Special Education Director and I agreed that representatives from my department and their department would meet monthly to iron out and explain any differences that might occur. This was not done as a last resort, it was begun when it was determined by my office that it needed to be initiated. Since these meetings have proven to be helpful, my department continues to meet with their department on a monthly basis. Despite what you have written up, I can show you evidence of my working with other areas of the college whenever there is a need.

I strongly object and disagree with the statement that I am weak in providing effective leadership for inventory accountability and live work. I also object that I only review live work projects when I am directed or a problem occurs. These statements are totally inaccurate. I dedicate a large portion of my time to the live work program. I do this because it is a large part of our college business affairs. Live work generates the only additional funds that the college receives. Since J.F. Ingram has the largest live work program in the

state, it is only fitting that I continually strive to perfect it in any way that I can. For these reasons I dedicate the time to the program. There are occasional problems that occur but that is only normal in an operation of this size. The facts are that when you compare the volume of live work to the problems of live work, the problems are only minimal. I have documentation to show the time that I dedicate to live work and I will be glad to provide it to you. I check some portion of live work on a daily basis. I also provide leadership for inventory accountability. My office bears this responsibility and takes it very seriously. Again, in an institution of this size, there are inventory problems that occur but they are corrected by my staff when this happens. I do not know how you can make a blanket statement like this that has no merit. The state auditors have not had a finding regarding any problems with inventory in my 11 years as dean, so someone is providing leadership in this area.

I disagree with the statement that I **never** admit, acknowledge, or accept mistakes or errors that may occur in my department. I also disagree that I blame others and **never** address these matters as being related to the business office. Again, I must remind you that never is a subjective word and is definitely inaccurate in this matter. I will always admit mistakes or problems that are real because I know that we are all human beings and we all make mistakes. Many times you have tried to blame the business office for mistakes or problems that are not related to our office. In fact, you basically try to blame the business office for almost any problem at J.F. Ingram. I have not and I will not stand for this. I do not blame others for business office problems. I do not take the blame for something not the fault of the business office, though. I must take a strong stance on this because you have tried to blame the business office on numerous occasions for almost anything that goes wrong at the college. My office continually strives to put controls in place at the college. I do address a breakdown in control if there is one but I do not consider every problem at the college as a business office problem. Once again, auditors have praised our policies and procedures for many years. This item, in my opinion, is another personal attack on me; one that is not job-related.

I also strongly object to the statement that the internal controls of the business office are vague and ineffective. This is a **very subjective** statement. This appears to be your opinion because I know what I am evaluated by as a Financial Dean and the college meets these standards. We continue to have **unqualified** audit opinions, the required funds that we need as contingency, and a list of positive variables that are required for my office to be effective. This statement is an opinion that can be disproved if necessary. The audit records of this institution refute this statement in themselves, as no institution with weak and vague controls could operate as effectively as we do.

The next part of my evaluation was examples by you where my leadership was missing or ineffective. I can refute all the items below and I will. I will do this in outline form as you did.

1. A Business Office Manual "Draft" was developed quite some time ago- I presented it in the cabinet meeting and I never received approval from you on whether it was approved or not.

2. I have provided these expenses to you on various occasions when you ask for them-I have also informed you that I have monthly reports that I can give you-You have never shown a desire to have these.

3. All vehicles are identified for our insurance records – I informed you of this on several occasions.

4. I did have Mrs. Givens begin soliciting quotes from different insurance carriers, but in the process you informed Mrs. Givens that you were wanting to go with someone that you knew, so there was not any reason to get quotes. It would not be fair to the other carriers to have them spend the time on putting together a proposal and not be chosen.

5. I turned the keys and the keyboard over to Mr. Marty Martin and assigned him this task. I assigned this quite some time ago but there are a tremendous amount of keys at the college and it will take some time to have this completed.

