# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **JULIE GIVENS and** | ) | |
| **MONICA GREENE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CV 2:06 CV852-1D** |
| | ) | |
| **DOUGLAS CHAMBERS,** | ) | |
| **Individually and in his capacity** | ) | |
| **As President of INGRAM STATE** | ) | |
| **TECHNICAL COLLEGE; JAMES** | ) | |
| **WILSON, Individually and in his** | ) | |
| **Capacity as Dean of Students of** | ) | |
| **INGRAM STATE TECHNICAL** | ) | |
| **COLLEGE** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MOTION FOR SUMMARY JUDGMENT

ATTACHMENTS TO PREVIOUSLY FILED MOTION FOR SUMMARY JUDGMENT

Report on the

# J. F. Ingram State
# Technical College

Deatsville, Alabama

October 1, 2003 through September 30, 2004

Filed: September 23, 2005



# Department of
# Examiners of Public Accounts

50 North Ripley Street, Room 3201
P.O. Box 302251
Montgomery, Alabama 36130-2251
Website: www.examiners.state.al.us

*Ronald L. Jones, Chief Examiner*

05-431

**DEFENDANT'S
EXHIBIT**

*14- Greene*

# *Table of Contents*

|  |  | Page |
|---|---|---|
| **Report to the Chief Examiner** |  | A |
| **Independent Auditor's Report** |  | E |
| **Management's Discussion and Analysis** |  | G |
| Exhibit #1 | Statement of Net Assets | 1 |
| Exhibit #2 | Statement of Revenues, Expenses and Changes in Net Assets | 3 |
| Exhibit #3 | Statement of Cash Flows | 4 |
| **Notes to the Financial Statements** |  | 6 |
| **Supplementary Information** |  | 17 |
| Exhibit #4 | Schedule of Expenditures of Federal Awards | 18 |
| **Notes to the Schedule of Expenditures of Federal Awards** |  | 20 |
| **Additional Information** |  | 21 |
| Exhibit #5 | College Officials | 22 |
| Exhibit #6 | Report on Internal Control Over Financial Reporting and on Compliance and Other Matters Based on an Audit of Financial Statements Performed in Accordance With *Government Auditing Standards* | 23 |
| Exhibit #7 | Report on Compliance With Requirements Applicable to Each Major Program and Internal Control Over Compliance in Accordance With OMB Circular A-133 | 25 |
| Exhibit #8 | Schedule of Findings and Questioned Costs | 27 |
| Exhibit #9 | Auditee Response | 29 |



**State of Alabama**
Department of
# Examiners of Public Accounts
P.O. Box 302251, Montgomery, AL 36130-2251
50 North Ripley Street, Room 3201
Montgomery, Alabama 36104-3833
Telephone (334) 242-9200
FAX (334) 242-1775

Ronald L. Jones
*Chief Examiner*

Honorable Ronald L. Jones
Chief Examiner of Public Accounts
Montgomery, Alabama 36130

Dear Sir:

Under the authority of the *Code of Alabama 1975*, Section 41-5-14, we submit this report on J. F. Ingram State Technical College for the period October 1, 2003 through September 30, 2004.

## SCOPE AND OBJECTIVES

This report encompasses an audit of the financial statements of J. F. Ingram State Technical College (the "College") and a review of compliance by the College with applicable laws and regulations of the State of Alabama and federal financial assistance programs. The audit was conducted in accordance with government auditing standards generally accepted in the United States of America for financial audits. The objectives of the audit were to determine whether the financial statements present fairly the financial position and results of financial operations and whether the College has complied with applicable laws and regulations.

## CONTENTS OF REPORT

This report includes the following segments:

1. *Report to the Chief Examiner* – contains items pertaining to state legal compliance, agency operations and other matters.

2. *Independent Auditor's Report* – reports on whether the financial information constitutes a fair presentation of the financial position and results of financial operations.

3. *Management's Discussion and Analysis (MD&A)* – a component of Required Supplementary Information (RSI) prepared by the management of the College introducing the basic financial statements and providing an analytical overview of the College's financial activities for the year. This information is supplementary information required by the Governmental Accounting Standards Board (GASB). This information has not been audited, and as a result, no opinion is provided about the fairness of the information in accordance with generally accepted accounting principles.

4. *Financial Statements* – includes basic financial statements (Exhibits 1 through 3) and Notes to the Financial Statements.

5. *Supplementary Information* – includes the Schedule of Expenditures of Federal Awards (Exhibit 4), which details federal awards expended during the audit period, and Notes to the Schedule of Expenditures of Federal Awards.

6. *Additional Information* – contains basic information related to the College (Exhibit 5) and the following reports and items required by generally accepted government auditing standards and/or U. S. Office of Management and Budget (OMB) Circular A-133 for federal compliance audits:

*Report on Internal Control Over Financial Reporting and on Compliance and Other Matters Based on an Audit of Financial Statements Performed in Accordance With Government Auditing Standards* (Exhibit 6) – a report on internal control related to the financial statements and on whether the College has complied with laws and regulations which could have a direct and material effect on the College's financial statements.

*Report on Compliance With Requirements Applicable to Each Major Program and Internal Control Over Compliance in Accordance With OMB Circular A-133* (Exhibit 7) – a report on internal control over compliance with requirements of laws, regulations, contracts and grants applicable to major federal programs and an opinion on whether the College complied with laws, regulations, and the provisions of contracts or grant agreements which could have a direct and material effect on each major program.

*Schedule of Findings and Questioned Costs* (Exhibit 8) – a report summarizing the results of the audit findings relating to the financial statements as required by *Government Auditing Standards* and findings and questioned costs for federal awards as required by OMB Circular A-133.

*Auditee Response* (Exhibit 9) – a response by the College on the results of the audit.

## *AUDIT COMMENTS*

J. F. Ingram State Technical College serves the citizens of Alabama by offering accessible, responsive, and quality postsecondary career and technical education to incarcerated adults and eligible parolees under the charge of the Alabama Board of Pardons and Paroles, helping them to successfully return to their families and communities.

## *AUDIT FINDING*

As part of the course work, students at the College participate in live work projects. The State Board of Education policies relating to live work states that the person, program, institution, or organization for which work is done shall:

- ✓ Assume all responsibility for the results of the work being done by the students;
- ✓ bear all actual cost of materials and parts involved;
- ✓ pay a service charge as established by the President to cover indirect expenses;
- ✓ define the scope and extent of each project before acceptance.

Additional College policies relating to live work include the following:

Instructors prepare a contact form and estimate for all proposed live work projects. The estimate sheet is signed by the customer and discloses the College's policies and disclaimers to the customer. These forms are a prerequisite to the issuance of a pre-numbered work order. The College requires a 75% deposit for all work estimated to be in excess of $50.00. Work on a project is not to begin until a work order is issued and all applicable deposits are received.

A comparison of live work revenue and costs was done for the instructional departments. The comparison indicated that costs exceeded revenues in the furniture refinishing department by $18,864.98. Also, a review of work in process on June 21, 2005, revealed that deposits had not been collected on 4 live work projects that were in process. In another instance, the Dean of the College delivered a tractor to the diesel shop. The Dean went on vacation on May 31 and returned to work on July 12. The work order for the tractor was dated June 21, 2005.

## *RECOMMENDATION*

The College should adhere to all State Board of Education and College policies relating to live work.

Sworn to and subscribed before me this
the 8ᵗʰ day of _August_ , 20 05 .

_Cheryl S McAllister_
Notary Public

Sworn to and subscribed before me this
the 8ᵗʰ day of _August_ , 2005 .

_Cheryl S. McAllister_
Notary Public

rb

Respectfully submitted,

Hal D. Bradsher
Examiner of Public Accounts

Tanesha Y. Lewis
Examiner of Public Accounts

05-431                    D

## _Independent Auditor's Report_

We have audited the accompanying basic financial statements of J. F. Ingram State Technical College, as of and for the year ended September 30, 2004, as listed in the table of contents as Exhibits 1 through 3. These basic financial statements are the responsibility of J. F. Ingram State Technical College's management. Our responsibility is to express an opinion on these basic financial statements based on our audit.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America and the standards applicable to financial audits contained in _Government Auditing Standards_, issued by the Comptroller General of the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the basic financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the basic financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall basic financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the basic financial statements referred to above present fairly, in all material respects, the financial position of J. F. Ingram State Technical College, as of September 30, 2004, and its changes in financial position, including cash flows, for the year then ended in conformity with accounting principles generally accepted in the United States of America.

In accordance with _Government Auditing Standards_, we have also issued our report dated July 1, 2005 on our consideration of J. F. Ingram State Technical College's internal control over financial reporting and our tests of its compliance with certain provisions of laws, regulations, contracts and grant agreements and other matters. The purpose of that report is to describe the scope of our testing of internal control over financial reporting and compliance and the results of that testing, and not to provide an opinion on the internal control over financial reporting or on compliance. That report is an integral part of an audit performed in accordance with _Government Auditing Standards_ and should be considered in assessing the results of our audit.

The accompanying Management's Discussion and Analysis (MD&A) is not a required part of the basic financial statements but is supplementary information required by the Governmental Accounting Standards Board. We have applied certain limited procedures, which consisted principally of inquiries of management regarding the methods of measurement and presentation of the supplementary information. However, we did not audit the information and express no opinion on it.

05-431                                    E

Our audit was conducted for the purpose of forming an opinion on the basic financial statements of J. F. Ingram State Technical College, taken as a whole. The accompanying Schedule of Expenditures of Federal Awards (Exhibit 4) is presented for purposes of additional analysis as required by U. S. Office of Management and Budget Circular A-133, *Audits of States, Local Governments, and Non-Profit Organizations*, and is not a required part of the basic financial statements. Such information has been subjected to the auditing procedures applied in the audit of the basic financial statements and, in our opinion, is fairly stated, in all material respects, in relation to the financial statements taken as a whole.

Ronald L. Jones
Chief Examiner
Department of Examiners of Public Accounts

July 1, 2005

05-431                                    F

# *Management's Discussion and Analysis*
## *(Required Supplementary Information)*

# J. F. INGRAM STATE TECHNICAL COLLEGE

## Management's Discussion and Analysis

## Fiscal Year 2003-2004

### Overview of the Financial Statements and Financial Analysis

J. F. Ingram State Technical College is proud to present its financial statements for fiscal year 2003-2004. The emphasis of discussions about these statements will be on current year data. There are three financial statements presented: the Statement of Net Assets; the Statement of Revenues, Expenses, and Changes in Net Assets; and, the Statement of Cash Flows.

