# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **JULIE GIVENS and** | ) | |
| **MONICA GREENE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CV 2:06 CV852-1D** |
| | ) | |
| **DOUGLAS CHAMBERS,** | ) | |
| **Individually and in his capacity** | ) | |
| **As President of INGRAM STATE** | ) | |
| **TECHNICAL COLLEGE; JAMES** | ) | |
| **WILSON, Individually and in his** | ) | |
| **Capacity as Dean of Students of** | ) | |
| **INGRAM STATE TECHNICAL** | ) | |
| **COLLEGE** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MOTION FOR SUMMARY JUDGMENT</u>

ATTACHMENTS TO PREVIOUSLY FILED MOTION FOR SUMMARY
JUDGMENT

**Date:**   5/10/2006

**To:**   Monica Greene, Dean of Fiscal Affairs

**From:**   Kay D. Perryman

**RE:**   office furniture/supplies

---

I am writing in regards to the status of my office furniture and supplies. I am in desperate need of the requested items as my job requirements cannot be met without them. If there are problems with anything that I have requested to be purchased for the set-up of my department then could we please find a resolution immediately? Please let me know if there is anything I can do to expedite the process. I request a meeting with you tomorrow, 5/11/06, at your convenience so we may discuss this matter and work out the necessary details. Thank you in advance for your cooperation.


kp/kp

*Pres. copy*



**DEFENDANT'S EXHIBIT**

28 - Greene

May 12, 2006

To:    File

From:  Kay Perryman
       Dean of Strategic Planning and Evaluation

This correspondence is being typed for the record. On May 12, 2006, I received a message on my cell phone from Tracey at McCracken Office Supplies. The message stated that she needed to get in touch with me to check numbers on items she had received on an order earlier that morning. I was not in my office so I contacted Erica Turner and ask her to contact Tracey. Erica contacted her and two items had to be replaced because they had been discontinued.

On May 15, 2006, I contacted Tracey to inquire if this was the first time she had received an order from J. F. Ingram for me (Kay Perryman specifically this order) and she stated "yes, she received the order for the first time on the morning of May 12, 2006. The order was prepared and approved in Dr. Merk's office on 3/21/06. I sent Dean Greene a memo on May 10, 2006, requesting a status report on my supplies and furniture. It should be noted that she did not process this order until I sent the status request. It should also be noted that this is the first supplies that I have received. I have been purchasing my own and borrowing from the main office at Tutwiler.



DEFENDANT'S EXHIBIT

29-Greene

Rx Date/Time    MAY-30-2006(TUE) 10:01           PERRYMAN                    P 002
MAY-30-2006(TUE) 08:58    PERRYMAN               (FAX)334 567 0189           P 002/002

**Date:** 5/30/06

**To:** Monica Greene, Dean of Physical Affairs

**From:** Kay D. Perryman

**RE:** supply status

---

I would like to thank you for your attention in assuring the delivery of some of my office supplies. I require your help in ascertaining the status of the supplies that have not been delivered so that I may determine next year's annual budget expeditiously. This is pertinent to calculate the resources needed for my annual budget. As with the starting/developing of any new department, cost is considerably higher and this must be taken into consideration for next year's annual budget. Below is an itemized list of remaining supplies that I need to have to perform my duties efficiently:

- Copier with Fax capabilities

- Black lateral file cabinets (2)

- Black fireproof lateral file cabinet (1)

- LCD projector with screen

- TV/DVD/VCR with cord hiding system

- Office furniture, including an executive desk, credenza, hutch, two drawer lateral file cabinets, all chairs for the conference table, offices, kitchen area and waiting area and mats for roller chairs (total of 3)

- Large round trash can (free small one came with it) Target

- Wall clock

- 2 Removable discs for E drive

- Supplies ordered from Office Depot

I realize the budget request forms were due in your office by last Friday, which is why I attempted to contact you on several occasions for clarification on the above items as well as questions about the budget. It was imperative the calls be returned so that I could have finished my budget plan on time. Please note I have attempted to work with you in setting up my office and I still do not have the essentials necessary to carry out my job duties. I attempted to avoid this recourse from the beginning but you leave me no alternative at this point but to go to a higher level.

kp/kp





**INGRAM STATE TECHNICAL COLLEGE**

*Ingram*
*State*
*Technical*
*College*

• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

May 30, 2006

MEMORANDUM

TO:        Mrs. Kay D. Perryman

FROM:    Mrs. Monica J. Greene, Dean of Fiscal Affairs *Monica*

RE:        Supply Status

Your welcome!  My department does try hard to meet all necessary requests.
However, as to your request for the items that you are concerned with such
as:

- Copier with fax capabilities – I believe you can utilize these at
  Tutwiler's main office- no requisition
- (2) Black lateral file cabinets-no requisition
- Black fireproof lateral  cabinet-no requisition
- LCD projector with screen-seeking funds
- TV/DVD/VCR  with cord hiding system-seeking funds
- Office furniture –seeking funds- can use used furniture until funds
  are found
- Large round trash can (Target) with small free one-any trash can
  will do- we are not opening an account with Target for a trash can-
  Why did you not order this from Quill?
- Wall clock- Why was it not ordered from Quill?-no requisition
- 2 Removeable discs for E drive- Why were they not ordered with
  your computer? No requisition
- Supplies ordered from Office Depot- Order has been faxed after
  locating funds for this

In regards to your comments concerning my non-communication of your
budget request for the new year, there was no reason for us to be in contact
about this matter.  Budget request forms are completed and submitted by all
employees, once these forms have been turned in to my office, they are
reviewed and a determination is made as to whether the requested items are
necessary and the costs are  justified and within the college's overall budget
constraints.  Budget request forms are essentially a wish list for employees
and all things requested may or may not be approved.  It all depends on the
funding that is available.

*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-5328*



*31- Greene*

You also stated, "That you felt compelled to take your concerns to a higher level." Please be informed that I have had more than one conversation with Mr. Chambers concerning your purchase requisitions for the current year. I explained to Mr. Chambers that only your salary and benefits are currently covered by a budget and that there are no budget operating line items for any of the additional items you have requested. As you know we have spent several thousand dollars renovating your work area and ordering you a new computer, printer, and many office supplies.

As far as your other requests, Mr. Chambers told me to scrutinize each requisition and ensure that funds are available to cover the anticipated expenditure amounts and that the items are not excessive. I followed through with his instructions concerning your requests and I have not found the funds for these items yet. As soon as I find the funds I will begin ordering what the college can afford.

Please note, my position with the college is that of the Dean of Fiscal Affairs not the Dean of Physical Affairs.