6. I evaluated the pest contract that the college had at the current time because when this situation came up we were having a termite problem. The current contract that the college had did not cover the termite problem. At that time, I called 3 companies- Cook's Pest Control, Orkin, and Terminix. I informed you verbally on the quotes from each company. After discussion with the appropriate personnel, which included you, the college decided to go with Cook's Pest Control for the pest services. A purchase order was issued by the college to Cook's on 4/19/05. I kept you informed of this throughout the decision making process. I also presented it in a cabinet meeting and informed all in attendance.

7. The college only had one driver at the time that was considered high risk. I verbally informed you of this in a cabinet meeting and in your office on more than one occasion.

8. A new purchasing procedure was implemented on May 3, 2004. The memorandum announcing this change was distributed to all employees at our Spring Inservice Meeting on April 26, 2004. I went over the procedure step by step in this meeting.

9. The procedure of receipting of small work projects only applies to the
   Barbering, Cosmetology, and Horticulture programs. A memorandum
   was sent out regarding the receipting of the barbering program on
   March 11, 2004. The Cosmetology program was already receipting
   theirs this way. The Horticulture program had been doing their
   receipting this way for quite some time. These are the only shops
   where this is feasible. This project was completed.

10. My staff does not take any information home that cannot be replaced.
    On occasion I have allowed them to take reports home to check on
    their own personal time. I see it as dedication, you see it as something
    wrong with me. I did stop them from doing this though since you had
    a problem with it.

11. My office and I are constantly talking to other colleges regarding all
    types of forms and procedures if we have questions. I can supply the
    phone logs if necessary.

12. My office and I have contacted many colleges regarding work order
    procedures. I have the phone logs to verify this also. At the present
    time we are converting to a new system so we have been in constant
    contact with others.

13. The time period for travel checks has been changed on more than one
    occasion.

14. The new purchasing procedure implemented on May 3, 2004 covered
    this.

15. I do regularly monitor live work projects. Some items I look at daily
    and some items I monitor on a monthly basis. This includes all three
    campuses. I can supply documentation on this.

16. I implemented this by memorandum with the Dean of the College back
    in July 23, 2002. Any items on campus have an approved work order.

17. I have provided this on more than one occasion. I can supply
    documentation on this.

18. My staff is fully cross-trained. We consistently make an effort to do
    this and always have. We have staff minutes that can support this.

Mr. Chambers, this evaluation appears to be a personal, unwarranted, and
inaccurate attack. The choice of words that you used, such as, "you

always"and **"you never"**can be verified by any type of evaluator as personal attack words. I want it noted that I fully object to its contents and stand ready to defend any item in my response. This evaluation, the first negative one I have received in 16 years at this institution, is the most blatant and bold attempt yet to undermine my career. If there was <u>any</u> reason for this evaluation to be so negative, or for that matter, any reason for you creating this hostile work environment for me, I would understand. But, I have been an effective, leader and manager (though not perfect) for my department. I believe this evaluation to be in conflict with the evidence compiled in my record after almost 20 years of service in the Alabama College System. It stands alone as the only formal attack on my good name and I am disappointed that you have chosen to pursue this course.

cc: Personnel File



*Ingram*
*State*
*Technical*
*College*

• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

## INGRAM STATE TECHNICAL COLLEGE

April 23, 2004

## MEMORANDUM

**TO:**       All Employees

**FROM:**   Monica J. Greene        *Monica*
            Dean of Fiscal Affairs

**RE:**       Purchasing Procedures

This correspondence is written to inform you of the revised purchasing procedures that will be implemented at the college beginning on May 3, 2004. I have attached the guidelines for the purchasing process to this memorandum. Thank you for your immediate attention to this matter. Please contact me if you have any questions.

## REVISED PURCHASING GUIDELINES EFFECTIVE MAY 3, 2004

(1) A purchase requisition (PR) – Request for purchase order is required on all purchases except for maintenance contracts, utilities, travel, and professional services.