This discussion and analysis of the College's financial statements provides an overview of its financial activities for the year and comparative amounts for the prior year.

### Statement of Net Assets

The Statement of Net Assets presents the assets, liabilities, and net assets of the College as of the end of the fiscal year. The Statement of Net Assets is a point of time financial statement. The purpose of the Statement of Net Assets is to present to the readers of the financial statements a fiscal snapshot of J. F. Ingram State Technical College. The Statement of Net Assets presents end-of-year data concerning Assets (current and non-current, Liabilities (current and non-current), and Net Assets (assets minus liabilities). The difference between current and non-current assets will be discussed in the financial statement disclosures.

From the data presented, readers of the Statement of Net Assets are able to determine the assets available to continue the operations of the College. They are also able to determine how much the College owes vendors, investors and lending institutions. Finally, the Statement of Net Assets provides a picture of the Net Assets and their availability for expenditure by the College.

Net assets are divided into three major categories. The first category, invested in capital assets, net of debt, provides the College's equity in property, plant, and equipment owned by the College. The next asset category is restricted net assets, which is divided into two categories, expendable and nonexpendable. Expendable restricted net assets are available for expenditure by the College but must be spent for purposes as determined by donors and/or external entities that have placed time or purpose restrictions on the use of the assets. The corpus of nonexpendable restricted resources is only available for investment purposes. The final category is unrestricted net assets. Unrestricted assets are available to the College for any appropriate purpose of the College.

H

### Statement of Net Assets

|  | 2003-2004 | 2002-2003 |
|---|---|---|
| **Assets:** | | |
| Current Assets | $3,605,000.58 | $3,718,414.09 |
| Capital Assets, net | 4,673,510.62 | 4,568,946.71 |
| **Total Assets** | 8,278,511.20 | 8,287,360.80 |
| **Liabilities** | | |
| Current Liabilities | 289,750.69 | 189,513.80 |
| Non-current Liabilities | 289,141.14 | 260,368.72 |
| **Total Liabilities** | 578,891.83 | 449,882.52 |
| **Net Assets** | | |
| Invested in Capital Assets, net of debt | 4,673,510.62 | 4,568,946.71 |
| Unrestricted | 3,026,108.75 | 3,268,531.57 |
| **Total Net Assets** | **$7,699,619.37** | **$7,837,478.28** |

The total assets of the College decreased by $8,849.60 which was mainly due to equipment purchases and construction in progress expenditures incurred in roofing projects. The consumption of assets follows the institutional philosophy to use available resources to acquire and improve all areas of the College to better serve the instruction and public service missions of the College.

The total liabilities for the year increased by $129,009.31. The primary cause for the change in total liabilities was due to an increase in liabilities to subrecipients. The combination of the decrease in total assets of $8,849.60 and the increase in total liabilities of $129,009.31 yields a decrease in total net assets of $137,858.91.

Assets less liabilities result in net assets of $7,699,619.37 Capital assets represent $4,673,510.62 of these net assets.

### Statement of Revenues, Expenses and Changes in Net Assets

Changes in total net assets as presented on the Statement of Net Assets are based on the activity presented in the Statement of Revenues, Expenses, and Changes in Net Assets. The purpose of the statement is to present the revenues received by the College, both operating and non-operating, and the expenses paid by the College, operating and non-operating, and any other revenues, expenses, gains and losses received or spent by the College.

I

Generally speaking operating revenues are received for providing goods and services to the various customers and constituencies of the College. Operating expenses are those expenses paid to acquire or produce the goods and services provided in return for the operating revenues, and to carry out the mission of the College. Non-operating revenues are revenues received for which goods and services are not provided. For example, state appropriations are non-operating because they are provided by the Legislature to the College without the Legislature directly receiving commensurate goods and services for those revenues.

### Statement of Revenues, Expenses, and Changes in Net Assets

|  | 2003-2004 | 2002-2003 |
|---|---|---|
| Operating Revenues | $ 5,616,530.35 | $ 4,632,308.61 |
| Operating Expenses | 11,841,472.54 | 10,371,962.67 |
| Operating Loss | (6,224,942.19) | (5,739,654.06) |
| Non-operating Revenues And Expenses | 5,929,256.16 | 6,026,097.01 |
| Income (Loss) Before Other Revenues, Expenses, Gains or Losses | (295,686.03) | 286,442.95 |
| Other Revenues, Expenses, Gains or Losses | 157,827.12 | 1,093,021.49 |
| Increase/(Decrease) in Net Assets | (137,858.91) | 1,379,464.44 |
| Net Assets Beginning of Year As Restated | 7,837,478.28 | 6,458,013.84 |
| Net Assets End of Year | $ 7,699,619.37 | $ 7,837,478.28 |

The Statement of Revenues, Expenses, and Changes in Net Assets reflects a decrease in the net assets at the end of the year. Some highlights of the information presented on the Statement of Revenues, Expenses, and Changes in Net Assets are the following:



The above chart displays in thousands of dollars, the operating revenues by type and their relationship with one another. State and local contracts and grants represent the largest type of revenue followed closely by federal grants and contracts. All other revenue sources represent only 6% of the total operating revenue.

The reason for the tuition revenue being such a small percentage is because all of our students are incarcerated and receive a tuition and fees waiver to cover charges associated with obtaining a certificate or diploma in their course of study. The tuition and fees revenue reported net of scholarship allowance is revenue that we receive from students who are taking a second course of study.

K

The operating expenses by function stated in thousands are displayed in the following exhibit:



The overall expenses in the functional areas of the College increased fourteen percent from the total reported last year. Increases in instructional, student services and institutional support expenditures accounted for the majority of the overall change in operating expenditures from the previous fiscal year. Additional personnel were hired to support and carryout not only the College's mission to its students but also to accomplish federal and state grant program objectives.

The other areas of expenditures showed only slight increases due to increase in costs from last year to this year but no major program changes.

**Statement of Cash Flows**

The final statement presented by J. F. Ingram State Technical College is the Statement of Cash Flows. The Statement of Cash Flows presents detailed information about the cash activity of the College during the year. The statement is divided into five parts. The first part deals with operating cash flows and shows the net cash used by the operating activities of the College. The second section reflects cash flows from non-capital financing activities. This section reflects the cash received and spent for non-operating, non-investing, and non-capital financing purposes. The third section deals with cash flows from capital and related financing activities. This section deals with the cash used for the acquisition and construction of capital and related items. The fourth section reflects the cash flows from investing activities and shows the purchases, proceeds, and interest received from investing activities. The fifth section reconciles the net cash used to the operating income or loss reflected on the Statement of Revenues, Expenses, and Changes in Net Assets.

L

## Statement of Cash Flows for the Year ended September 30,

|  | 2004 | 2003 |
|---|---|---|
| **Cash Provided (used) by:** | | |
| Operating Activities | $(6,473,749.30) | $(5,497,667.47) |
| Non-capital Financing Activities | 6,104,023.61 | 5,968,041.00 |
| Capital and Related Financing Activities | (466,249.81) | (454,051.67) |
| Investing Activities | 44,400.60 | 58,056.01 |
| Net Change in Cash | $ (791,574.90) | $ 74,377.87 |
| **Cash, Beginning of Year** | 2,929,796.93 | 2,855,419.06 |
| **Cash, End of Year** | $ 2,138,222.03 | $ 2,929,796.93 |

The primary cash receipts from operating activities consist of grants and contracts. Cash outlays include payment of wages, benefits, vendor services and products, supplies, utilities and purchases of capital assets.

State appropriations are our primary source of non-operating revenues. This source of revenue is categorized as non-operating even though the College's budget depends on this funding to continue the current level of operations.

## Economic Outlook

The College is not aware of any currently known facts, decisions, or conditions that are expected to have a significant effect on the financial position or results of operations of the upcoming fiscal period beyond those unknown variations having a global effect on virtually all types of business operations.

The College's overall financial position is strong. The projected level of financial support from the State of Alabama and federal and state grantor agencies for the upcoming fiscal year will enable us to meet the needs of our student population. The College will continue to monitor resources so that we will be able to react to unknown internal and external issues.

M

## *Statement of Net Assets*
## *September 30, 2004*

ASSETS
**Current Assets**
Cash and Cash Equivalents                                    $      2,138,222.03
Accounts Receivable, Net                                            1,289,269.85
Inventories                                                           177,508.70
   Total Current Assets                                  3,605,000.58

**Noncurrent Assets**
Capital Assets:
Land                                                                  10,000.00
Improvements Other Than Buildings                                    233,505.94
Buildings                                                           5,543,481.40
Equipment and Furniture                                            2,121,789.99
Library Holdings                                                      114,988.89
Construction in Progress                                              14,564.12
Less: Accumulated Depreciation                                    (3,364,819.72)
   Total Capital Assets, Net of Depreciation             4,673,510.62

  Total Noncurrent Assets                                     4,673,510.62

  Total Assets                                          $      8,278,511.20

The accompanying Notes to the Financial Statements are an integral part of this statement.