MJG/jkg

cc:  J. Douglas Chambers, President

May 31, 2006

MEMORANDUM

TO:        Monica Greene
           Dean of Fiscal Affairs

FROM:     Kay D. Perryman
           Dean of Strategic Planning and Evaluation

Re:         Memo dated May 30, 2006

I would like to respond to your memo concerning my supplies and office set up. First, I was not aware that there were problems concerning my requisitions. I was also not aware that there were not requisitions for certain items that I had been eagerly expecting to complete the set up of my office. This could have easily been resolved if you had communicated with me concerning items I wished to purchase for the current year. You and your office were aware that all the requisitions for my office set up were prepared and approved in Dr. Merk's office. If you had a question, and you could not talk to me, you certainly could have talked to Dr. Merk. I was very surprised that you were communicating with President Chambers and had not communicated with me.

Secondly, as for the items on my list:
- I ask you if I needed a budget before I began planning for my office. You said "no".
- Copier - You told me you would handle the copier for me. You even stated you would probably get one similar to the one at Life Tech and add it to the college contract. You never indicated I needed to do a requisition. It is not feasible for me to use the one at Tutwiler in my job capacity.
- File Cabinets- I was unaware there was not a requisition. All of my requisitions go through Dr. Merk's Office. You could have checked with him and he could have provided you with the proper paperwork.
- Office furniture – I asked you if I should order or have it made by the school. You told me to order because it would arrive in a few weeks. A requisition for office furniture was prepared on February 3, 2006. By accident, I found out that the first order was discontinued. Your office did not notify me. I just happen to notice the numbers on a shipping order (May 2), and compared them to my requisitions. I promptly did a new requisition for furniture the same day. You have never communicated to me that I should round up used furniture.
- Target – I requisitioned chairs from overstock and by the time the chairs were ordered they were not available. I was told by your office (Jenna



DEFENDANT'S
EXHIBIT

32 - Greene

Givens) to find replacements. I found chairs at a cheaper price at Target. You and I discussed the fact that you were going to open an account at Target and Coleman could pick them up. I added the trash cans to the order. We discussed the trash cans also. You even said you would like to have the same trash cans for your home. Your statement that I was asking the school to open an account for trash cans was inaccurate.

- Wall clock - I was unaware it was not included on one of the requisitions. It was a typing error, if it was left off. I have submitted a requisition.
- Removable disc – MIS and Dr. Merk ordered my computer and additional equipment. I was told the disk would be ordered. Again, a simple check with Dr. Merk could have resolved this issue.
- Office Depot – If you were waiting on the securing of funds, why did you not call me and inform me?

Lastly, I contacted you about the budget, because I am still trying to learn how the process works. I was not aware that a budget was a wish list. I thought a budget was developed based on what is needed to perform one's job for a year. Who decides what is approved and whether there is adequate funding? I am even more confused now. I thought it was a team effort, with the President making the final decision.

Please note for the record that I sent my memo to you. I had not involved the other Deans or the President in this matter, because I thought you and I had a good working relationship. I have tried to work together with you. I would have been glad to sit down with you and discuss any of the above matters. Not once have you attempted to contact me and tell me there were no funds, I could not get something, or had I thought about ordering a certain item for my office setup. I would have appreciated the help. It is obvious to me there is a serious problem with our communication and working relationship.

If there is anything else I need to do to expedite the completion of my office set up, I ask that you contact me directly so that I can see that it is completed.

cc:  Dr. J. Douglas Chambers, President
     Dr. Jim Merk, Dean of Instruction



**INGRAM STATE TECHNICAL COLLEGE**

*Ingram*
*State*
*Technical*
*College*

**ISTC**
• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

**MEMORANDUM**

**TO:**     Dean Monica Greene

**FROM:**     J. Douglas Chambers, President

*J. Douglas Chambers*

**RE:**     Perryman Requisitions

**DATE:**     May 31, 2006

Please be advised that I have reviewed your correspondence to Dean Perryman referencing her "supply status." I want you to know that your recollection of what we discussed is very different from what Dr. Merk and I recall. I clearly asked you to investigate if the purchases could be purchased at lower prices, or if you could find better products to do the same things. We never once discussed anything about finding or securing funds. I stated to you more than once that the Chancellor told me and Dr. Merk not to "nickel and dime the DPE and to set her up from our funds." You never stated that we did not have the funds, and you never mentioned that you had to seek or secure funds for her purchases. I also directed that you and Dr. Merk meet with Dean Perryman to review each request and decide what would be purchased, changed, adjusted and/or eliminated.

Per this communication, I am directing that the items requested by Dean Perryman be purchased without delay. Once these items have been purchased and received, please provide me copies of the invoices and requisitions.

JDC:jw

*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-5328*

**DEFENDANT'S EXHIBIT**
*33-Greene*



Ingram
State
Technical
College

• Developing Responsible Citizens •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

## MEMORANDUM

**TO:**       J. Douglas Chambers, President

**FROM:**    Dr. Jim Merk

**RE:**       Response to Memo

**DATE:**     6/2/2006

This correspondence is being sent in response to your memo dated May 31, 2006. During a meeting with Dean Greene and me concerning other matters, Dean Greene showed you purchase requests and other records relative to Dean Perryman's office setup. To my recollection, Dean Greene stated that she thought that the prices were excessive and totaled over $20,000. She said that many of the items were being requested a second time by Dean Perryman because the original supplier no longer stocked them. She pointed out those items in the second request cost more than in the first request. She stated that the printer that had been requested cost more than other printers recently purchased by the college. I told you and Dean Greene, that given the type of reports Dean Perryman was expected to produce, the cost of the printer was justified. You commented that the new vehicle you now drive uses way more fuel that your previous one but that the expense is valid. You directed Dean Greene and me to meet with Dean Perryman to validate her requests and, if possible, find substitutes that were less expensive. You said that she should satisfy herself Dean Perryman's expenses were reasonable and justified to be ready to confront rumors to the contrary. You told her that in a recent meeting which you and I attended, Chancellor Johnson said that the State Department of Education was already paying Dean Perryman's salary and benefits and that you were not to nickel and dime the Department to death setting up her office and that Ingram would do it.

JTM:jw

*P.O. Box 220350  •  Deatsville, Alabama 36022*
*Phone: 334-285-5177  •  Fax: 334-285-5328*



*34- Greene*



## INGRAM STATE TECHNICAL COLLEGE

June 2, 2006

*Received on June 7, 2006*

*Joe*

*Ingram*
*State*
*Technical*
*College*
• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

MEMORANDUM

TO:        J. Douglas Chambers
           President

FROM:      Monica J. Greene  *Monica*
           Dean of Fiscal Affairs

RE:        Perryman Requisitions

This correspondence is written to inform you that I have complied with your directive concerning the purchasing of Mrs. Perryman's supplies and equipment. You have every right to order me to do so as the President of this institution. I regret that we cannot agree as to what was discussed concerning this matter. There has always been the question of securing funds for these purchases due to the fact that we acquired Mrs. Perryman after the fiscal year had begun, therefore, there were no funds budgeted for her. I had expressed this concern on more than one occasion and I had made the statement that I would have to take the funds from other areas of the college. You had also told me to use my judgment on these requisitions so as to make sure that they were in line with other purchases of the college. This is what I was doing, along with looking for areas that I could take the requested items from without causing a hardship to the college or to any designated program area. Mrs. Perryman's purchases must come from the administrative line item in the budget because of her position at the college. There are not a lot of line items to pull from in the administrative area. They are all basically budgeted out to the extent as they are needed. In other words, there is not any "fluff " or "pork" areas in the administrative area, which makes it hard to find any money that was not budgeted initially.