(2) The purchase requisition (PR) originates from the employee and must be approved by appropriate dean or supervisor. The requesting employee is responsible for providing full details in order to procure. Appropriate dean responsible for ensuring monies available in budget and providing expenditure account information.

(3) Purchase requisition (PR) submitted to Dean of Fiscal Affairs for approval.

(4) Dean of Fiscal Affairs forwards purchase requisition to President for approval. President forwards to accounting after signing.

(5) Purchase order executed and printed. The revised purchase order forms will be 3-part colored forms. Distribution of the forms will be as follows:

| | |
|---|---|
| Original (White) Copy | Vendor |
| Yellow Copy | Requestor (upon receipt of merchandise or service, this copy is to be returned to accounts payable marked complete and signed. It is your responsibility to verify that items shipped are the same item and quantity that were ordered. |
| Pink Copy | File (Accounts Payable) |

As you can see from the above guidelines, the majority of the guidelines are no different than our current process. The main difference of the revised process is that the fiscal office will be mailing copies of all the purchase orders to the vendors for processing. All requests for materials (other than items for resale) will be ordered by the fiscal office. You will be able to order your resale items the same as you have been ordering but the vendor will be receiving a "confirming copy" by mail. We will have everything shipped to central receiving and the items will be transported to you. The requestor is to check the "material receipt" packing slip for accuracy, sign receipt, and promptly return to accounts payable.

These revisions are part of an ongoing effort to improve the fiscal
procedures at the college so that we can provide you with efficient
services. The requestor will be notified if the purchase requisition is
disapproved. You will receive the request back with a note detailing the
reason. The absence of this will mean that the request is in the approval
process. We ask that you do not call to inquire about the status of the
order before 5 days. Most requests will be handled immediately but the
process could be slowed temporarily due to the absence of one or more of
the approving authorities. The process will resume when all parties are
present.

There will be exceptions on occasion for "emergency purchases" that will
be expedited immediately. The vendor will be mailed a "confirming
copy" of the purchase order .

Mrs. Jeanna Givens will be tasked with printing the purchase orders and
Miss Kerri Conger will assist her with the mailing of the orders. Other
fiscal department staff will assist in any step of the process if the need
arises.

The fiscal department "thanks you" in advance for your cooperation in
this revised process. There is always a learning process in any type of
change and we look forward to working together with you on this matter.
This revised process will make the college more accountable and this is
always the ultimate goal in all that we do.



*Ingram*
*State*
*Technical*
*College*

**ISTC**
• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

March 11, 2004

## MEMORANDUM

**TO:**     Jo Ann Currie
Bobby Luster
Barbering Instructors

**FROM:**     Monica J. Greene   *Monica*
Dean of Fiscal Affairs

This correspondence is written to inform you of the procedure that will be used for live-work services in the Barbering programs at Main Campus and the Draper-Staton Campus. This procedure will be effective beginning Monday, March 15, 2004.

Each Barbering program will be given a pre-numbered duplicating receipt book to use for all live work transactions. These receipt books will be signed out to your shop by Miss Kerri Conger. You are to write a receipt for any service that your shop provides to a customer. These receipts along with the cash collected for these services are to be turned into the Fiscal division representative for your campus at the end of each day. The receipts for the Barbering program at the Draper-Staton campus will be turned into Mrs. Gloria Knox. The receipts at the Main Campus are to be turned into Miss Kerri Conger.

These procedures are part of a continuing effort from the Fiscal division to make the college more accountable. Thank you for your immediate attention to this matter. Please feel free to call me if you have any questions.

cc:     J. Douglas Chambers, President
Rickey Huffstutler, Dean of the College
Kerri Conger
Gloria Knox
Julie Givens