J. F. Ingram State Technical College
Deatsville, Alabama                           1                        Exhibit #1

## LIABILITIES
### Current Liabilities
| | | |
|---|---|---:|
| Accounts Payable | $ | 131,251.52 |
| Accrued Liabilities | | 94,334.52 |
| Compensated Absences | | 40,740.07 |
| Deposits | | 23,424.58 |
| Total Current Liabilities | | 289,750.69 |

### Noncurrent Liabilities
| | |
|---|---:|
| Compensated Absences | 289,141.14 |
| Total Noncurrent Liabilities | 289,141.14 |
| | |
| Total Liabilities | 578,891.83 |

## NET ASSETS
| | | |
|---|---|---:|
| Invested in Capital Assets, Net of Related Debt | | 4,673,510.62 |
| Unrestricted | | 3,026,108.75 |
| | | |
| Total Net Assets | $ | 7,699,619.37 |

*This Page Intentionally Blank*

## *Statement of Revenues, Expenses and Changes in Net Assets*
## *For the Year Ended September 30, 2004*

**OPERATING REVENUES**

| | | |
|---|---|---:|
| Student Tuition and Fees (Net of Scholarship Allowances of $1,436,244 00) | $ | 36,262.00 |
| Federal Grants and Contracts | | 2,463,721.58 |
| State and Local Grants and Contracts | | 2,839,907.03 |
| Sales and Services of Educational Departments | | 268,346.02 |
| Other Operating Revenues | | 8,293.72 |
| Total Operating Revenues | | 5,616,530.35 |

**OPERATING EXPENSES**

| | |
|---|---:|
| Instruction | 5,274,047.36 |
| Institutional Support | 1,693,357.70 |
| Academic Support | 272,453.53 |
| Student Services | 3,604,773.67 |
| Operation and Maintenance | 694,890.70 |
| Depreciation | 301,949.58 |
| Total Operating Expenses | 11,841,472.54 |
| Operating Income (Loss) | (6,224,942.19) |

**NONOPERATING REVENUES (EXPENSES)**

| | | |
|---|---|---:|
| State Appropriations | | 6,102,419 00 |
| Sale of Property | | 47,125.76 |
| Realized Loss | | (264,689.20) |
| Investment Income | | 44,400.60 |
| Net Nonoperating Revenues | | 5,929,256.16 |
| Loss Before Other Revenues, Expenses, Gains, or Losses | | (295,686.03) |
| Capital Appropriations | | 157,827.12 |
| Changes in Net Assets | | (137,858.91) |
| Total Net Assets - Beginning of Year, as Restated (See Note 12) | | 7,837,478.28 |
| Total Net Assets - End of Year | $ | 7,699,619.37 |

The accompanying Notes to the Financial Statements are an integral part of this statement.

J. F. Ingram State Technical College
Deatsville, Alabama                                     3                                     Exhibit #2

*Statement of Cash Flows*
*For the Year Ended September 30, 2004*

| | |
|---|---:|
| **CASH FLOWS FROM OPERATING ACTIVITIES** | $        31,590.00 |
| Tuition and Fees | 4,692,209.57 |
| Grants and Contracts | 268,197.88 |
| Sales and Services of Educational Departments | 8,293.72 |
| Other Operating Revenues | (6,920,906.60) |
| Payments to Employees | (1,796,681.57) |
| Payments for Benefits | (2,756,452.30) |
| Payments to Suppliers | (6,473,749.30) |
| Net Cash Provided (Used) by Operating Activities | |
| **CASH FLOWS FROM NONCAPITAL FINANCING ACTIVITIES** | |
| State Appropriations | 6,102,419.00 |
| Deposits Held for Others | 1,604.61 |
| Net Cash Provided (Used) by Noncapital Financing Activities | 6,104,023.61 |
| **CASH FLOWS FROM CAPITAL AND RELATED FINANCING ACTIVITIES** | |
| Capital Appropriation | 157,827.12 |
| Sale of Assets | 47,125.76 |
| Capital Asset Purchases | (671,202.69) |
| Net Cash Provided (Used) by Capital and Related Financing Activities | (466,249.81) |
| **CASH FLOWS FROM INVESTING ACTIVITIES** | |
| Interest on Investments | 44,400.60 |
| Net Cash Provided (Used) by Investing Activities | 44,400.60 |
| Net Increase (Decrease) in Cash and Cash Equivalents | (791,574.90) |
| Cash and Cash Equivalents - Beginning of Year | 2,929,796.93 |
| Cash and Cash Equivalents - End of Year | $     2,138,222.03 |

The accompanying Notes to the Financial Statements are an integral part of this statement.

J. F. Ingram State Technical College
Deatsville, Alabama                     4                     Exhibit #3

**Reconciliation of Net Operating Revenues (Expenses) to Net Cash Provided (Used) by Operating Activities:**

| | | |
|---|---|---:|
| Operating Income (Loss) | $ | (6,224,942.19) |

**Adjustments to Reconcile Net Operating Income (Loss) to Net Cash Provided (Used) by Operating Activities:**

| | | |
|---|---|---:|
| Depreciation Expense | | 301,949.58 |
| Changes in Assets and Liabilities: | | |
| (Increase)/Decrease in Receivables, Net | | (699,170.56) |
| (Increase)/Decrease in Inventory | | 21,009.17 |
| Increase/(Decrease) in Accounts Payable | | 135,366.38 |
| Increase/(Decrease) in Deferred Revenue | | (48,544.31) |
| Increase/(Decrease) in Compensated Absences | | 40,582.63 |
| | | |
| Net Cash Provided (Used) by Operating Activities | $ | (6,473,749.30) |

J. F. Ingram State Technical College

Deatsville, Alabama                    5                    Exhibit #3

# *Notes to the Financial Statements*
## *For the Year Ended September 30, 2004*

### *Note 1 - Summary of Significant Accounting Policies*

The financial statements of J. F. Ingram State Technical College are prepared in accordance with accounting principles generally accepted in the United States of America (GAAP).   The Governmental Accounting Standards Board (GASB) is the accepted standard-setting body for establishing governmental accounting and financial reporting principles.   The more significant accounting policies of the College are described below.

### *A. Reporting Entity*

For financial reporting purposes, J. F. Ingram State Technical College is part of the primary government of the State of Alabama.   The State of Alabama, through the State Board of Education, governs the Department of Postsecondary Education.    The Department of Postsecondary Education, through its Chancellor, has the authority and responsibility for the operation, management, supervision and regulation of J. F. Ingram State Technical College.

### *B. Measurement Focus, Basis of Accounting and Financial Statement Presentation*

The financial statements of J. F. Ingram State Technical College have been prepared using the economic resources measurement focus and the accrual basis of accounting.   Revenues are recorded when earned and expenses are recorded when a liability is incurred, regardless of the timing of the related cash flows.  Grants and similar items are recognized as revenue as soon as all eligibility requirements imposed by the provider have been met.

The College follows all applicable GASB pronouncements as well as the following pronouncements issued on or before November 30, 1989 unless those pronouncements conflict with or contradict GASB pronouncements:  Financial Accounting Standards Board (FASB) Statements and Interpretations, Accounting Principles Board (APB) Opinions, and Accounting Research Bulletins (ARBs).

It is the policy of the College to first apply restricted resources when an expense is incurred and then apply unrestricted resources when both restricted and unrestricted net assets are available.

The Statement of Revenues, Expenses, and Changes in Net Assets distinguishes between operating and nonoperating revenues.  Operating revenues, such as tuition and fees, result from exchange transactions associated with the principal activities of the College.    Exchange transactions are those in which each party to the transactions receives or gives up essentially equal values.  Nonoperating revenues arise from exchange transactions not associated with the College's principal activities, such as investment income and from all nonexchange transactions, such as state appropriations.

---

J. F. Ingram State Technical College          6
Deatsville, Alabama

## *Notes to the Financial Statements*
### *For the Year Ended September 30, 2004*

### *C. Assets, Liabilities, and Net Assets*

### *1. Cash and Cash Equivalents*

The College has defined cash to include currency on hand and demand deposits with financial institutions. Cash also includes deposits in other kinds of accounts or cash management pools that have the general characteristics of demand deposit accounts in that the College may deposit additional cash at any time and also effectively may withdraw cash at any time without prior notice or penalty.

Cash equivalents are defined as short-term, highly liquid investments that are both (a) readily convertible to known amounts of cash and (b) so near their maturity that they present insignificant risk of changes in value because of changes in interest rates. Generally, only investments with original maturities of three months or less meet this definition.

### *2. Receivables*

Accounts receivable relate to amounts due from State and Federal Grants, cash paying students and live work customers.

### *3. Inventories*

The inventories are comprised of (1) consumable supplies, (2) items held for resale, and (3) any other significant inventories. Inventories are valued at the lower of cost or market. Inventories are valued using the first in/first out (FIFO) method.

### *4. Capital Assets*

Capital assets with a unit cost of over $5,000 and an estimated useful life in excess of one year, and all library books, are recorded at historical cost or estimated historical cost if purchased or constructed. In addition, works of art and historical treasures and similar assets are recorded at their historical cost. Donated capital assets are recorded at fair market value at the date of donation. Land and Construction in Progress are the only capital assets that are not depreciated. Depreciation is not allocated to a functional expense category. The costs of normal maintenance and repairs that do not add to the value of the asset or materially extend its life are not capitalized.

Major outlays for capital assets and improvements are capitalized as projects are constructed. The amount of interest to be capitalized is calculated by offsetting interest expense incurred from the date of the borrowing until completion of the project with interest earned on invested proceeds over the same period.

---

## *Notes to the Financial Statements*
### *For the Year Ended September 30, 2004*

Maintenance and repairs are charged to operations when incurred. Betterments and major improvements, which significantly increase values, change capacities or extend useful lives, are capitalized. Upon the sale or retirement of fixed assets being depreciated using the straight-line method, the cost and related accumulated depreciation are removed from the respective accounts and any resulting gain or loss is included in the results of operation.

The method of depreciation and useful lives of the capital assets are as follows:

| Assets | Depreciation Method | Useful Lives |
|---|---|---|
| Buildings and Improvements | Straight Line | 50 years |
| Improvements Other Than Buildings | Composite | 25 years |
| Equipment | Composite | 5 - 10 years |
| Library Materials | Composite | 20 years |

### *5. Long-Term Obligations*

Long-term debt and other long-term obligations are reported as liabilities in the Statement of Net Assets.

### *6. Compensated Absences*

No liability is recorded for sick leave. Substantially all employees of the College earn 12 days of sick leave each year with unlimited accumulation. Payment is not made to employees for unpaid sick leave at termination or retirement.

All non-instructional employees earn annual leave at a rate, which varies from 12 to 24 days per year depending on duration of employment, with accumulation limited to 60 days. Instructional employees do not earn annual leave. Payment is made to employees for unused leave at termination or retirement.

## *Notes to the Financial Statements*
### *For the Year Ended September 30, 2004*

### *7.  Net Assets*

Net assets are required to be classified for accounting and reporting purposes into the following net asset categories:

◆ *Invested in Capital Assets, Net of Related Debt* - Capital assets, net of accumulated depreciation and outstanding principal balances of debt attributable to the acquisition, construction or improvement of those assets   Any significant unspent related debt proceeds at year-end related to capital assets are not included in this calculation.

◆ *Restricted:*

   ✓ *Nonexpendable* - Net assets subject to externally imposed stipulations that they be maintained permanently by the College.

   ✓ *Expendable* - Net assets whose use by the College is subject to externally imposed stipulations that can be fulfilled by actions of the College pursuant to those stipulations or that expire by the passage of time.

◆ *Unrestricted* - Net assets that are not subject to externally imposed stipulations.  Unrestricted net assets may be designated for specific purposes by action of management or the State Board of Education.