At the time that Mrs. Perryman wrote her memorandum, I had ordered the items that she had requested that were not a problem to pull from the office supply line item. Quite frankly, several of the items that had not been ordered yet, in my professional opinion, could be viewed as a misuse of public funds. However, that is only my business opinion and does not supersede in any way, your right to make decisions as my boss. I was trying to figure out how to get



DEFENDANT'S
EXHIBIT

*35 - Greene*

these items without taking funds away from a department that had legitimate requests.

Mr. Chambers, I was trying to do my job as the financial person at this college. I take the money spent at this college very serious because that is my job. If you will recall, you sent a memorandum out to all administrators, dated May 2, 2006, asking us to look at "spending patterns, as well as methods and procedures utilized by our staffs, to see if we can better conserve funds without cutting back on services." You addressed energy concerns but you also addressed any other areas of the college. I was trying to abide by this also.

Personally, I think Mrs. Perryman's requests were too excessive to ask the college to pick up mid way through the year. I had mentioned to you that I was concerned about the items that she was ordering because she was used to having a lot of money to spend in the special education program and the college did not have the extra money to fund all that she had asked for. I just wanted to explain my reasoning on this matter, but, I have done what you asked me to do.

There is one other matter you addressed that does concern me some. I do not consider Jim Merk an unbiased witness to any decisions or discussions. I ,therefore, respectfully request in future meetings that I be allowed to bring Ms. Patti Graves in for verification of what is discussed. Thank you.

Customer Complaint

DEFENDANT'S
EXHIBIT

36 - Greene

*10/31/06*

*J.W – file with*
*Spec. Notebook*
*Joe*

2920 Lakeview Ct.
Millbrook, AL 36054
October 19, 2006

J. Douglas Chambers, President
Ingram State Technical College
P.O. Box 220350
Deatsville, AL 36022

Dear President Chambers:

I left J. F. Ingram Trade School on the morning of Wednesday, October 18, 2006, feeling as though I were a criminal who was the victim of a premeditated vicious attack. That morning, I was subjected to the most mean spirited and unprofessional treatment I ever experienced and it is described as follows:

I arrived at the school at approximately 10:20 to see Ms. Monica Greene regarding a routine request to have the welding shop fabricate one piece of metal for my fireplace.

I was told that Ms. Greene was in a meeting and I was asked to have a seat. After a time an unfriendly woman approached me in the receptionist area and made this exact quote, "you are *banned* from here."

I was in shock because, due to my ethical and moral character, I have never been told I was *banned* from anywhere! I asked her what she meant that I was *banned* She replied that I had received a letter stating that fact. I emphatically told her that I had not! She then told me, "yes you have, you received a letter saying you were *banned* and you were allowed to purchase a grill after the letter." I then informed her that I did not receive a letter stating that fact, I do not lie and would not lie for all the grills on that campus! She left and returned with a letter I had received. (Copy attached) There is no mention of the word *ban* in the letter!

A history of this letter, dated August 23, 2005, relates to the fact that, during a time of extreme stress, I removed a trailer from the campus without paying a $46.15 balance. When I received the letter from Ms. Green, I immediately called her. I apologized for any problems I had caused her regarding the matter and that I thought the balance was paid in full when I took the trailer. I immediately went to the school and paid the $46.15. I also went to Ms. Greene's office and apologized for my mistake. Our meeting (*first meeting after her letter*) was cordial and there was no mention my being *banned.*

I returned to see Ms. Greene in November of 2005 (*second meeting after her letter*), regarding a request for the school to make a grill for me. She informed me that the welding shop was not taking any new orders at the time, but there was an inventory of pre-made grills from which I could choose. She walked with me to the back of the

welding school in order for me to choose a grill. I purchased one, with her assistance. <u>During the entire time I was with her, Ms. Greene was again cordial and did not say a word regarding my being <em>banned</em> from the school. If at any time I was made aware of a <em>ban</em>, I would have then asked to speak to someone with authority over Ms. Greene. I also would not have wasted my time and gas in order to be treated with such inconsideration in front of four individuals.)</u>

After I received the first unanticipated harsh message from one of Ms. Greenes' assistants, another assistant came to me and also told me that I was <em>banned</em>. I told her that I wanted to speak to Ms. Greene.

After a time Ms. Greene appeared at the receptionist counter. (She was not professional enough to invite me to her office.) I was subjected to her negative and degrading comments at the receptionist counter in the presence of three other women.

She not only told me she would not approve the welding work, but also informed me that I was the first person ever <em>banned</em>. <u>She accused me of going into the shop areas and taking items without paying for them.</u> She further stated that she had been able to make (accounting) adjustments to deal with those loses (thefts). <u>I informed her that I have never taken anything from any of the areas, without paying, except for the $46.15</u>!

She stated that she had given the instructors letters directing them to not permit me in their areas. (This statement further supports the accusation she made regarding my stealing.) I told her that in the past I have, on several occasions, gone back to speak to instructors, such as Mr. Wade, because they are friends. (Most conversations with instructors related to their answering questions regarding work that I was requesting.) <u>She then sarcastically told me that Mr. Wade could weld the part for me at his off campus welding business!</u>

I asked Ms. Greene how long her imposed <em>ban</em> was going to last. She informed me that I could come see her in another year and the matter would be discussed at that time.

 I request that someone in authority provide written assurance to me that myself or no other qualified Alabama taxpayer will never be subjected to such mean-spirited and unprofessional treatment. I also request that this letter includes assurance that her imposed <em>ban</em> on me is declared null and void.

I look forward to your favorable response regarding this matter.

Sincerely,


J. Robert Camp

Attachment: 1



*Ingram*
*State*
*Technical*
*College*
Developing Responsible Citizens

INGRAM STATE TECHNICAL COLLEGE

August 23, 2005

J. Douglas Chambers
President

Mickey A. Huffstutler, Ph.D.
Dean of the College

Monica J. Greene
Dean of
Fiscal Affairs

James E. Wilson
Dean of Students
and Support Services

Mr. Bob Camp
2920 Lakeview Court
Millbrook, AL    36054

Dear Mr. Camp:

This correspondence is written to notify you that you are
in violation of State of Alabama Board Policy #710.02,
Live Work. You picked up a trailer from the college on
7/20/05 and left the premises without paying the balance
of your invoice. The amount owed the college is $46.15.
I would appreciate your immediate attention to this matter
to avoid further action by the college.