*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-2521*



## INGRAM STATE TECHNICAL COLLEGE

July 23, 2002

MEMORANDUM

Douglas Chambers
President

A. Huffstutler, Ph.D
Dean of the College

Monica J. Greene
Dean of
Fiscal Affairs

Gwen E. Wilson
Dean of Students
Support Services

TO:              All Employees

FROM:            Rickey Huffstutler
                 Dean of the College

                 Monica J. Greene
                 Dean of Fiscal Affairs   Monica

RE:              Personal items on campus

This correspondence will serve as a reminder to the directive that
you were given on June 19, 2001, regarding personal items that
you may have on school property. All personal items must be
removed immediately unless there is an active work order on file
with the business office. The work order should be current and the
business office will be verifying all work orders to check this. All
work orders should have the appropriate paperwork to support
them, as well as, paid deposits, if applicable. As most of you
know, the college has been selling and transferring surplus
equipment in an effort to clean up our campuses and to be in
compliance with all applicable policies. As this process continues,
it will be very important that you exercise caution when bringing
personal items in for work orders and follow all guidelines that the
business office has established. Thank you for your attention to
this important matter.

P.O. Box 220350  •  Deatsville, Alabama 36022
Phone: 334-285-5177  •  Fax: 334-285-5328



### Administrative Personnel Evaluation Form
### J.F. Ingram State Technical College

**Date: July 14, 2005**

Employee: Monica Greene            Position/ Title:

*The following items should be rated "as is" or "with comment" by the evaluator. Comments may be either positive or negative as needed. Employees may also request a "with comment" rating in order to make their own comments about specific items on this evaluation.*

| Meets standard As is | With Comment | |
|---|---|---|
| (✓) | ( ) | 1. Encourages good morale and instills a desire to achieve. |
| ( ) | (✓) | 2. Provides effective leadership in areas of primary responsibility. |
| (✓) | ( ) | 3. Does not create problems by using excessive amounts of leave. Does not habitually arrive late or leave early. |
| ( ) | (✓) | 4. Works effectively with employees at all levels to achieve common goals. |
| ( ) | (✓) | 5. Maintains appropriate balance between professional role and personal relationships with employees. |
| ( ) | (✓) | 6. Communicates effectively in oral and written form. |
| ( ) | (✓) | 7. Develops and maintains appropriate and efficient working relationships with other administrators. |
| ( ) | (✓) | 8. Cooperates with supervisor, accepts directions, and receives assignments willingly. |
| ( ) | (✓) | 9. Is sensitive to problems or changes within the workplace and responds appropriately. |
| ( ) | (✓) | 10. Makes an effort to be a "team player" and works effectively as a member of the College's administrative team. |
| (✓) | ( ) | 11. Participates in appropriate professional development activities. |

Employee: _____

Position/Title: _____

Date: _____

Employee displays good morale while on the job. She displays an honest and respectful attitude when working with other employees. Although the employee presents herself in a positive and professional manner, the majority of her work tends to show a weakness in her specific leadership roles as they relate to overseeing and administrating the affairs of the Business Office. Employee never refuses to do an assignment, but she rarely completes them. When she is asked about the status of an assignment or directive, she is always in the "I was fix in to" stage. Although the employee is regularly offered assistance by the Administrative staff, she seldom involves anyone at that level to help her. On more that one occasion, administrators informed her that their financial statements were wrong, or not the same as the Business Office. They offered their personal assistance, as well as their employees, to temporarily work with her staff. When she did accept the offers, it was only as a last result. The employee is weak in providing effective leadership governing inventory accountability and live work operations. The procedures she uses for monitoring live work projects are only reviewed when directed by the President, or when a problem occurs. The employee never acknowledges, admits, or accepts responsibility for incorrect actions or mistakes that occurs in the Business Office. She tends to blame other employees for problems related to her area, and never addresses whether she, being the Dean, should have had controls in place to avoid possible breakdowns, confusion or conflicts related to financial matters. The internal controls of the Business Office are vague and ineffective. Some other examples or areas of the College where her leadership is needed, but is either missing or ineffective are:

The President directed the Employee to:

1. Develop a "How to use the Business Office manual or brochure". She didn't do it.
2. Provide the President with a monthly expense on all regular expenses of the College. She didn't do it.
3. To identify all vehicles and the conditions of each. She didn't do it.
4. To compare insurance companies for the best rates. She didn't do it.
5. To design a key board for all buildings and vehicles. She didn't do it.
6. To evaluate the pest contract and identify product and usages. She didn't do it.
7. Provide a report on all college employees who are classified as high risk drivers by the insurance company. She didn't do it.
8. Implement new purchasing procedures. Status unclear.
9. Review procedures to use receipts for small work projects, instead of using large amounts of paperwork. She didn't do it.
10. Stop allowing her staff to carry Business Office documents home. She didn't do it.
11. Compare J F I Business Office forms and guidelines to other ACS. She didn't do it.
12. Compare J F I work order procedures with other ACS. She didn't do it.

13. Reactivate or change the reimbursement time period for travel payment. She didn't do it.
14. Design a better procedure for purchasing and receiving. She didn't do.
15. Regularly monitor live work projects. She didn't do it.
16. Implement a time line for all personal items without proper paperwork, to be removed from campus. She didn't do it.
17. Report on the payment status on all accounts with vendors. She didn't do it.
18. Provide cross training for her staff. Status pending.

In order for the Business Office to function as it should, the Dean must make an effort to improve in her leadership and management style. She must refrain from worrying about whether she will be liked or accepted by the people who continues to violate policies, and spend more time on making sure that College policies are followed by customers and employees at all times. She must seek ways to improve in her oral communication. She must also acknowledge that she has weaknesses, and that recognizing them is the first step toward improvement. The President will continue to expect for the employee to improve and provide effective and acceptable leadership in her role as Dean of fiscal Affairs. If it is determined by the Dean and/ or the President that corrective measures cannot be immediately identified, developed, and implemented, the President will take appropriate action as needed.



Ingram
State
Technical
College
• Developing Responsible Citizens •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

### MEMORANDUM

**TO:**    Dean Monica Greene

**FROM:**    J. Douglas Chambers, President

*J. Douglas Chambers*

**RE:**    Correspondence of January 23, 2006

**DATE:**    January 25, 2006

Please be advised that effective immediately, I am directing that all future communications between the two of us be in the form of a written document. It has become clear to me that my meetings and discussions with you have been misinterpreted, unclear, confusing, or intentionally translated for reasons unknown to me.

I regret that our efforts have failed. I hope that this procedure will help both of us to have a better understanding of what was said, and how it was said.

JDC:jw

*P.O. Box 220350 • Deatsville, Alabama 36022*

*Phone: 334-285-5177 • Fax: 334-285-5328*

# INGRAM STATE TECHNICAL COLLEGE

*Ingram*
*State*
*Technical*
*College*
**ISTC**
* Developing Responsible Citizens *

**J. Douglas Chambers**
President

January 25, 2006

Dr. Roy W. Johnson, Chancellor
Alabama Dept. of Postsecondary Education
Post Office Box 302130
Montgomery, Alabama 36130-4330

**Rickey A. Huffstutler, Ph.D**
Dean of the College

Dear Dr. Johnson,

This correspondence is being sent to request a meeting as soon as possible
with you, Dean Monica Greene, and me to discuss what I consider a very
serious problem at the college. It has become very clear to me that all of
my efforts to bring about a positive resolution, without creating a negative
working atmosphere, have failed. It is imperative that we have this
meeting as soon as possible.

**Monica J. Greene**
Dean of
Fiscal Affairs

Thank you.

Sincerely,

**James E. Wilson**
Dean of Students
and Support Services

J. Douglas Chambers
President

JDC:jw

cc:    Dean Monica Greene

Dean Huffstutler
Dean Greene
November 19, 2002
Page 2


Although, I have made hundreds of suggestions and recommendations, I am
still available to assist you in resolving this most serious matter.

JDC/dlm

cc:   Dean Wilson
      Dr. Merk
      Kay Perryman
      Gene Bridgman