### *8.  Federal Financial Assistance Programs*

The College participates in various federal programs.   Federal programs are audited in accordance with the Single Audit Act Amendments of 1996, the U. S. Office of Management and Budget Revised Circular A-133, *Audits of States, Local Governments and Non-Profit Organizations*, and the Office of Management and Budget (OMB) Compliance Supplement.

### *9.  Scholarship Allowances and Student Aid*

Student tuition and fees are reported net of scholarship allowances and discounts.  The amount for scholarship allowances and discounts is the difference between the stated charge for goods and services provided by the College and the amount that is paid by the student and/or third parties making payments on behalf of the student.  The College uses the case-by-case method to determine the amount of scholarship allowances and discounts.

## *Notes to the Financial Statements*
### *For the Year Ended September 30, 2004*

### *Note 2 - Deposits and Investments*

### *Deposits*

The College's deposits at year-end were held by financial institutions in the State of Alabama's Security for Alabama Funds Enhancement (SAFE) Program.  The SAFE Program was established by the Alabama Legislature and is governed by the provisions contained in the *Code of Alabama 1975*, Sections 41-14A-1 through 41-14A-14.  Under the SAFE Program all public funds are protected through a collateral pool administered by the Alabama State Treasurer's Office.  Under this program, financial institutions holding deposits of public funds must pledge securities as collateral against those deposits.  In the event of failure of a financial institution, securities pledged by that financial institution would be liquidated by the State Treasurer to replace the public deposits not covered by the Federal Depository Insurance Corporation (FDIC).  If the securities pledged fail to produce adequate funds, every institution participating in the pool would share the liability for the remaining balance.

The Statement of Net Assets classification "cash and cash equivalents" includes all readily available cash such as petty cash, demand deposits, and certificates of deposits with maturities of three months or less.

### *Note 3 - Receivables*

Receivables are reported net of uncollectible amounts and are summarized as follows:

| Accounts Receivable | |
|---|---:|
| Grants and Contracts | $1,273,043.57 |
| Student | 12,562.00 |
| Other | 3,664.28 |
| Total Accounts Receivable, Net | $1,289,269.85 |

---

J. F. Ingram State Technical College                    10
Deatsville, Alabama

## *Notes to the Financial Statements*
### *For the Year Ended September 30, 2004*

### *Note 4 - Capital Assets*

Capital asset activity for the year ended September 30, 2004, was as follows:

| | Beginning Balance | Additions | Transfers | Deductions | Ending Balance |
|---|---|---|---|---|---|
| Land | $    10,000.00 | $ | $ | $ | $    10,000.00 |
| Improvements Other Than Buildings | 233,505.94 | | | | 233,505.94 |
| Buildings and Improvements | 3,995,928.91 | | 1,547,552.49 | | 5,543,481.40 |
| Equipment <$25,000.00 | 1,639,686.71 | 56,804.08 | | (532,409.98) | 1,164,080.81 |
| Equipment >$25,000.00 | 1,078,021.76 | 278,410.42 | | (398,723.00) | 957,709.18 |
| Library Holdings | 122,439.47 | 4,447.07 | | (11,897.65) | 114,988.89 |
| Construction in Progress | 1,230,575.49 | 331,541.12 | (1,547,552.49) | | 14,564.12 |
| Total | 8,310,158.28 | 671,202.69 | | (943,030.63) | 8,038,330.34 |
| | | | | | |
| Less:  Accumulated Depreciation | | | | | |
| Improvements Other Than Buildings | 199,349.28 | 6,958.34 | | | 206,307.62 |
| Buildings and Improvements | 1,733,385.34 | 110,869.63 | | | 1,844,254.97 |
| Equipment <$25,000.00 | 1,337,038.98 | 96,593.94 | | (532,409.98) | 901,222.94 |
| Equipment >$25,000.00 | 404,694.33 | 81,778.23 | | (134,033.80) | 352,438.76 |
| Library Holdings | 66,743.64 | 5,749.44 | | (11,897.65) | 60,595.43 |
| Total Accumulated Depreciation | $3,741,211.57 | $301,949.58 | $ | (678,341.43) | 3,364,819.72 |
| Capital Assets. Net | | | | | $4,673,510.62 |
| | | | | | |
| Loss on Sale of Capital Asset | | | | $(264,689.20) | |

The realized loss shown on the Statement of Revenues, Expenses and Changes in Net Assets resulted from transfers of equipment to a county board of education and the Alabama Department of Economic and Community Affairs' division of Surplus Property.    Under composite depreciation a loss on such transfers would not be recognized; however, the College determined that recognizing a loss would more accurately reflect a fair presentation of their operations.

# *Notes to the Financial Statements*
## *For the Year Ended September 30, 2004*

### *Note 5 - Defined Benefit Pension Plan*

### *A. Plan Description*

The College contributes to the Teachers' Retirement System of Alabama, a cost-sharing multiple-employer public employee retirement system for the various state-supported educational agencies and institutions. This plan is administered by the Retirement Systems of Alabama.

Substantially all employees of the College are members of the Teachers' Retirement System. Membership is mandatory for covered or eligible employees of J. F. Ingram State Technical College. Benefits vest after 10 years of creditable service. Vested employees may retire with full benefits at age 60 or after 25 years of service. Retirement benefits are calculated by two methods with the retiree receiving payment under the method which yields the highest monthly benefit. The methods are (1) Minimum Guaranteed, or (2) Formula, of which the Formula method usually produces the highest monthly benefit. Under this method retirees are allowed 2.0125% of their average final salary (best three of the last ten years) for each year of service. Disability retirement benefits are calculated in the same manner. Pre-retirement death benefits in the amount of the annual salary for the fiscal year preceding death are provided to plan members.

The Teachers' Retirement System was established as of October 1, 1941, under the provisions of Act Number 419, Acts of Alabama 1939, for the purpose of providing retirement allowances and other specified benefits for qualified persons employed by state-supported educational institutions. The responsibility for general administration and operation of the Teachers' Retirement System is vested in the Board of Control (currently 14 members). Benefit provisions are established by the *Code of Alabama 1975*, Sections 16-25-1 through 16-25-113, as amended, and Sections 36-27B-1 through 36-27B-6, as amended.

The Retirement Systems of Alabama issues a publicly available financial report that includes financial statements and required supplementary information for the Teachers' Retirement System of Alabama. That report may be obtained by writing to The Retirement Systems of Alabama, 135 South Union Street, Montgomery, Alabama 36130-2150.

## *Notes to the Financial Statements*
### *For the Year Ended September 30, 2004*

### B. *Funding Policy*

Employees, with the exception of full-time law enforcement officers, are required by statute to contribute 5 percent of their salary to the Teachers' Retirement System. As of January 1, 2001, full-time law enforcement officers (as defined by Act Number 2000-669, Acts of Alabama, Page 1335) are required by statute to contribute 6 percent of their salary to the Teachers' Retirement System. J. F. Ingram State Technical College is required to contribute the remaining amounts necessary to fund the actuarially determined contributions to ensure sufficient assets will be available to pay benefits when due. Each year the Teachers' Retirement System recommends to the Legislature the contribution rate for the following fiscal year, with the Legislature setting this rate in the annual appropriation bill. The percentages of the contributions and the amount of contributions made by J. F. Ingram State Technical College and its employees equal the required contributions for each year as follows:

| Fiscal Year Ended September 30, | 2004 | 2003 | 2002 | 2001 |
|---|---|---|---|---|
| Total Percentage of Covered Payroll | 11.56% | 10.02% | 10.96% | 11.38% |
| Contributions: | | | | |
| Percentage Contributed by the College | 6.56% | 5.02% | 5.96% | 6.38% |
| Percentage Contributed by the Employees | 5.00% | 5.00% | 5.00% | 5.00% |
| Contributed by the College | $450,453.44 | $320,117.33 | $344,372.43 | $331,546.93 |
| Contributed by Employees | 343,333.67 | 318,841.50 | 288,903.95 | 259,833.00 |
| Total Contributions | $793,787.11 | $638,958.83 | $633,276.38 | $591,379.93 |

### Note 6 – *Other Postemployment Benefits (OPEB)*

The Public Education Employees' Health Insurance Fund (PEEHIF) was established in 1983 under the provisions of Act Number 455 to provide a uniform plan of health insurance for current and retired employees of state educational institutions. The plan is administered by the Public Education Employees' Health Insurance Board (PEEHIB). The employer's share of premiums for retired College employees health insurance is included as part of the premium for active employees and is funded on a pay-as-you go basis. Retirees who are eligible for Medicare benefits must pay $1.14 per month for coverage while those who are not eligible must pay $78.00 per month for the coverage. The estimated portion of health insurance premiums paid by the College for retired employees was approximately $268,705.65 for fiscal year 2004. The College has no responsibility for the payment of health care benefits, beyond the payment of the premium, for retired employees.

---

# *Notes to the Financial Statements*
## *For the Year Ended September 30, 2004*

### *Note 7 - Construction and Other Significant Commitments*

As of September 30, 2004, the College had entered into contracts for the design and installation of improved roof systems for buildings located at the Main Campus and the Draper Annex. The Architect is being paid on an hourly basis for the design work. The Contract for the installation including change orders is $1,452,366.00. As of September 30, 2004, the College had made payments to vendors totaling $1,452,366.00. This amount is reflected in Buildings and Improvements.

The Alabama Public School and College Authority allocated bond proceeds to the roofing project in the amount of $157,827.12. As of September 30, 2004, the College has made payments to vendors totaling $157,827.12. This amount is reflected in Buildings and Improvements.

As of September 30, 2004, J. F. Ingram State Technical College had been awarded approximately $872,365.95 in contracts and grants on which performance had not been accomplished and funds had not been received. These awards, which represent commitments of sponsors to provide funds for specific purposes, have not been reflected in the financial statements.