Sincerely,

Monica J. Greene
Dean of Fiscal Affairs

August 18, 2005

MEMORANDUM

TO:          All Live Work Instructors

FROM:        Monica J. Greene
             Dean of Fiscal Affairs

RE:          Live Work Customer

This correspondence is written to inform you that at the
present time, no live work is to be performed for Mr. Bob
Camp. If Mr. Camp comes to your shop areas do not
allow him to leave any items and do not prepare an
estimate for him. You are directed to send him to see me.
I will let you know when this ban is lifted, but until further
notice this directive is to be followed. Thank you for your
immediate attention to this matter.

cc: J. Douglas Chambers
     James Merk
     Fiscal Staff

June 25, 2006

8619 Huntingdon Ridge Court
Montgomery, Alabama 36117

To Whom It May Concern:

This letter is to inform you of an issue I encountered with employees of J.F. Ingram
Technical College. The employee to whom I refer to is Mrs. Monica Green and an
auditor named Patty. On June 22, 2006, I attempted to place an order for woodwork at
the college. At which time, I spoke with the receptionist who informed me that she could
not help me with my order, but she proceeded to get someone that could. Momentarily,
the receptionist returned followed by Monica Green. Mrs. Green greeted me with "You
are a problem." I asked, "Mrs. Green, in what manner was I a problem?" She was
invasive, rude, loud, and twisted the situation with her truth. I acknowledged her
statements, by letting her know those were not my words. After this first verbal
confrontation, she walked off to retrieve her documentation. Needless to say she returned
with no documentation that she was adamant that she had. However, she returned with
an Auditor. During her absent I asked the receptionist to speak with Mr. James Wilson.

Strangely enough the Auditor began to explain her job description. I listened to her
explain her job position and then repeated my initial questions to both she and Mrs.
Green, "What is the problem you have with me?" "What have I done wrong?" "Do I owe
you any money?" I also repeatedly apologized for any wrongdoing and asked what do I
need to do to resolve any issues? Neither of the two could answer these questions. After
several attempts for an answer Ms. Green explained, that she would have to get with
someone else to determine the problem she has with me. For some bizarre reason she
inquired into my personal relationship. Then, Ms. Green accused me of attempting to
make a purchase for Alabama State University. She implied that I worked for Alabama
State University on a full-time basis. I corrected her stating I am employed by the
Montgomery County Board of Education.



DEFENDANT'S
EXHIBIT

37- Sheene

Previously in the conversation, she stated "they were not accepting anymore cabinetwork until October 2007." She retracted that statement later when several of her co-workers where present. She attempted to drag innocent personnel into our conversation. One was Mr. James Wilson whom she verbally belittled in front of me (using gestures). This encounter took place in the entry in full view of other people.

Finally, I called Mrs. Monica Green on June 23, 2006 at 9:33 am. I left a message on her voice mail to call me anytime that day. I stated I would come for a conference with her person(s) that she needed to clear any problems that she had with me. As of the date of this letter, I have not heard from Mrs. Monica Green. I look forward to a response to my compliant. I thank you for your time.


Sincerely,

*Cyrenthia D. Crawford*

Cyrenthia D. Crawford


Cc: Mr. C. Ponder



*Ingram*
*State*
*Technical*
*College*

" *Developing Responsible Citizens* "

# INGRAM STATE TECHNICAL COLLEGE

## MEMORANDUM

**DATE:**          June 22, 2006

**TO:**          The Record

**FROM:**          James T. Merk, Ed.D.
                   Dean of Instruction

**RE:**          Incident with A Live Work Customer and Dean Greene

This memo is to make record of events that took place shortly after noon on June 22, 2006 at Ingram State Technical College main campus. I was notified that there was an altercation involving Mrs. Greene and a live work customer taking place at the reception desk. I walked from my office to the desk area where I saw Mrs. Greene, Mr. Wilson, Ms. Graves, and two customers. Mrs. Greene was stridently addressing a female customer. The customer told Mrs. Greene that if she owed the college anything she would pay it at that time. She also said that she had not been notified of any debt. When she asked to speak to the instructor, Mrs. Caylor—I told her that Mrs. Caylor was absent today. Mrs. Greene said that she did not need Mr. Wilson or me with her; and she could handle the situation herself. Mrs. Greene explained to the customer that she was not taking any more projects for the cabinet shop because the instructor was slow in completing them. She said that after October 1, 2006 new projects could be requested. She asked the customer for her phone number. The customer also indicated interest in having something reupholstered. The customer asked Mrs. Greene to please tell her if she had done something wrong so that she could apologize or correct the wrong. Mrs. Greene did not reply. Mr. Wilson said that it was inappropriate for a confrontation to take place in public; and, told Mrs. Greene to meet in her office. He apologized to the customer several times. The customer indicated that she would be back to talk to the instructor tomorrow. Mrs. Greene told her she did not need to come in person: a call would do. The customer said that she was coming any way because she wanted to see Dr. Chambers.

JTM/ept

*J. Douglas Chambers, President*
*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177    Fax: 334-285-2521*



**DEFENDANT'S
EXHIBIT**

38- Greene




*Ingram*
*State*
*Technical*
*College*

ISTC

* *Developing Responsible Citizens* *

# INGRAM STATE TECHNICAL COLLEGE

## MEMORANDUM

**TO:**     James E. Wilson
            Dean of Students and Support Services

**FROM:**   Loryn R. Wainwright
            Transition Clerk

**RE:**     Situation that occurred on June 22, 2006

**DATE:**   June 22, 2006

I am writing this memorandum to explain, from my point of view, the
situation between Mrs. Greene and Mrs. Crawford that occurred on June
22, 2006 at or around 11:30am.

I was asked to answer the telephones for a period of time while Beth
went to class. While I was at the front desk, answering the telephones,
Mrs. Crawford and another gentleman came into the front office and
said that they needed to have some cabinetry work done. I am not
familiar with that task, so I proceeded to get Mrs. Graves or Mrs.
Greene. Mrs. Greene came to the front and asked Mrs. Crawford what
she could help her with. When Mrs. Crawford told Mrs. Greene that she
was there for cabinetry work, Mrs. Greene told her that we were booked
up and not taking any work orders until October 1st. Mrs. Greene asked
Mrs. Crawford for her name. When Mrs. Crawford gave Mrs. Greene
her name, Mrs. Greene became very frustrated. Mrs. Greene proceeded
to tell Mrs. Crawford that she has had a problem with her in the past.
Mrs. Crawford replied, "You have never had a problem with me." Mrs.
Crawford did not say this in a rude manner. She was mainly telling
Mrs. Greene that with every job she has had done here at JFI, she has
always paid her dues and followed our regulations. Mrs. Greene
continued to get more and more frustrated with Mrs. Crawford. Mrs.
Greene told Mrs. Crawford, in a frustrated tone of voice, that she has
proof of trying to get in touch with her many of times in the past about
some work she had done in upholstery. Mrs. Crawford repeatedly tried
to tell Mrs. Greene that she did not know what she was talking about.
Mrs. Greene proceeded to her office to get the paper work showing that
she had a problem with her in the past. While gone to her office Mrs.