### *Note 8 - Accounts Payable and Accrued Liabilities*

Accounts payable and accrued liabilities represent amounts due at September 30, 2004, for goods and services received prior to the end of the fiscal year.

| | |
|---|---:|
| Grants and Contracts | $131,251.52 |
| Salaries and Wages | 81,365.62 |
| Benefits | 11,562.07 |
| Sales Tax Payable | 1,406.83 |
| Total | $225,586.04 |

### *Note 9 - Long-Term Liabilities*

Long-term liabilities activity for the year ended September 30, 2004, was as follows:

| | Beginning Balance | Additions | Reductions | Ending Balance | Current Portion |
|---|---|---|---|---|---|
| Compensated Absences | $289,298.58 | $40,582.63 | $ | $329,881.21 | $40,740.07 |
| Total Long-Term Liabilities | $289,298.58 | $40,582.63 | $ | $329,881.21 | $40,740.07 |

## *Notes to the Financial Statements*
### *For the Year Ended September 30, 2004*

Note 10 – Risk Management

The College is exposed to various risks of loss related to torts; theft of, damage to, and destruction of assets; errors and omissions; injuries to employees; and natural disasters. The College has insurance for its buildings and contents through the State Insurance Fund (SIF), part of the State of Alabama, Department of Finance; Division of Risk Management which operates as a common risk management and insurance program for state owned properties. The College pays an annual premium based on the amount of coverage requested. The SIF provides coverage up to $2 million per occurrence and is self-insured up to a maximum of $6 million in aggregate claims. The SIF purchases commercial insurance for claims which in the aggregate exceed $6 million. The College purchases commercial insurance for its automobile coverage, general liability, and professional legal liability coverage. In addition, the College has fidelity bonds on the College's president, dean of the College, dean of fiscal affairs, financial systems manager as well as on all other college personnel who handle funds.

Employee health insurance is provided through the Public Education Employees' Health Insurance Fund (PEEHIF) administered by the Public Education Employees' Health Insurance Board (PEEHIB). The Fund was established to provide a uniform plan of health insurance for current and retired employees of state educational institutions and is self-sustaining. Monthly premiums for employee and dependent coverage are determined annually by the plan's actuary and based on anticipated claims in the upcoming year, considering any remaining fund balance on hand available for claims. The College contributes a specified amount monthly to the PEEHIF for each employee and this amount is applied against the employee's premiums for the coverage selected and the employee pays any remaining premium.

Settled claims resulting from these risks have not exceeded the College's coverage in any of the past three fiscal years.

Claims, which occur as a result of employee job-related injuries, may be brought before the State of Alabama Board of Adjustment. The Board of Adjustment serves as an arbitrator and its decision is binding. If the Board of Adjustment determines that a claim is valid, it decides the proper amount of compensation (subject to statutory limitations) and the funds are paid by the College.

# Notes to the Financial Statements
## For the Year Ended September 30, 2004

### Note 11 - Related Parties

#### J. F. Ingram State Technical College Foundation. Inc.

J. F. Ingram State Technical College Foundation, Inc., was incorporated as a non-profit corporation to promote scientific, literary, and educational purposes, the advancement of J. F. Ingram State Technical College, and for the encouragement and support of its students and faculty. This report contains no financial statements of J. F. Ingram State Technical College Foundation, Inc.

### Note 12 - Net Asset Restatement

Net Assets were restated to properly reflect deferred revenues as outline below:

| | |
|---|---|
| Beginning Net Assets September 30, 2003 | $7,886,194.59 |
| Prior Period Adjustment | |
| Prior Period Deferred Revenue Adjustment | (48,716.31) |
| Total Adjustment | (48,716.31) |
| Net Assets October 1, 2003, as Restated | $7,837,478.28 |

J. F. Ingram State Technical College                    16
Deatsville, Alabama

*Supplementary Information*

## Schedule of Expenditures of Federal Awards
## For the Year Ended September 30, 2004

| Federal Grantor/<br>Pass-Through Grantor/<br>Program or Cluster Title | Federal<br>CFDA<br>Number | Pass-Through<br>Grantor's<br>Number |
|---|---|---|
| **U. S. Department of Education** | | |
| **TRIO Cluster** | | |
| **Direct Programs** | | |
|   TRIO - Student Support Services | 84.042 | |
|   TRIO - Student Support Services | 84.042 | |
|   Total Trio Cluster | | |
| | | |
| **Special Education Cluster (IDEA)** | | |
| **Passed Through State Department of Education** | | |
|   Special Education - Grants to States | 84.027 | |
| **Passed Through Elmore County Board of Education** | | |
|   Special Education - Grants to States | 84.027 | X400194 |
|   Total Special Education Cluster (IDEA) (M) | | |
| | | |
| **Other Federal Awards** | | |
| **Direct Programs** | | |
|   Grants to States for Incarcerated Youth Offenders (M) | 84.331 | |
| | | |
| **Passed Through State Department of Postsecondary Education** | | |
|   Adult Education - State Grant Program (M) | 84.002 | |
|   Adult Education - State Grant Program (M) | 84.002 | |
|   Adult Education - State Grant Program (M) | 84.002 | |
| | | |
| **Passed Through State Department of Education** | | |
|   Title I Program for Neglected and Delinquent Children (M) | 84.013 | |
|   Vocational Education - Basic Grants to States | 84.048 | |
| | | |
|   Total Federal Awards | | |

(M) - Denotes Major Program

The accompanying Notes to the Schedule of Expenditures of Federal Awards are an integral part of this schedule.

J. F. Ingram State Technical College
Deatsville, Alabama                    18                    Exhibit #4

| Assistance Period | Budget | | Revenue Recognized | Expenditures |
|---|---|---|---|---|
| | Total | Federal Share | | |
| 09/01/2004-08/31/2005 | $  325,320.00 | $  325,320.00 | $    23,275.06 | $    23,275.06 |
| 09/01/2003-08/31/2004 | 325,320.00 | 325,320.00 | 272,451.48 | 272,451.48 |
| | | | 295,726.54 | 295,726.54 |
| 10/01/2003-09/30/2004 | 247,892.02 | 176,749.72 | 123,719.89 | 123,719.89 |
| 10/01/2003-09/30/2004 | 914,470.65 | 914,470.65 | 674,580.00 | 674,580.00 |
| | | | 798,299.89 | 798,299.89 |
| 07/01/2003-09/30/2004 | 457,044.00 | 457,044.00 | 457,044.00 | 457,044.00 |
| 07/01/2004-06/30/2005 | 720,979.00 | 645,839.61 | 75,518.63 | 75,518.63 |
| 07/01/2003-06/30/2004 | 1,090,764.00 | 440,384.02 | 210,765.74 | 210,765.74 |
| 07/01/2003-06/30/2004 | 50,000.00 | 50,000.00 | 47,341.25 | 47,341.25 |
| 10/01/2003-09/30/2004 | 414,809.00 | 414,809.00 | 378,828.97 | 378,828.97 |
| 10/01/2003-09/30/2004 | $  276,683.89 | $  276,683.89 | 200,196.56 | 200,196.56 |
| | | | $  2,463,721.58 | $  2,463,721.58 |

J. F. Ingram State Technical College
Deatsville, Alabama                              19                              Exhibit #4

# Notes to the Schedule of Expenditures
## of Federal Awards
### For the Year Ended September 30, 2004

## Note 1 - Basis of Presentation

The accompanying Schedule of Expenditures of Federal Awards includes the federal grant activity of J. F. Ingram State Technical College and is presented on the accrual basis of accounting. The information in this schedule is presented in accordance with the requirements of OMB Circular A-133, *Audits of States, Local Governments, and Non-Profit Organizations.* Therefore, some amounts presented in this schedule may differ from amounts presented in or used in the preparation of the basic financial statements.

## Note 2 - Subrecipients

Of the federal expenditures presented in the schedule, J. F. Ingram State Technical College provided federal awards to subrecipients as follows:

| Program Title/Subrecipients | Federal CFDA Number | Assistance Period | Amount Provided to Subrecipients |
|---|---|---|---|
| Adult Education - Grant State Program | 84.002 | 07/01/2004-06/30/2005 | |
| Jefferson Davis State Community College | | | $ 27,560.51 |
| Bullock County School System | | | 5,160.39 |
| Calhoun State Community College | | | 5,235.53 |
| Bibb County School System | | | 4,723.43 |
| Total | | | $ 42,679.86 |
| Adult Education - Grant State Program | 84.002 | 07/01/2003-06/30/2004 | |
| Jefferson Davis State Community College | | | $ 31,289.05 |
| Bullock County School System | | | 4,940.81 |
| Calhoun State Community College | | | 9,601.87 |
| Bibb County School System | | | 8,484.30 |
| Total | | | $ 54,316.03 |
| Title I Program for Neglected and Delinquent Children | 84.013 | 10/01/2003-09/30/2004 | |
| Bullock County School System | | | $ 39,804.16 |
| Lawson State Community College | | | 17,698.00 |
| Jefferson Davis State Community College | | | 77,271.00 |
| Calhoun State Community College | | | 12,533.42 |
| Total | | | $147,306.58 |

# *Additional Information*

# *College Officials*
## *October 1, 2003 through September 30, 2004*

| Officials | Title | Address |
|---|---|---|
| J. Douglas Chambers | President | P. O. Box 220350<br>Deatsville, Alabama 36022-0350 |
| Monica J. Greene | Dean of Fiscal Affairs | P. O. Box 220350<br>Deatsville, Alabama 36022-0350 |

# Report on Internal Control Over Financial Reporting and on Compliance and Other Matters Based on an Audit of Financial Statements Performed in Accordance With Government Auditing Standards

We have audited the basic financial statements of J. F. Ingram State Technical College as of and for the year ended September 30, 2004, and have issued our report thereon dated July 1, 2005. We conducted our audit in accordance with auditing standards generally accepted in the United States of America and the standards applicable to financial audits contained in *Government Auditing Standards*, issued by the Comptroller General of the United States.

## Internal Control Over Financial Reporting

In planning and performing our audit, we considered J. F. Ingram State Technical College's internal control over financial reporting in order to determine our auditing procedures for the purpose of expressing our opinion on the financial statements and not to provide an opinion on the internal control over financial reporting. Our consideration of the internal control over financial reporting would not necessarily disclose all matters in the internal control that might be material weaknesses. A material weakness is a reportable condition in which the design or operation of one or more of the internal control components does not reduce to a relatively low level the risk that misstatements caused by error or fraud in amounts that would be material in relation to the financial statements being audited may occur and not be detected within a timely period by employees in the normal course of performing their assigned functions. We noted no matters involving the internal control over financial reporting and its operation that we consider to be material weaknesses. However, we noted certain matters involving the internal control over financial reporting that we have reported to the management of J. F. Ingram State Technical College in the Report to the Chief Examiner.