**DEFENDANT'S
EXHIBIT**

*39 - Greene*

Crawford asked me to call you up to the front so she could talk to him
about something irrelevant to the situation. Mrs. Greene came back to
the front desk. As she was explaining to Mrs. Crawford, in a rude
manner, the situation of having a problem with her, you came through
the door from the hallway. Mrs. Greene through her hand up and, in a
louder tone of voice, told you that she did not need you, that this did not
concern you. Mrs. Crawford then said that him walking up here had
nothing to do with what was happening. Mrs. Greene was very
frustrated at this time. She became very red in the face, talking loudly,
and pointing her finger at Mrs. Crawford.
Mrs. Graves came to the front, trying to fix the problem. Mrs. Graves
became frustrated also.
As the situation escalated into an argument, I got up from the front desk
and walked into the teacher's lounge. Mrs. Turner was sitting in the
lounge eating lunch and heard the yelling, so she went to get Mr. Merk
to tell him that he might want to go up front. As Mr. Merk approached
the front desk, Mrs. Greene, again in a rude manner, through her hand
up and said, "I don't need either of you here, I can handle this."
I continued to stay in the lounge until the situation was handled. When I
saw that everything had calmed down I came out of the lounge and was
told to go back to my work area in Student Services.
I, myself, was embarrassed of what happened. The situation was
handled in an unprofessional manner. I was very shocked at the way
Mrs. Greene and Mrs. Graves handled their selves in this situation.
I will be glad to answer any other questions you have.


Sincerely,

Loryn R. Wainwright
Transition Clerk



*Ingram*
*State*
*Technical*
*College*

**INGRAM STATE T**

June 22, 2(

* *Developing Responsible Citizens* *

M E M O R A N D U M

TO:        Dr. J. Douglas Chambers
           President

FROM:      James E. Wilson
           Dean of Students and Support Services

This memorandum is provided to inform you of an incident that took place on June 22, 2006 at approximately 12:00 noon in the reception area of the college. Earlier in the morning, June 22, 2006, Ms. Graves requested assistance from my office to cover the switchboard. I allowed Ms. Loryn Wainwright to cover the front desk. Shortly thereafter, I received a call from Ms. Wainwright at the switchboard stating that a Ms. Cyrenthia Crawford wanted to see me at the receptionist desk. When I arrived at the receptionist area to speak with Ms. Crawford, I observed a heated discussion between Mrs. Monica Greene, Ms. Patty Graves, and Ms. Crawford. The moment I arrived and approached the receptionist desk, Mrs. Greene threw up her hand in a manner as if to say, "stop"! She then stated, "She can't go through you and you don't need to be here". I then asked what seemed to be the problem. Mrs. Greene ignored my question and continued talking in a very hostile manner to Ms. Crawford explaining to her that she (Mrs. Greene) was not going to authorize any work orders until October 2006. She then went on to say that she had experienced problems with Ms. Crawford before. When Ms. Crawford asked the nature of the problems and whether or not she owed the school any money, Mrs. Greene continued to shout and shake her finger toward Ms. Crawford. At the same time, Ms. Graves was shouting that she had been an auditor and went on to explain to Ms. Crawford the role of an auditor in the two-year college system. At no time during this discussion did Mrs. Greene explain the nature of the problem or whether Ms. Crawford owed a bill. As I explained to Mrs. Greene and Ms. Graves that the matter should have been discussed in her office and not in public, Dr. Merk walked up. Mrs. Greene then turned to both Dr. Merk and I in a very rude tone and stated she did not need either Dr. Merk's or my assistance. She then stated that she had the matter under control. Mrs. Greene then asked for Ms.

*J. Douglas Chambers, President*
*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177   Fax: 334-285-2521*



W. Greene

Page-2

Crawford's name as if she didn't know her. It appeared to me that Mrs. Greene had confused Ms. Crawford with someone else. At this point, Mrs. Greene began to write down Ms. Crawford's contact information. Mrs. Greene explained to Ms. Crawford that she needed to talk to Sandy Caylor to verify the problem that she had with Ms. Crawford. Ms. Crawford asked if there was anything that she had done wrong and if so, she would apologize. Additionally, Ms. Crawford requested to come back and meet with both Ms. Caylor and the President to clarify the problem. Mrs. Greene said that it would not be necessary and that she would call her. Ms. Crawford reiterated her intentions of meeting with the president.

   In my opinion, Mrs. Greene was most unprofessional in this incident not only toward the visitor, but to Dr. Merk and me as well. I would like to discuss with you a revision of the work order process to include more authority from the instructional department.

   Additionally, I recommend Mrs. Greene be counseled regarding the proper respect that should be shown visitors as well as employees of the college.

JEW/bjo

## J. F. INGRAM STATE TECHNICAL COLLEGE

**SPECIAL SERVICES**
Rosie Edwards, Director

Post Office Box 220350
Deatsville, Alabama 36022

Phone: (334) 514-6147
Fax: (334) 514-4026

January 16, 2007

**MEMORANDUM**

To:          President Chambers

From:      Rosie Edwards
              Director, Special Services

This memorandum is written to request your assistance in resolving an issue regarding the advertisement of positions. I requested the advertisement of the Psychometrist and Coordinator of Special Services positions in the Birmingham News and the Montgomery Advertiser in December. The Personnel Department has informed me that the positions have yet to run in the Montgomery Advertiser due to the college account status. This delay in advertisement will force the extension of the application deadline for an additional two weeks in order to increase the number of applicants for the search. As well, it will delay the hiring of permanent staff in these essential positions.

Thank you in advance for your attention to this matter. If you have any questions or need additional information, please let me know.

RES/tt



# *Memorandum*

February 22, 2006

*Sent $L \times G$*

To:     Ms. Monica Greene,
        Dean of Fiscal Affairs

From:   Mr. Frank A. Clem,
        ABE Instructor

Re:     **Complaint** – Payroll Changes

I received your memo dated February 16, 2006, confirming your office's cooperation with my request to discontinue two payroll deductions. Thank you.

On the previous afternoon, during a telephone conversation with Ms. Givens concerning this matter, I was supplied with contact numbers for both companies. In pursuance of that conversation, I left a voicemail for Liberty National, but was unable to connect with AFLAC at the number supplied.

In your memo you also reminded me that, *"these type changes are to be made in August of each year"*. I am aware there is a rule, policy, guideline, or etc. that requires or suggests that payroll changes be made in August only. I feel that you have viewed my request/circumstance as an *exception* to the rule/policy, and I appreciate that.