## Compliance and Other Matters

As part of obtaining reasonable assurance about whether J. F. Ingram State Technical College's financial statements are free of material misstatement, we performed tests of its compliance with certain provisions of laws, regulations, contracts and grant agreements, noncompliance with which could have a direct and material effect on the determination of financial statement amounts. However, providing an opinion on compliance with those provisions was not an objective of our audit, and accordingly, we do not express such an opinion. The results of our tests disclosed no instances of noncompliance or other matters that are required to be reported under *Government Auditing Standards*.

# *Report on Internal Control Over Financial Reporting and on Compliance and Other Matters Based on an Audit of Financial Statements Performed in Accordance With Government Auditing Standards*

This report is intended solely for the information and use of management, other state officials, federal awarding agencies and pass-through entities and is not intended to be and should not be used by anyone other than these specified parties.

Ronald L. Jones
Chief Examiner
Department of Examiners of Public Accounts

July 1, 2005

## *Report on Compliance With Requirements Applicable to Each Major Program and Internal Control Over Compliance in Accordance With OMB Circular A-133*

### *Compliance*

We have audited the compliance of J. F. Ingram State Technical College with the types of compliance requirements described in the *U. S. Office of Management and Budget (OMB) Circular A-133 Compliance Supplement* that are applicable to each of its major federal programs for the year ended September 30, 2004. J. F. Ingram State Technical College's major federal programs are identified in the Summary of Examiner's Results Section of the accompanying Schedule of Findings and Questioned Costs. Compliance with the requirements of laws, regulations, contracts and grants applicable to each of its major federal programs is the responsibility of J. F. Ingram State Technical College's management. Our responsibility is to express an opinion on J. F. Ingram State Technical College's compliance based on our audit.

We conducted our audit of compliance in accordance with auditing standards generally accepted in the United States of America; the standards applicable to financial audits contained in *Government Auditing Standards*, issued by the Comptroller General of the United States; and OMB Circular A-133, *Audits of States, Local Governments, and Non-Profit Organizations.* Those standards and OMB Circular A-133 require that we plan and perform the audit to obtain reasonable assurance about whether noncompliance with the types of compliance requirements referred to above that could have a direct and material effect on a major federal program occurred. An audit includes examining, on a test basis, evidence about J. F. Ingram State Technical College's compliance with those requirements and performing such other procedures, as we considered necessary in the circumstances. We believe that our audit provides a reasonable basis for our opinion. Our audit does not provide a legal determination of J. F. Ingram State Technical College's compliance with those requirements.

In our opinion, J. F. Ingram State Technical College complied, in all material respects, with the requirements referred to above that are applicable to each of its major federal programs for the year ended September 30, 2004.

### *Internal Control Over Compliance*

The management of J. F. Ingram State Technical College is responsible for establishing and maintaining effective internal control over compliance with requirements of laws, regulations, contracts and grants applicable to federal programs. In planning and performing our audit, we considered J. F. Ingram State Technical College's internal control over compliance with requirements that could have a direct and material effect on a major federal program in order to determine our auditing procedures for the purpose of expressing our opinion on compliance and to test and report on internal control over compliance in accordance with OMB Circular A-133.

---

# *Report on Compliance With Requirements Applicable to Each Major Program and Internal Control Over Compliance in Accordance With OMB Circular A-133*

Our consideration of the internal control over compliance would not necessarily disclose all matters in the internal control that might be material weaknesses. A material weakness is a reportable condition in which the design or operation of one or more of the internal control components does not reduce to a relatively low level the risk that noncompliance with applicable requirements of laws, regulations, contracts and grants caused by error or fraud that would be material in relation to a major federal program being audited may occur and not be detected within a timely period by employees in the normal course of performing their assigned functions. We noted no matters involving the internal control over compliance and its operation that we consider to be material weaknesses.

This report is intended solely for the information and use of management, other state officials, federal awarding agencies and pass-through entities and is not intended to be and should not be used by anyone other than these specified parties.

Ronald L. Jones
Chief Examiner
Department of Examiners of Public Accounts

July 1, 2005

---

J. F. Ingram State Technical College
Deatsville, Alabama

26

Exhibit #7

## *Schedule of Findings and Questioned Costs*
### *For the Year Ended September 30, 2004*

### Section I - Summary of Examiner's Results

#### *Financial Statements*

| | | |
|---|---|---|
| Type of opinion issued: | Unqualified | |
| Internal control over financial reporting: | | |
| Material weakness(es) identified? | _____ Yes | __X__ No |
| Reportable condition(s) identified that are not considered to be material weakness(es)? | _____ Yes | __X__ None reported |
| Noncompliance material to financial statements noted? | _____ Yes | __X__ No |

#### *Federal Awards*

| | | |
|---|---|---|
| Internal control over major programs: | | |
| Material weakness(es) identified? | _____ Yes | __X__ No |
| Reportable condition(s) identified that are not considered to be material weakness(es)? | _____ Yes | __X__ No |
| Type of opinion issued on compliance for major programs: | Unqualified | |
| Any audit findings disclosed that are required to be reported in accordance with Section 510(a) of Circular A-133? | _____ Yes | __X__ No |

Identification of major programs:

| CFDA Number(s) | Name of Federal Program or Cluster |
|---|---|
| 84.027 | Special Education - Grants to States |
| 84.331 | Grants to States for Incarcerated Youth Offenders |
| 84.002 | Adult Education - State Grant Program |
| 84.013 | Title I Program for Neglected and Delinquent Children |

| | |
|---|---|
| Dollar threshold used to distinguish Between Type A and Type B programs: | $300,000.00 |
| Auditee qualified as low-risk auditee? | __X__ Yes    _____ No |

# Schedule of Findings and Questioned Costs
## For the Year Ended September 30, 2004

### Section II – Financial Statement Findings (GAGAS)

| Ref. No. | Type of Finding | Finding/Noncompliance | Questioned Costs |
|---|---|---|---|
| | | The audit did not disclose any findings or questioned costs required to be reported. | |

### Section III – Federal Awards Findings and Questioned Costs

| Ref. No. | CFDA No. | Program | Finding/Noncompliance | Questioned Costs |
|---|---|---|---|---|
| | | | The audit did not disclose any findings or questioned costs required to be reported. | |

*Auditee Response*



*Ingram*
*State*
*Technical*
*College*
**ISTC**
• *Developing Responsible Citizens* •

J. Douglas Chambers
President

Rickey A. Huffstutler, Ph.D
Dean of the College

Monica J. Greene
Dean of
Fiscal Affairs

James E. Wilson
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

September 9, 2005

Mr. Ronald L. Jones, Chief Examiner
Examiners of Public Accounts
State of Alabama
Post Office Box 302251
Montgomery, Alabama 36130-2251

Dear Mr. Jones:

    J.F. Ingram State Technical College has prepared and hereby submits the following response for the findings included in the audit report for the year ended September 30, 2004.

**FINDING: The audit recommended that the College adhere to all State Board policies relating to live work.**

    **"A comparison of live work revenue and costs was done for the instructional departments. The comparison indicated that costs exceeded revenues in the Furniture Refinishing department by $18,864.98. Also, a review of work in process on June 21, 2005, revealed that deposits had not been collected on four live work projects that were in process. In another instance, the Dean of the College delivered a tractor to the diesel shop. The Dean went on vacation on May 31 and returned to work on July 12. The work order for the tractor was dated June 21, 2005."**

    In order to clearly and adequately respond to the audit findings, the response was divided into three categories (Response I, II, and III).

**RESPONSE I**

**A comparison of live work revenue and costs was done for the instructional departments. The comparison indicated that costs exceeded revenues in the Furniture Refinishing department by $18,864.98.**

*P.O. Box 220350  •  Deatsville, Alabama 36022*

*Phone: 334-285-5177  •  Fax: 334-285-5328*

Mr. Ronald L. Jones
Page 2
September 9, 2005

As a result of the audit finding regarding the profit margin for the Furniture Refinishing Shop, the Dean of Fiscal Affairs and the Furniture Refinishing Instructor reviewed all purchases and work orders for the Furniture Refinishing Shop for the 2003-2004 audit period. During the review and follow-up process the instructor discovered, and the Dean verified, that several items damaged due to a leaking roof were not properly documented and accounted for by the instructor or the Business Office. The review and follow-up also revealed that the shop inventory was not adjusted to account for the financial loss which resulted from the damaged materials and supplies.

After completion of the review and follow-up process, the Dean of Fiscal Affairs estimated that if the College had accounted for the damaged materials and the supplies in the manner utilized by the auditor, the following costs would have prevailed: (See Attachment 1)

| | |
|---|---|
| Maple lumber in the amount of | $6,747.00 |
| Stain in the amount of | 150.00 |
| Sealer in the amount of | 450.00 |
| Finish in the amount of | 600.00 |
| Total of Damaged Items | $7,947.00 |

Terry Keahey, Furniture Refinishing Instructor, reported that he had not been charging the customers for unused wood and other supplies used on live work projects. He reported that these supplies were thrown away and the College did not receive any financial return on them. The College has determined that we should have assigned at least a 20% allowance on total resale expenditures for the year to account for losses of this nature. If this process had been in place, and used, the amount would have been $18,389.91.

The Dean of Fiscal Affairs, Monica Greene, reported that two vendors did not allow for losses resulting from shrinkage of wood products. In other words, the College was paying the actual cost of the wood before it was processed and delivered. Although the Dean reported that she dropped the vendors from her vendor's list, she did not adjust her records to show a loss for the shrinkage. According to her calculations, an allowance of 10% or $4,597.48 should have been assigned to cover for the losses.

At the conclusion of the review and follow-up process, the College identified several factors that would have had a positive effect on the audit findings. First, and most importantly, the College should have charged the

Mr. Ronald L. Jones
Page 3
September 9, 2005

customer for all materials and supplies used on all projects, instead of discarding the remains and leftover at no cost to the customer. The Business Office will now charge the customer for all materials purchased for a live work project. In cases where there are leftovers or unused materials and/or supplies, the customer will have the choice of receiving them or donating them to the College. Donated materials and/or supplies will be used on classroom projects, when appropriate. Second, the College was not documenting losses at the time of occurrence, which contributed to costs exceeding revenues in the Furniture Refinishing shop. The Dean of Fiscal Affairs has instructed all live work instructors to notify her in cases where there is a possible loss in materials and/or supplies. She, along with the respective instructors, will evaluate the loss and determine the appropriate action to be taken that will ensure financial accountability. Thirdly, if the Dean had calculated the profit margin using the formula and estimated percentages as explained to her by the auditor, her profit margin would have been greater than the reported loss of $18,864.98. The Dean also reported that she was not aware of the $18,864.98 when the 2003-2004 year was closed out because she used a different way of analyzing the profit margin for the Furniture Refinishing shop. Her calculations were not showing the final figure of the auditor. She stated that she would not have left this amount unanswered if she had known this at year's end. She reported that Mr. Bradsher has shown her how he will be determining these factors in future audits, and she will make sure that the College stays current with all audit updates, deletions, changes and guidelines modifications. She responded that she was not aware of his procedures at the time of the 2003-2004 audit.