However, I feel the communications from your office entailed an air of condescension toward me, as if you were doing me a favor, and I feel that is wrong. I did not ask for anyone to do me a favor. I requested cooperation from Ingram employees to perform the services needed by an employee of this college. I believe that any rule, policy or guideline requiring an employee to continue paying for any product they no longer need or desire, is faulty, and should be abolished or modified. I fully understand the need for a "general rule", but *exceptions* to the rule should be treated as standard operational procedures, not as *favors*.

Cc:     Dr. Chambers
        file



**DEFENDANT'S EXHIBIT**

*42- Greene*



Ingram
State
Technical
College

ISTC
• *Developing Responsible Citizens* •

**J. Douglas Chambers**
President

**Rickey A. Huffstutler, Ph.D**
Dean of the College

**Monica J. Greene**
Dean of
Fiscal Affairs

**James E. Wilson**
Dean of Students
and Support Services

# INGRAM STATE TECHNICAL COLLEGE

February 16, 2006

MEMORANDUM

TO:             Mr. Frank Clem, Instructor

FROM:        Mrs. Monica Greene, Dean of Fiscal Affairs   *Monica*
                   Mrs. Julie Givens, Payroll & Adm. Asst. to Dean of Fiscal
                   Affairs

RE:             Your Memo dated February 15, 2006

            As per your conversation with Mrs. Givens today, we will stop
the Aflac and Liberty National deductions for you February.  However, it will
be your responsibility to notify the company representatives of these changes.

            Please remember that these type changes are to be made in
August of each year.  If our office can be of further assistance please feel free
to call.

# *Memorandum*
February 15, 2006

To:     Ms. Monica Greene,
        Dean of Fiscal Affairs

From:   Mr. Frank A. Clem
        ABE Instructor

Re:     Discontinuing of Payroll Deductions

This is a request for your department to discontinue two automatic deductions from my monthly paycheck. Please discontinue deducting $62.17 per month for LIBERTY NATIONAL, and also discontinue deducting $19.40 for AM FAM LIFE FUND. I do not wish to continue purchasing these two products.

For your convenience I have attached a copy of my most recent paycheck stub and circled the two deductions I wish to discontinue. Thank you.


Cc:     file

FRANK A CLEM

SSN: 423784773    LOC:    01/31/2006    CHK NO:    87217087217

0121

| | GROSS | FIT | FIC/MED | SIT | LOCAL | RETIRE | VOL DED | NETPAY |
|---|---|---|---|---|---|---|---|---|
| CUR | 4545.33 | 533.38 | 341.62 | 175.69 | 0.00 | 227.27 | 137.75 | 3126.62 |
| YTD | 4545.33 | 533.38 | 341.62 | 175.69 | 0.00 | 227.27 | 137.75 | 3126.62 |

| DEDUCTION | | | DEDUCTION | | | | DEDUCTION | |
|---|---|---|---|---|---|---|---|---|
| | CURRENT | YTD | | CURRENT | YTD | | CURRENT | YTD |
| AM FAM LIFE FUND | 19.40 | 19.40 | CEA DUES | 62.17 | 62.17 | | 4.50 | 4.50 |
| LIBERTY NATIONAL/ | 62.17 | 62.17 | INS. F1 ADL CLEM | 2.00 | 2.00 | | 2.00 | 2.00 |
| TAXABLE BENEFIT | 49.69 | 49.68 | | | | | | |

| SICK BK BALANCE | SICK BAL | SICK TAKEN | SICK EARNED | PERS BAL | PERS TAKEN | PERS EARNED | ANN BAL | ANN TAKEN | ANN EARNED |
|---|---|---|---|---|---|---|---|---|---|
| 0.00 | 152.70 | 1.50 | 8.00 | 14.95 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

J.F. INGRAM STATE TECHNICAL COLLEGE

MEMORANDUM

DATE:          January 22, 2003

TO:            Dr. Rickey A. Huffstutler, Dean of the College

FROM:          Rod Benton, Auto Mechanics Instructor

CC:            J. Douglas Chambers, President

RE:            Vendor Credit

On January 13, 2003 I went to Harbor Freight Tools in Montgomery to buy tools on a purchase order. We gathered up the tool order and went to the check out counter to pay. When the salesperson looked up Ingram's credit account she said there was a problem. The manager was called and he looked at the account and said that we were over our credit limit and had not paid on the account since November 2002.

The manager made a couple of phone calls and got approval for the purchases. This process took over an hour and a half.

I called Enco Tool Company on January 8, 2003 and ordered shop supplies on a purchase order. Yesterday, I called to check why I had not received the order. I was referred to the credit department where I was informed that our account was past due and a payment had not been made since October 2002. They also said that a letter had been send to our accounting department and they had not received a response.

I have two other purchase orders for supplies and reference books.



**Ingram State Technical College**

## INGRAM STATE TECHNICAL COLLEGE

January 31, 2006

J. Douglas Chambers
*President*

Rickey A. Huffstutler, Ph.D
*Dean of the College*

Monica J. Greene
*Dean of Fiscal Affairs*

James E. Wilson
*Dean of Students and Support Services*

MEMORANDUM

TO:          James T. Merk
             Dean of Instruction

FROM:        Monica J. Greene  *Monica*
             Dean of Fiscal Affairs

RE:          Pay Increase

This correspondence is being sent in response to your January 30, 2006 memorandum concerning a request for a pay increase for Gloria Knox. I will be providing you a detailed response to this memorandum but I would like to note, for the record, that when you brought this information to me you did not ask for a response in writing. We discussed it briefly on the day that you brought it to me, which was not on November 9, 2006, it was later in the month. We then agreed that we would speak to Mr. Chambers about it the next morning, which we did. I gave my response at that time and Mr. Chambers asked me some questions about the documentation that I referenced. I answered him and it was to my understanding that it would be handled through the personnel department. The statement that you made, therefore, that you had not received a response from me at all, is inaccurate. However, I will be glad to state my opinion again with this written document.