## RESPONSE II

**A review of work in process on June 21, 2005, revealed that deposits had not been collected on four live work projects that were in process.**

The College has in place policies and guidelines to ascertain that proper deposits are made for all live work projects. The College also acknowledges and agrees that policies approved and established by the College were not followed by specific employees responsible for the projects identified in the findings. A review of work orders 22694, 22693, 22688 and 21261, all revealed that the process, rules and regulations governing live work projects were either ignored and/or intentionally violated by the employees identified in the audit. It was also revealed that internal controls administered by the Dean of the College, Dr. Rickey Huffstutler, who is responsible for supervising live work instructors, and the Dean of Fiscal Affairs, Monica Greene, who is responsible for administering and handling

Mr. Ronald L. Jones
Page 4
September 9, 2005

the financial affairs of the College were weak and ineffective. Although both Deans had reported to the President's Administrative Cabinet that all live work activities were up to par, and checks and balances were in place to identify possible violations, the findings by the auditors confirmed that they were not. As a result of this discovery, the College began an aggressive review of each step in the live work process. Changes were made where needed to improve the entire live work process. The review also afforded the College an opportunity to implement and improve ways to better monitor and account for all live work activities as required by generally accepted government compliance standards.

The Dean of the College, who is primarily responsible for supervising all live work instructors, has been replaced by a new Dean of Instruction, Dr. Jim Merk. The new Dean of Instruction, working closely with the Dean of Fiscal Affairs, has met with all employees and discussed and reviewed the required process and procedures to be used by all J.F. Ingram employees. Also, during the Fall Semester (2005) Professional Development Program for all College employees, the President of the College discussed the audit findings and informed all employees of the guidelines, requirements and procedures that all live work participants must follow. He also informed the employees of the penalties that would apply to those who fail or refuse to follow College policies, guidelines and procedures. The Dean of Fiscal Affairs reaffirmed her positions as they relate to live work and the Business Office. She informed all employees that she and the Dean of Instruction will be implementing changes where needed, and closely monitoring all live work activities on a regular schedule.

As a result of the findings by the auditors and an acknowledgement of agreement by the President of policy violations, I have initiated a formal disciplinary procedure for the Dean of the College, Dr. Rickey Huffstutler, Cabinet and Refinishing Instructor, Mr. Terry Keahey, and Cabinet Instructor, Mr. Roger Haines. They all received a "Letter of Intent to Take Action" reprimand. The Dean of Fiscal Affairs was directed to review the live work process, step by step, to ascertain that the process is workable and clearly understood by all employees and customers. She was reminded that if she had enforced a regular check and balance on all live work projects some of the findings, possibly all of them, could have been avoided. She was warned that if an effective monitoring process is not enforced immediately, disciplinary actions could be forthcoming. She was directed to regularly monitor all live work projects to make sure that the College adheres to all business procedures and guidelines controlled and governed by her office, the College, Postsecondary, and the State of Alabama. She was also directed to make sure that all paperwork presented to her office is

Mr. Ronald L. Jones
Page 5
September 9, 2005

reviewed and approved by her before any live work project begins, and to develop strong internal controls to monitor the process.

## RESPONSE III

**In another instance, the Dean of the College delivered a tractor to the diesel mechanic shop. The Dean went on vacation on May 31 and returned to work on July 12. The work order for the tractor was dated June 21, 2005.**

The President acknowledges that the Dean of the College violated College policies that he was employed to enforce. The Dean of Fiscal Affairs was not aware that the tractor was on campus or being worked on in the diesel mechanic shop. Having no knowledge of the status of the tractor, she was in no position to do the proper paperwork or to collect the proper deposit. Disciplinary procedures have been initiated against the Dean of the College, as previously discussed. He is no longer serving in the position of the Dean of the College, and he no longer supervises the instructors involved in live work projects.

Finally, on behalf of the J.F. Ingram employees, I want to thank you and your staff for providing us a thorough and fair audit. Although there were findings, it gave us an opportunity to identify, review our procedures, and correct problem areas at the College. I assured the auditors in the exit interview, and I assure you now, that all problems would be corrected and steps will be implemented to avoid these types of findings in the future. I also want you to know that I have, and will continue to, identify employees who violate College policy and discipline them as appropriate. Again, thank you and your staff for your assistance and support.

If you have any questions, please do not hesitate to contact me.

Sincerely,

J. Douglas Chambers

JDC:jw

Attachments



**INGRAM STATE TECHNICAL COLLEGE**

*Ingram*
*State*
*Technical*
*College*

• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

January 25, 2006

Dr. Roy W. Johnson, Chancellor
Alabama Dept. of Postsecondary Education
Post Office Box 302130
Montgomery, Alabama 36130-4330

Dear Dr. Johnson,

This correspondence is being sent to request a meeting as soon as possible with you, Dean Monica Greene, and me to discuss what I consider a very serious problem at the college. It has become very clear to me that all of my efforts to bring about a positive resolution, without creating a negative working atmosphere, have failed. It is imperative that we have this meeting as soon as possible.

Thank you.

Sincerely,

J. Douglas Chambers
President

JDC:jw

cc:     Dean Monica Greene


**DEFENDANT'S EXHIBIT**
*15-Greene*

Rx Date/Time        FEB-13-2006(MON) 08:06          334 242 0214                        P 001
FEB-13-2006·08:06  FROM:POSTSECONDARY ED. 334-242-0214            TO:INGRAM STATE TC     P:1/1



# ALABAMA
# DEPARTMENT OF
# POSTSECONDARY EDUCATION

## *Representing Alabama's Public Two-Year College System*

| STATE BOARD OF EDUCATION | Governor Bob Riley President | Randy McKinney District 1 | Betty Peters District 2 | Stephanie Bell District 3 | Ethel H. Hall District 4 | Ella B. Bell District 5 | David F. Byers, Jr. District 6 | Sandra Ray District 7 Vice President | Mary Jane Ca; District 8 |
|---|---|---|---|---|---|---|---|---|---|

February 10, 2006

Dr. J. Douglas Chambers, President
J.F. Ingram State Technical College
Post Office Box 220350
Deatsville, Alabama 36022

Dear President Chambers:

I am aware of continuing weaknesses that exist in the business office. Next week we will have an opportunity to visit when the presidents are here to work with the legislators on the Education Trust Fund budget. Let's make time to talk about the problems and potential solutions. I believe you and I should discuss these options before we meet with the business dean.

Sincerely,

Roy W. Johnson
Chancellor

gs

DEFENDANT'S
EXHIBIT
16-Greene



# ALABAMA
# DEPARTMENT OF
# POSTSECONDARY EDUCATION

---

## *Representing Alabama's Public Two-Year College System*

| STATE BOARD OF EDUCATION | Governor Bob Riley President | Randy McKinney District 1 | Betty Peters District 2 | Stephanie Bell District 3 | Ethel H Hall District 4 | Ella B. Bell District 5 | David F. Byers, Jr. District 6 | Sandra Ray District 7 Vice President | Mary Jane Caylor District 8 |
|---|---|---|---|---|---|---|---|---|---|

June 6, 2006

Dr. J. Douglas Chambers, President
J.F. Ingram State Technical College
Post Office Box 220350
Deatsville, Alabama 36022

**FAXED**
6/6/06

Dear President Chambers:

      I have received your letter relative to the evaluations of members of your staff at Ingram State Technical College. In respect to Mrs. Monica Greene, I believe it would be more appropriate if her evaluation was completed by Dr. Joanne Jordan. I have also asked Dr. Jordan to do a comprehensive review of the business office to determine if it operates in an efficient and effective manner. At Mrs. Greene's request I have sought to find her other positions within our System. She has declined two opportunities to move to a different college.

      I have discussed with you and Mrs. Greene her failure to pay college bills in a timely manner and her failure to fully automate the functions in the business office. You should make available to Dr. Jordan all information necessary to provide the most thorough review and best recommendations possible to improve the overall operations of the business office. Our goal in this review is to provide an independent and unbiased view of her performance and to improve the overall operations of the business office. Dr. Jordan brings a wealth of experience and knowledge, and both you and Mrs. Greene can count on her to provide a fair and accurate assessment. Each of you should cooperate fully with her and view her role as part of the overall professional development needed to alleviate the longstanding problems you have identified in the business office.

Respectfully,

Roy W. Johnson
Chancellor

gs
c:    Ms. Debbie Dahl
      Mrs. Monica Greene
      Dr. Joanne Jordan

---

Roy W. Johnson, Chancellor    Post Office Box 302130    Montgomery, Alabama 36130-2130    (334) 242-2900    Fax (334) 242-2888

401 Adams Avenue  Montgomery, Alabama 36104-4340    Internet Address: http://www.acs.cc.al.us

DEFENDANT'S EXHIBIT
17- Greene



**INGRAM STATE TECHNICAL COLLEGE**

*Ingram*
*State*
*Technical*
*College*

• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

**MEMORANDUM**

**TO:**        Cabinet

**FROM:**    J. Douglas Chambers, President

*J. Douglas Chambers*

**RE:**        Tardiness Reports

**DATE:**    January 9, 2006

Please be advised that your three month tardiness report for the Fall term (September through December) is past due. I would like to have this by Friday, January 20th. Your report should also include any tardiness on your own behalf. If you have any questions, please contact me.

JDC:jw

P.O. Box 220350 • Deatsville, Alabama 36022
Phone: 334-285-5177 • Fax: 334-285-5328



*18 - Greene*



*Ingram*
*State*
*Technical*
*College*
**ISTC**
• *Developing Responsible Citizens* •

# INGRAM STATE TECHNICAL COLLEGE

January 19, 2006

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

MEMORANDUM

TO:        J. Douglas Chambers
           President

FROM:      Monica J. Greene    *Monica*
           Dean of Fiscal Affairs

RE:        Time Card Review

This correspondence is written to notify you that I have reviewed the time cards for the business office, as requested in your memorandum, and have not found any patterns of tardiness or absenteeism. Any previous patterns that were identified have improved. All appropriate leave forms have been documented for any occasional leave time that is taken. This particular time frame that is addressed in your memorandum is the busiest time for my staff and they all have worked many additional hours and certainly have not shorted the college of any leave time. In fact, they all have compensatory time on the record that they have not exhausted. I do not see any problems on their time cards.