I must say that from my experience in working with Mrs. Knox on business matters that I must object to her request for a pay increase and I must disagree with the content of her memorandum. First of all, Mrs. Knox states that she has become an essential member of the team and accomplished a great deal. I think that you need to ask her what that means because I will provide information that shows that my office has experienced many problems with her work. Her next reference to her lunch being interrupted goes against the policy that was put into place when the college began closing at 3:00 p.m. I will remind you that when this procedure was put in place, the rule was that all support staff would be " on call " during their lunch break because of the fact that we do not have an 8 hour day. All of my staff including myself is on call during our lunch period. I will also remind you that when the new phone



**DEFENDANT'S EXHIBIT**

43 - Greene

system was installed, each receptionist/clerk was allowed a time period to sign off the system so that they could eat lunch without the phone interrupting them. Mrs Knox is aware of this and did pick her time so she should not be interrupted by the phone, but she will have to be interrupted if a customer comes in. That is just part of her duty as a live work clerk, which is in her job description. Mrs. Knox also makes the statement that she is working for less than other personnel with less years of service. I am not sure what Mrs. Knox is referencing when she makes this statement but if you look at the facts Mrs. Knox is doing the same job duties as Mrs. Beth White at a higher rank and grade. Mrs. Knox should only be at a higher step than Mrs. White because she has more years at the college but that is all. In my opinion, Mrs. Knox should be grateful rather than complaining. Mrs. Knox does not perform all the duties listed on the job description that you attached. They may be listed on her job duties but I know that she does the same duties as Mrs. White but at a lesser volume. For instance, Mrs. Knox does not enter student data like it shows on her job duties. This can be verified by the Student Services department. Mrs. Knox does not prepare replies to correspondence as listed on her job duties. Mrs. Knox's duties do not differ from Mrs. White's at all. In fact, I will show you in an attachment to this document, the volume of paperwork handled at the main campus in comparison to the draper and tutwiler campuses. As far as Mrs. McDuffie's duties, she was hired under the transition funds and therefore performs other duties through that program. The only portion of her work that I can answer for is the live work portion and that is only a small portion at tutwiler. I am not familiar with her other duties so I can not make a judgment as to her salary but she does have a different job description than the other two. I noticed that you have listed some of employees in comparison to Mrs. Knox and the only other two that make more than Mrs. Knox are Mrs. Bankston and she works for Special Education (separate funding) and Mrs. Turner. Mrs. Turner has a completely different job description than Mrs. Knox. The job qualifications are different also. The only employee she should be compared to for comparable duties is Mrs. White and she is well compensated in comparison to her.

I have two employees in my department that have higher level job duties than Mrs. Knox but she makes more than one and the same as the other. I am just saying this to make the point that Mrs. Knox is very well compensated for what she does and she in no way should receive an increase. I have attached copies of memorandums and meeting minutes that show just some of the problems that we have had with Mrs. Knox's work performance.

I personally worked with Mrs. Knox while Mrs. White was on maternity leave. I observed her training on the new computer program for live work and I know that she received very thorough training but to date she cannot work in this program without calling the fiscal division for help. In fact, even though Mrs. White has returned, she continues to call me on almost a daily basis to fix her problems. I have found that she does not take instruction well mainly

because she will not listen to what you are telling her.  My office has also
given her written documentation as well as continuous verbal instructions on
how to do these tasks.   I do not have these problems with Mrs McDuffie or
Mrs. White.

Lastly, I take exception to the statement Mrs. Knox said about she feels that
she has earned a pay raise.  I strongly object to this statement.  Please review
the attached memorandums that cover a range of errors made by Mrs. Knox in
relation to my department.  Please let me know if you have any questions.

attachments

cc: J. Douglas Chambers, President



*Ed —*

**INGRAM STATE TECHNICAL**
January 3 , 2005

*S*
*R*
*F*

**MEMORANDUM**

*File*

**J. Douglas Chambers**
President

TO:      Josh Bridgman

*# Dean received*
*similar memo*
*from Dr. Huff*

FROM:     Monica J. Greene   *—Monica*
Dean of Fiscal Affairs

*ref. bids*

**Rickey A. Huffstutler, Ph.D**
Dean of the College

RE:      Neglect of Duty

**Monica J. Greene**
Dean of
Fiscal Affairs

This correspondence is written to once again inform you that the total cycle of accounts payable is your responsibility to see through. This cycle includes the mailing out of the checks. You have been informed of this from the day that you were given the appointment to perform these duties.

**James E. Wilson**
Dean of Students
and Support Services

I am very disappointed to learn that you neglected your responsibility of mailing the accounts payable checks before you took leave that was approved by me during the week before the Christmas break. I am an avid supporter of employees taking time off when needed, but I also expect you to carry out your duties before you take off. I gave you the signed accounts payable checks on Friday, December 17, 2004, just after arrival at work. It was your responsibility to see that those checks were mailed that day especially when you knew that you would not be coming back to work until January 3, 2005. The checks were found on your desk Monday morning, December 20, 2004. A co-worker mailed them for you. This gross neglect of duty is absolutely not acceptable. There is no excuse for this behavior. You do not ask to take time off and leave your job undone.

This memorandum will serve as a warning that if you continue to blatantly neglect duties that are assigned to you, the next

*P.O. Box 220350 • Deatsville, Alabama 36022*
*Phone: 334-285-5177 • Fax: 334-285-5328*



**DEFENDANT'S EXHIBIT**

*4H Greene*

correspondence will be a recommendation to the President for a reprimand to be placed in your personnel file. Your immediate attention to this memorandum is expected.

cc: J. Douglas Chambers, President
    Rickey Huffstutler, Dean of the College

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

~ 2006 SEP 25  P 12: 15

|  |  |  |
|---|---|---|
| JULIE GIVENS and<br>MONICA GREENE | ☆<br>☆<br>☆ |  |
| **Plaintiffs,** | ☆<br>☆ | **CASE NO.:** ~~CV-06-~~ |
| vs. | ☆<br>☆ | 2:06 CV 852-1D |
| DOUGLASS CHAMBERS, Individually<br>and in his capacity as President of<br>INGRAM STATE TECHNICAL<br>COLLEGE; JAMES WILSON,<br>Individually and in his capacity as<br>Dean of Students of INGRAM STATE<br>TECHNICAL COLLEGE. | ☆<br>☆<br>☆<br>☆<br>☆<br>☆<br>☆ | **JURY DEMAND** |
| **Defendants.** | ☆ |  |

## COMPLAINT

COMES NOW the Plaintiffs, Julie Givens and Monica Greene, and files this, their

Complaint seeking relief under the provisions of Title VII of the Civil Rights Act of 1964, as

amended in 1991, 42 U.S.C. § 2000 @ et. seq. and under the provisions of 42 U.S.C. § 1981 and

under the Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution and through 42 U.S.C. § 1983. Plaintiffs also seek relief on various state causes of

action.

### Jurisdiction

1. Jurisdiction in this Honorable Court is posited under the provisions of 28 U.S.C. §

1331 and 28 U.S.C. § 1343 because it involves the civil rights of the Plaintiffs and because it

1


DEFENDANT'S EXHIBIT

involves questions of federal law.

## Parties

2. The Plaintiff, Julie Givens, is a white female over the age of forty (40) years and at all times relevant hereto was a resident of Elmore County, Alabama which is encompassed in the area of the UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION.

3. The Plaintiff, Monica Greene, is a white female over the age of forty(40) years and at all times relevant hereto was a resident of Montgomery County, Alabama which is encompassed in the area of the UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION.