I have also reviewed my time cards for this time period as requested by you. I have submitted all appropriate leave forms for any time that I needed to be away from the college for personal reasons. I take my responsibility as a dean very seriously and especially the part about being on call 24 hours a day. I abide by this and work any hours that I need to whether it is on Saturdays or Sundays or late in the evenings. I am in no way taking any time that I would owe to this college. I will continue to monitor any leave time that I feel is a problem for any future time periods. Please let me know if you have any questions.

P.O. Box 220350 • Deatsville, Alabama 36022
Phone: 334-285-5177 • Fax: 334-285-2521



DEFENDANT'S
EXHIBIT

19- Greene



**INGRAM STATE TECHNICAL COLLEGE**

*Ingram*
*State*
*Technical*
*College*

ISTC
• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

**MEMORANDUM**

**TO:**     Dean Monica Greene

**FROM:**     J. Douglas Chambers, President

*J. Douglas Chambers*

**RE:**     Tardiness Report Response

**DATE:**     January 23, 2006

Please note that your response was reviewed by me in the usual manner. I am somewhat puzzled as to why your response detailed things that were not required or expected. We discussed the uniformed way in which all Deans/Directors were to make reports. Your response by no way reflected what was asked of you.

I suggest that you review your response and ask yourself whether or not your report was in line with what we agreed to do. Please consider the following:

1.     You stated that you have submitted all appropriate leave forms. Other employees who were late did the same thing.

2.     You stated that you take your responsibility as a dean very serious. What does this have to do with the tardy report?

3.     You stated that you were in no way taking any time that you would owe to this college. Who said or indicated that you were taking time from the college?

4.     You stated that the particular time frame that is addressed is the busiest time for your staff and they all have worked many additional hours and certainly have not shorted the college of any leave time. I approved for staff to earn compensatory time per your request. Who said that they were shorting the college of any leave time? The tardy report has nothing to do with earning compensatory time unless you allowed them to adjust their normal schedules or have a flex schedule. Since I did not approve an

*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-5328*



**DEFENDANT'S EXHIBIT**

*20-Greene*

Memorandum to Dean Greene
Page 2 of 2
January 23, 2006

adjusted or flex schedule, it would be safe to expect that the regular tardy report would include them also.

Finally, I suggest that you refrain from expanding on tasks given to you and other Deans.  They responded in the manner that we agreed on, and I suggest that you do the same.  If you have something on your mind, or a problem that needs resolving, please contact me as soon as possible.

JDC:jw



Ingram
State
Technical
College

**ISTC**
• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

## MEMORANDUM

**TO:**      Dean Monica Greene

**FROM:**   J. Douglas Chambers, President

*J. Douglas Chambers*

**RE:**      Correspondence of January 23, 2006

**DATE:**   January 25, 2006

Please be advised that effective immediately, I am directing that all future communications between the two of us be in the form of a written document. It has become clear to me that my meetings and discussions with you have been misinterpreted, unclear, confusing, or intentionally translated for reasons unknown to me.

I regret that our efforts have failed. I hope that this procedure will help both of us to have a better understanding of what was said, and how it was said.

JDC:jw

*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-5328*

**DEFENDANT'S EXHIBIT**

*21-Greene*



**INGRAM STATE TECHNICAL COLLEGE**

• Developing Responsible Citizens •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

<u>**MEMORANDUM**</u>

TO:         Dean Huffstutler
            Dean Greene

FROM:       J. Douglas Chambers
            President

RE:         Completion Process

DATE:       November 19, 2002

This correspondence is being sent to "once again" request that you develop a clear and precise procedure to put closure and completion to work responsibilities. I am very much displeased, as well as, disappointed that I have to continuously meet with you to argue the point that you are not doing your work. I also find it difficult to understand why it is so hard for the two of you to work on assignments/projects, complete them, and bring positive closure. I am embarrassed that I have to discuss and resolve matters with customers that you either failed to do follow-up, or complete. I expect for the two of you to work together. I am directing that you do it, and do it now. My personal assessment clearly indicates to me that the Dean of the College and the Dean of Fiscal Affairs are worlds apart when it comes to dealing with instructors and customers. When you both tell me that you can't do anything with the problem employees, but you refuse to recommend discipline, we have a serious problem. I strongly request that you take a serious look at your job responsibilities and decide whether or not you are providing appropriate leadership to your subordinates, as well as the college.

*P.O. Box 220350 • Deatsville, Alabama 36022*

*Phone: 334-285-5177 • Fax: 334-285-5328*



DEFENDANT'S
EXHIBIT

22 - Greene

Dean Huffstutler
Dean Greene
November 19, 2002
Page 2


Although, I have made hundreds of suggestions and recommendations, I am still available to assist you in resolving this most serious matter.

JDC/dlm

cc:    Dean Wilson
       Dr. Merk
       Kay Perryman
       Gene Bridgman



Ingram
State
Technical
College

**ISTC**

• Developing Responsible Citizens •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

MEMORANDUM

TO:        Monica Greene
           Dean of Fiscal Affairs

FROM:      James T. Merk, Ed.D
           Dean of Instruction

RE:        Requisitions (Dated 5/23 & 12/12 2005)

DATE:      January 19, 2006

This correspondence is being sent as a request for status on requisitions I have submitted to your office. At this time, I am especially interested in requisitions from Wendell Bails and Woody Chisum for an Oxyacetylene torch set, air tools, electric buffer and paint gun. Mr. Chisum and Mr. Bails depend almost totally on live work to teach practical aspects Auto Body Repair.

Please expedite this request.

JTM/sc

attachments

cc:     President Chambers

*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-5328*



23 - Greene



**INGRAM STATE TECHNICAL COLLEGE**

*Ingram
State
Technical
College*

• *Developing Responsible Citizens* •

January 18, 2006

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

MEMORANDUM

TO:       Monica Greene
          Dean of Fiscal Affairs

FROM:     James T. Merk, Ed.D
          Dean of Instruction

RE:       RE:  Requisitions (Dated November 17, 2005)

This correspondence is being sent as a request for status on requisitions I have submitted to your office.  At this time, I am especially interested in a requisition from Frank Clem for a large-screen television and peripheral computer equipment to drive it.  Mr. Clem has most, if not all, of his lessons on his computer and it is not possible for him to present them to large numbers of students in his classroom.

Please expedite this request.

JTM/ept

attachments

cc:    President Chambers

*P.O. Box 220350  •  Deatsville, Alabama 36022*
*Phone: 334-285-5177  •  Fax: 334-285-2521*



**DEFENDANT'S EXHIBIT**

24-Greene



# INGRAM STATE TECHNICAL COLLEGE

*Ingram*
*State*
*Technical*
*College*
■ *Developing Responsible Citizens* ■

November 17, 2005

**J. Douglas Chambers**
President

MEMORANDUM

**Rickey A. Huffstutler, Ph.D**
Dean of the College

TO:        Monica Greene
           Dean of Fiscal Affairs

FROM:      *[signature]* James T. Merk, Ed.D
           Dean of Instruction

**Monica J. Greene**
Dean of
Fiscal Affairs

RE:        Requisitions

**James E. Wilson**
Dean of Students
and Support Services

   This correspondence is being sent as a request for status on requisitions I have submitted to your office. The requisitions concern the MIS Department, Personnel, but most importantly, the instructional division.

   In visiting shops on all three campuses, I have seen students idle. When I ask for the reason, I am told that there are limited live work activities because of the lack of supplies. I understand that we have switched fiscal years, performed close outs, had an audit, and are about to began a new audit. However, the real work of this institution is providing our students with learning experiences.

   Please help me make this possible by expediting all purchase requests. If you should have any questions concerning any of the material and/or equipment that my departments have requested, contact me and I will provide answers.

cc: President Chambers

*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-2521*



DEFENDANT'S
EXHIBIT

*25-Greene*





**INGRAM STATE TECHNICAL COLLEGE**

Ingram
State
Technical
College

MEMORANDUM

" Developing Responsible Citizens "

TO:        Mrs. Monica Greene
           Dean of Fiscal Affairs

FROM:      James T. Merk, Ed.D
           Dean of Instruction

RE:        Requisitions Not Processed

DATE:      December 14, 2006

Attached are requisitions dating back to September 11, 2006 which have
not yet been processed. I believe that there is money in each of these
program accounts to purchase items requested. If this is not the case,
please let me know or if are any other problems with these accounts,
please advise.

JTM/sc

cc:    President Chambers
       Dean Wilson



DEFENDANT'S
EXHIBIT
26- Greene



*Ingram*
*State*
*Technical*
*College*

**JSTC**

• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

January 4, 2000

## <u>MEMORANDUM</u>

TO:     Mrs. Monica J. Greene
            Dean of Fiscal Affairs

FROM:    Dr. Rickey A. Huffstutler
            Dean of the College

SUBJECT:   Computer Bids

This memorandum is a follow-up to our conversation this morning. On December 14, 1999, I sent you a memorandum concerning the bidding of microcomputers for use in the computer labs on each of the three campuses. I included a complete set of bid specifications and bid sheets for vendor response and requested that the bid opening date be set for January 7, 2000.

The computers are needed to meet the needs of the instructional program for teaching the required computer classes for Spring Semester. Additionally, they will be used for admission testing as required by the Department of Postsecondary Education. The expenditures for this equipment were approved in the Carl Perkins application and the ARC application.

When I inquired about the bids you informed me that you had intended to process the bids request before you took leave but were unable to get them done. You indicated that you would complete the process as soon as possible. My concern is two fold:

    1.  The delay will cause additional delays in implementing the testing center process and delay student access to instructional tools necessary for their classes.

*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-5328*



27- Greene

Mrs. Monica J. Greene
January 4, 2000
Page 2

2. Your lack of communications with me to inform me of the status of the process. If I had known that the bids were not sent out prior to your taking leave, I could have assisted your staff in completing the process in your absence. This would seem reasonable considering the fact that you would be here for the bid opening and awarding the bid.

Please notify me as to the bid opening date that you establish when sending the bids out. Your immediate attention to this process is appreciated.

RAH/dlm

cc:    Mr. J. Douglas Chambers