4. The Defendant, Douglass Chambers, is a black male over the age of nineteen (19) years, is employed as President of Ingram State Technical College, in Elmore County, Alabama, and resides in Autauga County, Alabama, which is and area encompassed by the UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION. Defendant Chambers is sued in his individual and official capacity.

5. The Defendant, James Wilson, is a black male over the age of nineteen (19) years, is employed as Dean of Students of Ingram State Technical College, in Elmore County, Alabama, and resides in Montgomery County, Alabama, which is and area encompassed by the UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN

DIVISION. Defendant Wilson is sued in his individual and official capacity.

## Statement of Facts Supporting Causes of Action

6. Plaintiff Greene is the Dean of Fiscal Affairs at Ingram State Technical College and Plaintiff Givens works in the Fiscal Office under Plaintiff Greene. Plaintiff Greene filed an EEOC Complaint and received a Right To Sue letter dated June 29, 2006. Plaintiff Givens filed an EEOC Complaint and received a Right To Sue letter dated June 28, 2006.

7. Defendant Chambers on numerous occasions has had meetings with Plaintiff Greene and Plaintiff Givens. Defendant Chambers has insinuated that Plaintiff Greene had not told him the truth about an issue and admonished Plaintiff Given's to tell him the truth.

8. Defendant Chambers and Defendant Wilson have indicated in front of other employees that Plaintiff givens allows personnel in the business office, which is under Givens direct supervision, to violate school policies when work is being done for employees of the business office or their family members.

9. Defendant Chambers consistently comments on the attire and dress of the females, while not commenting on the dress of the male employees. Defendant Chambers has commented on how tight and low cut women wear their blue jeans. Defendant Chambers has established a dress policy for women , and will not allow women to wear jeans. However, males are allowed to wear jeans.

3

10.  On numerous occasions in meetings with the Plaintiffs and other female employees, Defendant Chambers has raised his voice in a loud and threatening manner.  However, Defendant Chambers does not raise his voice in meetings with just male employees.

11.  Defendant Chambers has consistently refused to raise the salary of any white employees that Plaintiff Greene has recommended for a raise.  The only employee to receive a raise which was recommended by Plaintiff Greene was a black employee.

12.  Defendant Chambers consistently hires and promotes black employees over white employees and pays black employees more money for doing the same job as white employees

13.  Defendant Chambers pays female employees, including but not limited to Plaintiffs Greene and Givens, less money than paid to male employees in equal or similar positions.

14.  On several occasions Defendant Chambers has informed Plaintiff Greene in the presence of Plaintiff Givens and others that Plaintiff Greene should resign or quit her job.

15.  Defendant Chambers yelled at Plaintiff Greene that "he didn't like her attitude" when Plaintiff Greene refused to have anything to do with a political PAC as such would be a job violation for her.

16.  The actions of Defendant Chambers in yelling at Plaintiffs, constantly making

4

remarks about the women's clothing, threatening Plaintiffs' job security and paying female employees less money than similarly situated male employees and not paying white and black employees similar wages for similar jobs, permeated the work place of the Plaintiffs with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the Plaintiffs' employment and created an abusive and hostile work environment.

### First Cause of Action
### Racial Discrimination Under Title VII of the Civil Rights Act of 1964

17. The Plaintiffs reallege and incorporates herein in this First Cause of Action the allegations contained in paragraphs 1-16 of this Complaint the same as if set out herein in full.

18. Plaintiffs Greene and Gives allege that Defendant Chambers has discriminated against each of them based on race and gender, has created a racially hostile working environment, and that the Defendant is in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 @ et. seq. as amended.

19. Plaintiffs Greene and Givens prays for actual damage, equitable and declaratory relief, and recovery of cost and attorney fees, to which they may be entitled under Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000 @ et. seq. as amended.

### Second Cause of Action
### Racial Discrimination under 42 U.S.C. § 1981

20. Plaintiffs Greene and Givens reallege and incorporate herein in this Second Cause of Action the allegations of paragraphs 1 through 19 of this Complaint the same as if set out herein

5

in full.

21. The Plaintiffs allege, that Defendant Chambers and Wilson have discriminated against them based on their race, white, gender, female and the actions of the Defendants have created a racially hostile and/or generally hostile and abusive working environment and that the Defendants are therefore in violation of 42 U.S.C. § 1981.

22. Plaintiffs Greens and Givens each pray for actual damages, equitable and declaratory relief, and recovery of cost and attorney fees against all Defendants, who may be appropriately sued under 42 U.S.C. § 1981 and to which each Plaintiff might be entitled under 42 U.S.C. § 1981.

**Third Cause of Action**
**Discriminatory Under The Equal Protection Clause**
**of the Constitution of the United States**

23. Plaintiffs Greene and Givens reallege and incorporate herein this third Cause of Action the allegations of paragraphs 1-22 of this Complaint the same as if set out herein in full.

24. Plaintiffs Greene and Givens allege and aver that Defendant Chambers, acting under the color of state law, has treated them differently than similarly situated male employees, denying them the equal protection of the law the same as provided to similarly situated male employees. The actions of Defendant Chambers has created an abusive, hostile and intimidating working environment for the Plaintiffs and other similarly situated female employees.

6

25. Plaintiffs Greene and Givens allege and aver the action of Defendant Chambers has caused each of them to suffer mental and emotional pain and anguish and has caused each Plaintiff to seek medical attention and expend funds for medical treatment.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that a jury upon considering the evidence in this case will award the following:

A. An amount of money to sufficiently and adequately compensate the Plaintiffs for the suffering inflicted upon each of them by the Defendants and an adequate amount of money to deter such action in the future.

B. The recovery of Court costs and an adequate and proper attorney fee.

C. Such other, further, and different relief that the Court determines each of the Plaintiffs is entitled to receive.

### Fourth Cause of Action
### State Action- Harrassment

26. The consistent and constant yelling at Plaintiffs Givens and Greene by Defendant Chambers and the accusations of Defendant Wilson that the Business Office employees who work under the supervision of Plaintiff Greene received special treatment when work was performed for Business Office employees by Ingram, amounted to harassment of Plaintiff Givens and Plaintiff Greene.

27. Said harassment caused Plaintiffs Greene and Givens to suffer embarrassment in front of their co-workers and to suffer mental pain and anguish.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the jury will award each of them, based on the facts and circumstances of this case, an amount of money to adequately compensate each Plaintiff and to sufficiently punish the Defendants so as to deter such action in

7

the future.

Respectfully submitted this the _25th_ day of September, 2006.


_Jim L. DeBardelaben_
JIM L. DEBARDELABEN (DEB003)
Attorney for Plaintiffs

**OF COUNSEL:**
Jim L. DeBardelaben
Attorney At Law
1505 Madison Avenue
Montgomery, Alabama 36107
(334) 265-9206
(334) 265-9299 Facsimile

8